# EXHIBIT A

ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700

MARC A. BECKER (S.B. #138872)
    marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, <br><br> Defendants. | Case No. 2:14-cv-02527 DDP-Ex <br><br> **PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNIVERSAL CITY STUDIOS LLC** |

1    <u>Propounding Party</u>:    Plaintiff Metro-Goldwyn-Mayer Studios Inc.

2    <u>Responding Party</u>:    Defendant Universal City Studios LLC

3    <u>Set Number</u>:    One

4

5    Pursuant to Federal Rule of Civil Procedure 34, Local Rule 34 of the United

6 States District Court for the Central District of California, and the Court's order

7 regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc.

8 demands that defendant Universal City Studios LLC produce and permit the

9 inspection and copying of all documents designated below that are in its possession,

10 custody, or control at the offices of O'Melveny & Myers LLP, 1999 Avenue of the

11 Stars, Suite 700, Los Angeles, California 90067 within thirty (30) days of the date

12 of the Court's order regarding expedited discovery.  Pursuant to Federal Rule of

13 Civil Procedure 34(b) and the Court's order regarding expedited discovery,

14 defendant must also serve written responses to the requests for production of

15 documents within thirty (30) days of the date of the Court's order regarding

16 expedited discovery.

17                         **DEFINITIONS**

18 <u>General Definitions.</u>

19     1.    "COMMUNICATION[S]" means any DOCUMENT that comprises,

20 embodies, reflects, or refers to any transmission of information from one person to

21 another, including, without limitation, by personal meeting, conversation, letter,

22 telephone, facsimile, electronic mail, instant messaging, text messaging, or

23 development notes.  Each request that encompasses information relating in any way

24 to COMMUNICATIONS to, from, or within a business or corporate entity is

25 hereby designated to mean, and should be construed to include, all

26 COMMUNICATIONS by and between representatives, employees, agents, or

27 servants of the business or corporate entity.  Any reference to "all

28

COMMUNICATIONS" refers to all DOCUMENTS that RELATE TO
COMMUNICATIONS.

    2.    "DOCUMENT[S]" shall be construed in the broadest sense to mean
any and all writings, tangible things, and property of any kind that are now or that
have been in YOUR actual or constructive possession, custody, or control,
including, but not limited to:  any handwritten, typewritten, printed, drawn, charted,
taped, filmed, copied, recorded, transcribed, graphic, or photographic matter of any
kind or nature, in, through, or from which information may be embodied,
translated, conveyed, or stored, whether an original, a draft, or copy, however
produced or reproduced, whether sent or received or neither, including, but not
limited to, notes, memoranda, correspondence, text messages, instant messages,
letters, facsimiles and facsimile transmittals, reports, inter- and intra-office
COMMUNICATIONS, buck slips, work papers, work sheets, work records,
ledgers, graphs, indexes, advertisements, brochures, bills, time cards, receipts,
telephone records, telegrams, telexes, literature, invoices, contracts, purchase
orders, estimates, recordings, transcriptions of recordings, records, books,
pamphlets, periodicals, publications, papers, tapes, video, audio and digital
recordings, television commercials, website or other spot advertisements,
prototypes, products, calendars, charts, diaries, drawings, sketches, messages,
photographs, and any "active" or "backup" data contained in or accessible through
any electronic data processing system, including, but not limited to, computer
databases, data compilations, computer files and tapes, computer disks, CD-ROMs,
DVDs, flash drives, thumb drives, hard drives, computer metadata, electronic mail,
online or network storage, website and web pages and transcriptions thereof,
Internet social networking sites, and all other memorializations of any
conversations, meetings, and conferences, by telephone or otherwise.  The term
DOCUMENT also means every copy of a DOCUMENT, where such copy is not an
identical duplicate of the original, whether because of deletions, underlinings,

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

1   showing of blind copies, initialing, signatures, receipt stamps, comments, notations,

2   differences in stationery, or any other difference or modification of any kind.  The

3   term DOCUMENT includes COMMUNICATIONS.

4        3.    "PERSON" means any natural person, firm, association, organization,

5   partnership, business trust, corporation, company, public entity, or other legal entity

6   or organization separately identifiable, and any department(s) or division(s) therein.

7        4.    "RELATE[D] TO" means a DOCUMENT or DOCUMENTS that

8   concern, refer to, summarize, reflect, constitute, comprise, state, contain, embody,

9   pertain to, identify, study, are involved with, mention, discuss, consist of, show,

10   comment upon, evidence, support, respond to, deal with, describe, analyze, refute,

11   contradict, or are in any way pertinent to that subject, directly or indirectly, in

12   whole or in part.

13        5.    The terms "and" and "or" will be construed both conjunctively and

14   disjunctively, and each will include the other whenever such a dual construction

15   would serve to bring within a category DOCUMENTS or information that would

16   not otherwise be within its scope.

17        6.    The terms "all" or "any" mean "any, all, each, and every."

18        7.    The singular form shall include the plural and vice versa whenever

19   such dual construction will serve to bring within the scope of any Request

20   DOCUMENTS that would otherwise not be brought within its scope.

21

22   <u>Case-Specific Definitions.</u>

23        1.    "BERG" means defendant Aaron Berg together with any present or

24   former employees, agents, managers, attorneys, representatives, accountants, or

25   other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is a pseudonym or

26   otherwise represents one or more other PERSONS, "BERG" means the PERSON

27   or PERSONS who wrote the SCREENPLAY or who purport to be the screenwriter

28   known as "Aaron Berg," together with any present or former employees, agents,

3

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

managers, attorneys, representatives, accountants, or other PERSON(S) acting on his, her, or their behalves.

2.      "COVERAGE" means any written summary, abstract, or analysis of a written work, such as a screenplay, which may include a description of the literary or dramatic elements of a work (such as its characters and plot) and may also include an evaluation of the work.

3.      "JAMES BOND" means the character James Bond created by author Ian Fleming and featured in the JAMES BOND LITERARY WORKS and the JAMES BOND MOTION PICTURES.

4.      "JAMES BOND LITERARY WORKS" means any novels, short stories, collections, and/or serials that feature, in part, JAMES BOND, including, but not limited to, *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You Only Live Twice*, *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *Live and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*, *Moonraker*, *For Your Eyes Only*, *Octopussy*, *A View to a Kill*, *The Living Daylights*, *Casino Royale*, and *Quantum of Solace*.

5.      "JAMES BOND MOTION PICTURES" means any motion pictures or television shows that feature, in part, JAMES BOND, including, but not limited to, *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You Only Live Twice*, *Casino Royale* (1967), *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *Live and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*, *Moonraker*, *For Your Eyes Only*, *Octopussy*, *Never Say Never Again*, *A View to a Kill*, *The Living Daylights*, *License to Kill*, *GoldenEye*, *Tomorrow Never Dies*, *The World is Not Enough*, *Die Another Day*, *Casino Royale* (2006), *Quantum of Solace*, and *Skyfall*.

6.      "JAMES BOND WORKS" means the JAMES BOND LITERARY WORKS and the JAMES BOND MOTION PICTURES.

4

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

7.     "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

8.     "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by Aaron Berg, including any prior or later draft, version, iteration, revision, or adaptation thereof.

9.     "SECTION 6 PRODUCERS" means any one or more PERSONS who have been, or currently are, involved in developing, preparing, supervising, or otherwise working on the SCREENPLAY or the MOTION PICTURE, including, but not limited to, Lawrence Grey, Grey Matter Productions, Marc Platt, Marc Platt Productions, Adam Siegel, Nira Park, and/or Big Talk Pictures.

10.     "YOU," or "YOUR" means defendant Universal City Studios LLC as well as all parents, subsidiaries, or other affiliates, predecessor or successor companies, any and all divisions, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, and/or affiliate acting on any of their behalves.

## INSTRUCTIONS

1.     These Requests call for the production of all responsive DOCUMENTS that are within YOUR possession, custody, or control.  A document is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another PERSON or entity that has physical possession of the DOCUMENT.

2.     Whenever YOU object to a particular Request, or portion thereof, YOU must produce all DOCUMENTS called for which are not subject to that objection.

3.     If any DOCUMENT, or any portion of a DOCUMENT, covered by these Requests is withheld by reason of a claim of attorney-client privilege, attorney

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

work product protection, or any other privilege or protection, furnish a log providing the following information with respect to each such withheld DOCUMENT:  date, author, recipients, general subject matter, subject line (if applicable), and legal basis upon which the DOCUMENT has been withheld.  If work product protection is asserted, also include the matter for which the document was created.

4.     With respect to any DOCUMENT maintained or stored electronically, harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

5.     Produce all DOCUMENTS maintained or stored electronically in TIFF format (branded with production numbers and, as appropriate, redactions) accompanied by data files which reference the beginning and ending image bates numbers of each document and associated image cross-reference files, family group indications, and with all metadata intact and in an appropriate and useable manner. Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

6.     Produce Microsoft Excel and other spreadsheet files in native format.

7.     Organize electronic DOCUMENTS produced for inspection in the same manner that YOU store them (*e.g.*, if maintained by a custodian, such as email residing on an email server, organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My documents" on a custodian's hard drive, organize DOCUMENTS for production by custodian with path information preserved, etc.).

8.     To the extent responsive DOCUMENTS reside in databases and other such systems and files, YOU are requested to produce the relevant database(s) in useable form and/or permit access for inspection, review, and extraction of responsive information.

6

9.      These requests require production of paper DOCUMENTS in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the Requests set forth below.  If you choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, bindings, or other containers in which the DOCUMENTS are found.  The titles, labels, or other descriptions on the boxes, file folders, bindings, or other containers are to be left intact.

10.     For any DOCUMENT or category of DOCUMENTS that was, but no longer is, in YOUR possession, custody, or control, describe each such DOCUMENT as completely as possible and provide the following information:

(a)     The reason the DOCUMENT is no longer in YOUR possession, custody, or control;

(b)     The PERSON or entity, if any, who has possession, custody, or control or, if unknown, so state;

(c)     If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.*, destruction, loss, discarding, or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the PERSON authorizing disposal; (v) the PERSON disposing of the DOCUMENT; and (vi) the name, address, and business affiliation of the most recent custodian of the DOCUMENT.

11.     Pursuant to Federal Rule of Civil Procedure 26(e)(1), these Requests impose a continuing obligation subsequent to YOUR initial production to timely supplement YOUR response or production if YOU determine that YOUR response or production is incomplete or incorrect.

## REQUESTS FOR PRODUCTION

1.      All versions and drafts of the SCREENPLAY, including, but not limited to:

PLAINTIFF MGM'S FIRST SET OF RFPs
TO UNIVERSAL CITY STUDIOS

        a.     all versions and drafts of the SCREENPLAY that YOU received from BERG;

        b.     the most recent version of the SCREENPLAY; and

        c.     all versions and drafts of the SCREENPLAY that YOU sent or gave to any PERSON, including any producer, actor, director, writer, or production personnel, or their agents, managers, attorneys, or any other representatives.

2. All DOCUMENTS that constitute, memorialize, or refer to COVERAGE of the SCREENPLAY.

3. All COMMUNICATIONS with BERG RELATED TO the SCREENPLAY.

4. All COMMUNICATIONS with BERG RELATED TO the MOTION PICTURE.

5. All COMMUNICATIONS with BERG that mention or refer to one or more of the plaintiffs.

6. All COMMUNICATIONS with BERG that mention or refer to JAMES BOND.

7. All COMMUNICATIONS with BERG that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

8. All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the SCREENPLAY.

9. All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the MOTION PICTURE.

10. All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO BERG.

11. All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO JAMES BOND.

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

12.     All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the JAMES BOND WORKS.

13.     All DOCUMENTS RELATED TO the SCREENPLAY that contain the words "Bond," "James Bond," "007," "00", "double-O", "will return," "M," "Q," "Moneypenny," "Bond Girls," the name of any other character in any of the JAMES BOND WORKS, "license to kill," or "his [or her] majesty's secret service."

14.     All DOCUMENTS RELATED TO the MOTION PICTURE that contain the words "Bond," "James Bond," "007," "00," "double-O," "will return," "M," "Q," "Moneypenny," "Bond Girls," the name of any other character in any of the JAMES BOND WORKS, "license to kill," or "his [or her] majesty's secret service."

15.     All DOCUMENTS RELATED TO the SCREENPLAY that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

16.     All DOCUMENTS RELATED TO the MOTION PICTURE that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

17.     All cover letters, transmittal letters, buck slips, notes, or other COMMUNICATIONS included with or attached to any copy of the SCREENPLAY provided to any PERSON for any purpose.

18.     All COMMUNICATIONS between YOU and any PERSON in connection with that PERSON'S receipt or review of the SCREENPLAY.

19.     All DOCUMENTS that memorialize or refer to any COMMUNICATIONS between any of YOUR officers or employees concerning the SCREENPLAY, including without limitation: (a) any notes of any meetings or conference calls concerning the SCREENPLAY and (b) any DOCUMENTS that

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

memorialize or refer to any telephone or in-person discussion concerning the SCREENPLAY.

20.     All COMMUNICATIONS between or among YOUR officers or employees RELATED TO the SCREENPLAY.

21.     All COMMUNICATIONS between YOU and any other PERSON RELATED TO the SCREENPLAY.

22.     All DOCUMENTS RELATED TO any casting notices or casting calls for the MOTION PICTURE.

23.     All DOCUMENTS RELATED TO any edits, revisions, rewrites, or changes to the SCREENPLAY that any PERSON suggested be made, requested be made, directed be made, or considered making.

24.     All DOCUMENTS RELATED TO any edits, revisions, rewrites, or changes any PERSON has made to the SCREENPLAY.

25.     All DOCUMENTS RELATED TO YOUR hiring, directing, or asking any PERSON to edit, revise, rewrite, or change the SCREENPLAY.

26.     All DOCUMENTS RELATED TO any agreements or contracts YOU have negotiated, are negotiating, or have entered into with BERG.

27.     All DOCUMENTS RELATED TO any monetary or other consideration BERG has received, or may receive in the future, RELATED TO the SCREENPLAY.

28.     All DOCUMENTS RELATED TO any monetary or other consideration BERG has received, or may receive in the future, RELATED TO the MOTION PICTURE.

29.     All DOCUMENTS RELATED TO any agreements or contracts YOU have negotiated, are negotiating, or have entered into with any PERSON RELATED TO the SCREENPLAY.

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

30.     All DOCUMENTS RELATED TO any agreements or contracts YOU have negotiated, are negotiating, or have entered into with any PERSON RELATED TO the MOTION PICTURE.

31.     All DOCUMENTS and COMMUNICATIONS RELATED TO obtaining any form of liability insurance, including, but not limited to, errors and omissions insurance, in connection with the SCREENPLAY or the MOTION PICTURE.

32.     All DOCUMENTS that constitute, memorialize, or refer to any edits, revisions, rewrites, or changes to the SCREENPLAY that were suggested, proposed, or requested in connection with obtaining any form of liability insurance, including, but not limited to, errors and omissions insurance, in connection with the SCREENPLAY or the MOTION PICTURE.

33.     All DOCUMENTS that constitute, memorialize, or refer to reviews or analyses of the SCREENPLAY prepared by or at the request of any issuers or underwriters of any form of liability insurance, including, but not limited to, errors and omissions insurance.

34.     DOCUMENTS RELATED TO any notices YOU have sent regarding YOUR or the notice recipient's obligation to preserve and/or retain DOCUMENTS RELATED to any dispute between YOU and plaintiffs or to this lawsuit.

35.     DOCUMENTS sufficient to identify all PERSONS to whom each notice described in the prior request was sent and the date such notice was sent.

36.     All DOCUMENTS RELATED TO any COMMUNICATIONS between plaintiffs and/or plaintiffs' counsel, on the one hand, and YOU, on the other hand, RELATED TO the SCREENPLAY, including, but not limited to, the correspondence sent by plaintiffs and/or plaintiffs' counsel to YOU dated October 23, 2013, November 18, 2013, November 27, 2013, and/or March 26, 2014, and the correspondence sent by YOU to plaintiffs and/or plaintiffs' counsel dated November 26, 2013 and/or March 31, 2014, or the subjects raised therein.

11

PLAINTIFF MGM'S FIRST SET OF RFPS
TO UNIVERSAL CITY STUDIOS

1    37.    All DOCUMENTS RELATED TO whether the SCREENPLAY or the

2   MOTION PICTURE violates or may violate any PERSON'S intellectual property

3   rights or other rights.

4    38.    To the extent not produced in response to any prior request, all

5   DOCUMENTS and COMMUNICATIONS RELATED TO the SCREENPLAY

6   and/or the MOTION PICTURE.

7

8   Dated:  April 4, 2014               ROBERT M. SCHWARTZ
                                        CASSANDRA L. SETO
9                                       BRIAN J. FINKELSTEIN
                                        O'MELVENY & MYERS LLP
10
                                        MARC A. BECKER
11                                      QUINN EMANUEL URQUHART
                                            & SULLIVAN, LLP
12

13

14

15                                      By:_____
                                             Robert M. Schwartz
16                                      Attorneys for Plaintiffs Danjaq, LLC; Metro-
                                        Goldwyn-Mayer Studios Inc.; United Artists
17                                      Corporation; Seventeen Leasing
                                        Corporation; Eighteen Leasing Corporation;
18                                      Nineteen Leasing Corporation; Twenty
                                        Leasing Corporation; Twenty-One Leasing
19                                      Company LLC

20

21

22

23

24

25

26

27

28

12

# EXHIBIT B

1    ROBERT M. SCHWARTZ (S.B. #117166)
        rschwartz@omm.com
2    CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
3    BRIAN J. FINKELSTEIN (S.B. #261000)
        brianfinkelstein@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, California  90067-6035
     Telephone:  (310) 553-6700
6
     MARC A. BECKER (S.B. #138872)
7        marcbecker@quinnemanuel.com
     QUINN EMANUEL URQUHART
8        & SULLIVAN, LLP
     865 S. Figueroa Street, 10th Floor
9    Los Angeles, California  90017
     Telephone:  (213) 443-3000
10
     Attorneys for Plaintiffs
11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14   DANJAQ, LLC, a Delaware limited          Case No. 2:14-cv-02527 DDP-Ex
     liability company; METRO-
15   GOLDWYN-MAYER STUDIOS               **PLAINTIFF METRO-GOLDWYN-**
     INC., a Delaware corporation;        **MAYER STUDIOS INC.'S FIRST**
16   UNITED ARTISTS CORPORATION,     **SET OF REQUESTS FOR**
     a Delaware corporation; SEVENTEEN   **PRODUCTION OF DOCUMENTS**
17   LEASING CORPORATION, a            **TO DEFENDANT NBCUNIVERSAL**
     Delaware corporation; EIGHTEEN      **MEDIA, LLC**
18   LEASING CORPORATION, a
     Delaware corporation; NINETEEN
19   LEASING CORPORATION, a
     Delaware corporation; TWENTY
20   LEASING CORPORATION, a
     Delaware corporation; and TWENTY-
21   ONE LEASING COMPANY LLC, a
     Delaware limited liability company,
22
                    Plaintiffs,
23
            vs.
24
     UNIVERSAL CITY STUDIOS LLC, a
25   Delaware limited liability company;
     NBCUNIVERSAL MEDIA, LLC, a
26   Delaware limited liability company;
     and AARON BERG, an individual,
27
                    Defendants.
28

1  <u>Propounding Party</u>:        Plaintiff Metro-Goldwyn-Mayer Studios Inc.

2  <u>Responding Party</u>:         Defendant NBCUniversal Media, LLC

3  <u>Set Number</u>:              One

4

5       Pursuant to Federal Rule of Civil Procedure 34, Local Rule 34 of the United

6  States District Court for the Central District of California, and the Court's order

7  regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc.

8  demands that defendant NBCUniversal Media, LLC produce and permit the

9  inspection and copying of all documents designated below that are in its possession,

10 custody, or control at the offices of O'Melveny & Myers LLP, 1999 Avenue of the

11 Stars, Suite 700, Los Angeles, California 90067 within thirty (30) days of the date

12 of the Court's order regarding expedited discovery.  Pursuant to Federal Rule of

13 Civil Procedure 34(b) and the Court's order regarding expedited discovery,

14 defendant must also serve written responses to the requests for production of

15 documents within thirty (30) days of the date of the Court's order regarding

16 expedited discovery.

17 **DEFINITIONS**

18 <u>General Definitions.</u>

19      1.    "COMMUNICATION[S]" means any DOCUMENT that comprises,

20 embodies, reflects, or refers to any transmission of information from one person to

21 another, including, without limitation, by personal meeting, conversation, letter,

22 telephone, facsimile, electronic mail, instant messaging, text messaging, or

23 development notes.  Each request that encompasses information relating in any way

24 to COMMUNICATIONS to, from, or within a business or corporate entity is

25 hereby designated to mean, and should be construed to include, all

26 COMMUNICATIONS by and between representatives, employees, agents, or

27 servants of the business or corporate entity.  Any reference to "all

28

1  COMMUNICATIONS" refers to all DOCUMENTS that RELATE TO

2  COMMUNICATIONS.

3      2.      "DOCUMENT[S]" shall be construed in the broadest sense to mean

4  any and all writings, tangible things, and property of any kind that are now or that

5  have been in YOUR actual or constructive possession, custody, or control,

6  including, but not limited to:  any handwritten, typewritten, printed, drawn, charted,

7  taped, filmed, copied, recorded, transcribed, graphic, or photographic matter of any

8  kind or nature, in, through, or from which information may be embodied,

9  translated, conveyed, or stored, whether an original, a draft, or copy, however

10  produced or reproduced, whether sent or received or neither, including, but not

11  limited to, notes, memoranda, correspondence, text messages, instant messages,

12  letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

13  COMMUNICATIONS, buck slips, work papers, work sheets, work records,

14  ledgers, graphs, indexes, advertisements, brochures, bills, time cards, receipts,

15  telephone records, telegrams, telexes, literature, invoices, contracts, purchase

16  orders, estimates, recordings, transcriptions of recordings, records, books,

17  pamphlets, periodicals, publications, papers, tapes, video, audio and digital

18  recordings, television commercials, website or other spot advertisements,

19  prototypes, products, calendars, charts, diaries, drawings, sketches, messages,

20  photographs, and any "active" or "backup" data contained in or accessible through

21  any electronic data processing system, including, but not limited to, computer

22  databases, data compilations, computer files and tapes, computer disks, CD-ROMs,

23  DVDs, flash drives, thumb drives, hard drives, computer metadata, electronic mail,

24  online or network storage, website and web pages and transcriptions thereof,

25  Internet social networking sites, and all other memorializations of any

26  conversations, meetings, and conferences, by telephone or otherwise.  The term

27  DOCUMENT also means every copy of a DOCUMENT, where such copy is not an

28  identical duplicate of the original, whether because of deletions, underlinings,

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery, or any other difference or modification of any kind.  The term DOCUMENT includes COMMUNICATIONS.

3.      "PERSON" means any natural person, firm, association, organization, partnership, business trust, corporation, company, public entity, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

4.      "RELATE[D] TO" means a DOCUMENT or DOCUMENTS that concern, refer to, summarize, reflect, constitute, comprise, state, contain, embody, pertain to, identify, study, are involved with, mention, discuss, consist of, show, comment upon, evidence, support, respond to, deal with, describe, analyze, refute, contradict, or are in any way pertinent to that subject, directly or indirectly, in whole or in part.

5.      The terms "and" and "or" will be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within a category DOCUMENTS or information that would not otherwise be within its scope.

6.      The terms "all" or "any" mean "any, all, each, and every."

7.      The singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of any Request DOCUMENTS that would otherwise not be brought within its scope.

Case-Specific Definitions.

1.      "BERG" means defendant Aaron Berg together with any present or former employees, agents, managers, attorneys, representatives, accountants, or other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is a pseudonym or otherwise represents one or more other PERSONS, "BERG" means the PERSON or PERSONS who wrote the SCREENPLAY or who purport to be the screenwriter known as "Aaron Berg," together with any present or former employees, agents,

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

managers, attorneys, representatives, accountants, or other PERSON(S) acting on his, her, or their behalves.

2.    "COVERAGE" means any written summary, abstract, or analysis of a written work, such as a screenplay, which may include a description of the literary or dramatic elements of a work (such as its characters and plot) and may also include an evaluation of the work.

3.    "JAMES BOND" means the character James Bond created by author Ian Fleming and featured in the JAMES BOND LITERARY WORKS and the JAMES BOND MOTION PICTURES.

4.    "JAMES BOND LITERARY WORKS" means any novels, short stories, collections, and/or serials that feature, in part, JAMES BOND, including, but not limited to, *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You Only Live Twice*, *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *Live and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*, *Moonraker*, *For Your Eyes Only*, *Octopussy*, *A View to a Kill*, *The Living Daylights*, *Casino Royale*, and *Quantum of Solace*.

5.    "JAMES BOND MOTION PICTURES" means any motion pictures or television shows that feature, in part, JAMES BOND, including, but not limited to, *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You Only Live Twice*, *Casino Royale* (1967), *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *Live and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*, *Moonraker*, *For Your Eyes Only*, *Octopussy*, *Never Say Never Again*, *A View to a Kill*, *The Living Daylights*, *License to Kill*, *GoldenEye*, *Tomorrow Never Dies*, *The World is Not Enough*, *Die Another Day*, *Casino Royale* (2006), *Quantum of Solace*, and *Skyfall*.

6.    "JAMES BOND WORKS" means the JAMES BOND LITERARY WORKS and the JAMES BOND MOTION PICTURES.

4

7.     "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

8.     "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by Aaron Berg, including any prior or later draft, version, iteration, revision, or adaptation thereof.

9.     "SECTION 6 PRODUCERS" means any one or more PERSONS who have been, or currently are, involved in developing, preparing, supervising, or otherwise working on the SCREENPLAY or the MOTION PICTURE, including, but not limited to, Lawrence Grey, Grey Matter Productions, Marc Platt, Marc Platt Productions, Adam Siegel, Nira Park, and/or Big Talk Pictures.

10.     "YOU," or "YOUR" means defendant NBCUniversal Media, LLC as well as all parents, subsidiaries, or other affiliates, predecessor or successor companies, any and all divisions, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, and/or affiliate acting on any of their behalves.

## **INSTRUCTIONS**

1.     These Requests call for the production of all responsive DOCUMENTS that are within YOUR possession, custody, or control.  A document is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another PERSON or entity that has physical possession of the DOCUMENT.

2.     Whenever YOU object to a particular Request, or portion thereof, YOU must produce all DOCUMENTS called for which are not subject to that objection.

3.     If any DOCUMENT, or any portion of a DOCUMENT, covered by these Requests is withheld by reason of a claim of attorney-client privilege, attorney

5

work product protection, or any other privilege or protection, furnish a log providing the following information with respect to each such withheld DOCUMENT:  date, author, recipients, general subject matter, subject line (if applicable), and legal basis upon which the DOCUMENT has been withheld.  If work product protection is asserted, also include the matter for which the document was created.

4.     With respect to any DOCUMENT maintained or stored electronically, harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

5.     Produce all DOCUMENTS maintained or stored electronically in TIFF format (branded with production numbers and, as appropriate, redactions) accompanied by data files which reference the beginning and ending image bates numbers of each document and associated image cross-reference files, family group indications, and with all metadata intact and in an appropriate and useable manner. Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

6.     Produce Microsoft Excel and other spreadsheet files in native format.

7.     Organize electronic DOCUMENTS produced for inspection in the same manner that YOU store them (*e.g.*, if maintained by a custodian, such as email residing on an email server, organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My documents" on a custodian's hard drive, organize DOCUMENTS for production by custodian with path information preserved, etc.).

8.     To the extent responsive DOCUMENTS reside in databases and other such systems and files, YOU are requested to produce the relevant database(s) in useable form and/or permit access for inspection, review, and extraction of responsive information.

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

1    9.    These requests require production of paper DOCUMENTS in the same

2  form and same order as they are kept in the usual course of business, or organized

3  and labeled to correspond with the Requests set forth below.  If you choose the

4  former method, the DOCUMENTS are to be produced in the boxes, file folders,

5  bindings, or other containers in which the DOCUMENTS are found.  The titles,

6  labels, or other descriptions on the boxes, file folders, bindings, or other containers

7  are to be left intact.

8    10.   For any DOCUMENT or category of DOCUMENTS that was, but no

9  longer is, in YOUR possession, custody, or control, describe each such

10  DOCUMENT as completely as possible and provide the following information:

11    (a)    The reason the DOCUMENT is no longer in YOUR possession,

12    custody, or control;

13    (b)    The PERSON or entity, if any, who has possession, custody, or

14    control or, if unknown, so state;

15    (c)    If the DOCUMENT was destroyed or otherwise disposed of,

16    state (i) the manner of disposal (*i.e.*, destruction, loss,

17    discarding, or other means of disposal); (ii) the date of disposal;

18    (iii) the reason for disposal; (iv) the PERSON authorizing

19    disposal; (v) the PERSON disposing of the DOCUMENT; and

20    (vi) the name, address, and business affiliation of the most

21    recent custodian of the DOCUMENT.

22    11.   Pursuant to Federal Rule of Civil Procedure 26(e)(1), these Requests

23  impose a continuing obligation subsequent to YOUR initial production to timely

24  supplement YOUR response or production if YOU determine that YOUR response

25  or production is incomplete or incorrect.

26  <u>**REQUESTS FOR PRODUCTION**</u>

27    1.    All versions and drafts of the SCREENPLAY, including, but not

28  limited to:

7

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

1          a.     all versions and drafts of the SCREENPLAY that YOU received

2                from BERG;

3          b.     the most recent version of the SCREENPLAY; and

4          c.     all versions and drafts of the SCREENPLAY that YOU sent or

5                gave to any PERSON, including any producer, actor, director,

6                writer, or production personnel, or their agents, managers,

7                attorneys, or any other representatives.

8     2.     All DOCUMENTS that constitute, memorialize, or refer to

9 COVERAGE of the SCREENPLAY.

10     3.     All COMMUNICATIONS with BERG RELATED TO the

11 SCREENPLAY.

12     4.     All COMMUNICATIONS with BERG RELATED TO the MOTION

13 PICTURE.

14     5.     All COMMUNICATIONS with BERG that mention or refer to one or

15 more of the plaintiffs.

16     6.     All COMMUNICATIONS with BERG that mention or refer to

17 JAMES BOND.

18     7.     All COMMUNICATIONS with BERG that mention or refer to any of

19 the JAMES BOND WORKS or any of their titles, characters, plots, dialogue,

20 settings, themes, or other literary or dramatic elements.

21     8.     All COMMUNICATIONS with the SECTION 6 PRODUCERS

22 RELATED TO the SCREENPLAY.

23     9.     All COMMUNICATIONS with the SECTION 6 PRODUCERS

24 RELATED TO the MOTION PICTURE.

25     10.     All COMMUNICATIONS with the SECTION 6 PRODUCERS

26 RELATED TO BERG.

27     11.     All COMMUNICATIONS with the SECTION 6 PRODUCERS

28 RELATED TO JAMES BOND.

8

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

12.     All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the JAMES BOND WORKS.

13.     All DOCUMENTS RELATED TO the SCREENPLAY that contain the words "Bond," "James Bond," "007," "00", "double-O", "will return," "M," "Q," "Moneypenny," "Bond Girls," the name of any other character in any of the JAMES BOND WORKS, "license to kill," or "his [or her] majesty's secret service."

14.     All DOCUMENTS RELATED TO the MOTION PICTURE that contain the words "Bond," "James Bond," "007," "00", "double-O," "will return," "M," "Q," "Moneypenny," "Bond Girls," the name of any other character in any of the JAMES BOND WORKS, "license to kill," or "his [or her] majesty's secret service."

15.     All DOCUMENTS RELATED TO the SCREENPLAY that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

16.     All DOCUMENTS RELATED TO the MOTION PICTURE that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

17.     All cover letters, transmittal letters, buck slips, notes, or other COMMUNICATIONS included with or attached to any copy of the SCREENPLAY provided to any PERSON for any purpose.

18.     All COMMUNICATIONS between YOU and any PERSON in connection with that PERSON'S receipt or review of the SCREENPLAY.

19.     All DOCUMENTS that memorialize or refer to any COMMUNICATIONS between any of YOUR officers or employees concerning the SCREENPLAY, including without limitation: (a) any notes of any meetings or conference calls concerning the SCREENPLAY and (b) any DOCUMENTS that

9

1  memorialize or refer to any telephone or in-person discussion concerning the

2  SCREENPLAY.

3      20.    All COMMUNICATIONS between or among YOUR officers or

4  employees RELATED TO the SCREENPLAY.

5      21.    All COMMUNICATIONS between YOU and any other PERSON

6  RELATED TO the SCREENPLAY.

7      22.    All DOCUMENTS RELATED TO any casting notices or casting calls

8  for the MOTION PICTURE.

9      23.    All DOCUMENTS RELATED TO any edits, revisions, rewrites, or

10  changes to the SCREENPLAY that any PERSON suggested be made, requested be

11  made, directed be made, or considered making.

12      24.    All DOCUMENTS RELATED TO any edits, revisions, rewrites, or

13  changes any PERSON has made to the SCREENPLAY.

14      25.    All DOCUMENTS RELATED TO YOUR hiring, directing, or asking

15  any PERSON to edit, revise, rewrite, or change the SCREENPLAY.

16      26.    All DOCUMENTS RELATED TO any agreements or contracts YOU

17  have negotiated, are negotiating, or have entered into with BERG.

18      27.    All DOCUMENTS RELATED TO any monetary or other

19  consideration BERG has received, or may receive in the future, RELATED TO the

20  SCREENPLAY.

21      28.    All DOCUMENTS RELATED TO any monetary or other

22  consideration BERG has received, or may receive in the future, RELATED TO the

23  MOTION PICTURE.

24      29.    All DOCUMENTS RELATED TO any agreements or contracts YOU

25  have negotiated, are negotiating, or have entered into with any PERSON

26  RELATED TO the SCREENPLAY.

27

28

PLAINTIFF MGM'S FIRST SET OF RFPS
TO NBCUNIVERSAL MEDIA

30. All DOCUMENTS RELATED TO any agreements or contracts YOU have negotiated, are negotiating, or have entered into with any PERSON RELATED TO the MOTION PICTURE.

31. All DOCUMENTS and COMMUNICATIONS RELATED TO obtaining any form of liability insurance, including, but not limited to, errors and omissions insurance, in connection with the SCREENPLAY or the MOTION PICTURE.

32. All DOCUMENTS that constitute, memorialize, or refer to any edits, revisions, rewrites, or changes to the SCREENPLAY that were suggested, proposed, or requested in connection with obtaining any form of liability insurance, including, but not limited to, errors and omissions insurance, in connection with the SCREENPLAY or the MOTION PICTURE.

33. All DOCUMENTS that constitute, memorialize, or refer to reviews or analyses of the SCREENPLAY prepared by or at the request of any issuers or underwriters of any form of liability insurance, including, but not limited to, errors and omissions insurance.

34. DOCUMENTS RELATED TO any notices YOU have sent regarding YOUR or the notice recipient's obligation to preserve and/or retain DOCUMENTS RELATED to any dispute between YOU and plaintiffs or to this lawsuit.

35. DOCUMENTS sufficient to identify all PERSONS to whom each notice described in the prior request was sent and the date such notice was sent.

36. All DOCUMENTS RELATED TO any COMMUNICATIONS between plaintiffs and/or plaintiffs' counsel, on the one hand, and YOU, on the other hand, RELATED TO the SCREENPLAY, including, but not limited to, the correspondence sent by plaintiffs and/or plaintiffs' counsel to YOU dated October 23, 2013, November 18, 2013, November 27, 2013, and/or March 26, 2014, and the correspondence sent by YOU to plaintiffs and/or plaintiffs' counsel dated November 26, 2013 and/or March 31, 2014, or the subjects raised therein.

11

1     37.     All DOCUMENTS RELATED TO whether the SCREENPLAY or the

2  MOTION PICTURE violates or may violate any PERSON'S intellectual property

3  rights or other rights.

4     38.     To the extent not produced in response to any prior request, all

5  DOCUMENTS and COMMUNICATIONS RELATED TO the SCREENPLAY

6  and/or the MOTION PICTURE.

7

8  Dated:  April 4, 2014        ROBERT M. SCHWARTZ
                                    CASSANDRA L. SETO

9                                    BRIAN J. FINKELSTEIN
                                    O'MELVENY & MYERS LLP

10

11                                    MARC A. BECKER
                                    QUINN EMANUEL URQUHART

12                                       & SULLIVAN, LLP

13

14

15                                    By:_____

16                                          Robert M. Schwartz
                                  Attorneys for Plaintiffs Danjaq, LLC; Metro-

17                                  Goldwyn-Mayer Studios Inc.; United Artists
                                  Corporation; Seventeen Leasing

18                                  Corporation; Eighteen Leasing Corporation;
                                  Nineteen Leasing Corporation; Twenty

19                                  Leasing Corporation; Twenty-One Leasing
                                  Company LLC

20

21

22

23

24

25

26

27

28

EXHIBIT C

1   ROBERT M. SCHWARTZ (S.B. #117166)
        rschwartz@omm.com
2   CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
3   BRIAN J. FINKELSTEIN (S.B. #261000)
        brianfinkelstein@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, California  90067-6035
    Telephone:  (310) 553-6700
6
    MARC A. BECKER (S.B. #138872)
7       marcbecker@quinnemanuel.com
    QUINN EMANUEL URQUHART
8       & SULLIVAN, LLP
    865 S. Figueroa Street, 10th Floor
9   Los Angeles, California  90017
    Telephone:  (213) 443-3000
10
    Attorneys for Plaintiffs
11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14  DANJAQ, LLC, a Delaware limited         Case No. 2:14-cv-02527 DDP-Ex
    liability company; METRO-
15  GOLDWYN-MAYER STUDIOS               **PLAINTIFF METRO-GOLDWYN-**
    INC., a Delaware corporation;       **MAYER STUDIOS INC.'S FIRST**
16  UNITED ARTISTS CORPORATION,         **SET OF REQUESTS FOR**
    a Delaware corporation; SEVENTEEN   **PRODUCTION OF DOCUMENTS**
17  LEASING CORPORATION, a              **TO DEFENDANT AARON BERG**
    Delaware corporation; EIGHTEEN
18  LEASING CORPORATION, a
    Delaware corporation; NINETEEN
19  LEASING CORPORATION, a
    Delaware corporation; TWENTY
20  LEASING CORPORATION, a
    Delaware corporation; and TWENTY-
21  ONE LEASING COMPANY LLC, a
    Delaware limited liability company,
22
                    Plaintiffs,
23
            vs.
24
    UNIVERSAL CITY STUDIOS LLC, a
25  Delaware limited liability company;
    NBCUNIVERSAL MEDIA, LLC, a
26  Delaware limited liability company;
    and AARON BERG, an individual,
27
                    Defendants.
28

1  <u>Propounding Party</u>:   Plaintiff Metro-Goldwyn-Mayer Studios Inc.

2  <u>Responding Party</u>:   Defendant Aaron Berg

3  <u>Set Number</u>:   One

4

5     Pursuant to Federal Rule of Civil Procedure 34, Local Rule 34 of the United

6  States District Court for the Central District of California, and the Court's order

7  regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc.

8  demands that defendant Aaron Berg produce and permit the inspection and copying

9  of all documents designated below that are in his possession, custody, or control at

10  the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los

11  Angeles, California 90067 within thirty (30) days of the date of the Court's order

12  regarding expedited discovery.  Pursuant to Federal Rule of Civil Procedure 34(b)

13  and the Court's order regarding expedited discovery, defendant must also serve

14  written responses to the requests for production of documents within thirty (30)

15  days of the date of the Court's order regarding expedited discovery.

16  **<u>DEFINITIONS</u>**

17  <u>General Definitions.</u>

18     1.   "COMMUNICATION[S]" means any DOCUMENT that comprises,

19  embodies, reflects, or refers to any transmission of information from one person to

20  another, including, without limitation, by personal meeting, conversation, letter,

21  telephone, facsimile, electronic mail, instant messaging, text messaging, or

22  development notes.  Each request that encompasses information relating in any way

23  to COMMUNICATIONS to, from, or within a business or corporate entity is

24  hereby designated to mean, and should be construed to include, all

25  COMMUNICATIONS by and between representatives, employees, agents, or

26  servants of the business or corporate entity.  Any reference to "all

27  COMMUNICATIONS" refers to all DOCUMENTS that RELATE TO

28  COMMUNICATIONS.

2.      "DOCUMENT[S]" shall be construed in the broadest sense to mean any and all writings, tangible things, and property of any kind that are now or that have been in YOUR actual or constructive possession, custody, or control, including, but not limited to:  any handwritten, typewritten, printed, drawn, charted, taped, filmed, copied, recorded, transcribed, graphic, or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed, or stored, whether an original, a draft, or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, text messages, instant messages, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, buck slips, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, bills, time cards, receipts, purchase orders, telephone records, literature, invoices, contracts, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, video, audio and digital recordings, television commercials, website or other spot advertisements, prototypes, products, calendars, charts, diaries, drawings, sketches, messages, photographs, and any "active" or "backup" data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data compilations, computer files and tapes, computer disks, CD-ROMs, DVDs, flash drives, thumb drives, hard drives, computer metadata, electronic mail, online or network storage, website and web pages and transcriptions thereof, Internet social networking sites, and all other memorializations of any conversations, meetings, and conferences, by telephone or otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery, or any

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

1  other difference or modification of any kind.  The term DOCUMENT includes

2  COMMUNICATIONS.

3      3.    "PERSON" means any natural person, firm, association, organization,

4  partnership, business trust, corporation, company, public entity, or other legal entity

5  or organization separately identifiable, and any department(s) or division(s) therein.

6      4.    "RELATE[D] TO" means a DOCUMENT or DOCUMENTS that

7  concern, refer to, summarize, reflect, constitute, comprise, state, contain, embody,

8  pertain to, identify, study, are involved with, mention, discuss, consist of, show,

9  comment upon, evidence, support, respond to, deal with, describe, analyze, refute,

10  contradict, or are in any way pertinent to that subject, directly or indirectly, in

11  whole or in part.

12      5.    The terms "and" and "or" will be construed both conjunctively and

13  disjunctively, and each will include the other whenever such a dual construction

14  would serve to bring within a category DOCUMENTS or information that would

15  not otherwise be within its scope.

16      6.    The terms "all" or "any" mean "any, all, each, and every."

17      7.    The singular form shall include the plural and vice versa whenever

18  such dual construction will serve to bring within the scope of any Request

19  DOCUMENTS that would otherwise not be brought within its scope.

20

21  Case-Specific Definitions.

22      1.    "JAMES BOND" means the character James Bond created by author

23  Ian Fleming and featured in the JAMES BOND LITERARY WORKS and the

24  JAMES BOND MOTION PICTURES.

25      2.    "JAMES BOND LITERARY WORKS" means any novels, short

26  stories, collections, and/or serials that feature, in part, JAMES BOND, including,

27  but not limited to, *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You*

28  *Only Live Twice*, *On Her Majesty's Secret Service*, *Diamonds Are Forever*, *Live*

3

1  *and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*, *Moonraker*,

2  *For Your Eyes Only*, *Octopussy*, *A View to a Kill*, *The Living Daylights*, *Casino*

3  *Royale*, and *Quantum of Solace*.

4      3.    "JAMES BOND MOTION PICTURES" means any motion pictures or

5  television shows that feature, in part, JAMES BOND, including, but not limited to,

6  *Dr. No*, *From Russia With Love*, *Goldfinger*, *Thunderball*, *You Only Live Twice*,

7  *Casino Royale* (1967), *On Her Majesty's Secret Service*, *Diamonds Are Forever*,

8  *Live and Let Die*, *The Man With the Golden Gun*, *The Spy Who Loved Me*,

9  *Moonraker*, *For Your Eyes Only*, *Octopussy*, *Never Say Never Again*, *A View to a*

10  *Kill*, *The Living Daylights*, *License to Kill*, *GoldenEye*, *Tomorrow Never Dies*, *The*

11  *World is Not Enough*, *Die Another Day*, *Casino Royale* (2006), *Quantum of Solace*,

12  and *Skyfall*.

13      4.    "JAMES BOND WORKS" means the JAMES BOND LITERARY

14  WORKS and the JAMES BOND MOTION PICTURES.

15      5.    "MOTION PICTURE" means a motion picture based in whole or in

16  part on the SCREENPLAY, regardless of what the motion picture is titled.

17      6.    "SCREENPLAY" means the screenplay titled *Section 6* purportedly

18  authored by YOU, including any prior or later draft, version, iteration, revision, or

19  adaptation thereof.

20      7.    "SECTION 6 PRODUCERS" means any one or more PERSONS who

21  have been, or currently are, involved in developing, preparing, supervising, or

22  otherwise working on the SCREENPLAY or the MOTION PICTURE, including,

23  but not limited to, Lawrence Grey, Grey Matter Productions, Marc Platt, Marc Platt

24  Productions, Adam Siegel, Nira Park, and/or Big Talk Pictures.

25      8.    "UNIVERSAL" means defendants Universal City Studios LLC and

26  NBCUniversal Media, LLC, as well as all their parents, subsidiaries, or other

27  affiliates, predecessor or successor companies, any and all divisions of either entity,

28  and any and all present and former officers, directors, representatives, shareholders,

4

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

1   agents, employees, attorneys, accountants, investigators, or any other PERSON,

2   and/or affiliate acting on any of their behalves.

3        9.    "YOU" or "YOUR" means defendant Aaron Berg together with any

4   present or former employees, agents, managers, attorneys, representatives,

5   accountants, or other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is

6   a pseudonym or otherwise represents one or more other PERSONS, "YOU" or

7   "YOUR" means the PERSON or PERSONS who wrote the SCREENPLAY or who

8   purport to be the screenwriter known as "Aaron Berg," together with any present or

9   former employees, agents, managers, attorneys, representatives, accountants, or

10  other PERSON(S) acting on his, her, or their behalves.

11                                       **INSTRUCTIONS**

12       1.    These Requests call for the production of all responsive

13  DOCUMENTS that are within YOUR possession, custody, or control.  A document

14  is in YOUR "possession, custody, or control" if it is in YOUR physical possession,

15  or if, as a practical matter, YOU have the ability, upon request, to obtain possession

16  of the DOCUMENT or a copy thereof from another PERSON or entity that has

17  physical possession of the DOCUMENT.

18       2.    Whenever YOU object to a particular Request, or portion thereof,

19  YOU must produce all DOCUMENTS called for which are not subject to that

20  objection.

21       3.    If any DOCUMENT, or any portion of a DOCUMENT, covered by

22  these Requests is withheld by reason of a claim of attorney-client privilege, attorney

23  work product protection, or any other privilege or protection, furnish a log

24  providing the following information with respect to each such withheld

25  DOCUMENT:  date, author, recipients, general subject matter, subject line (if

26  applicable), and legal basis upon which the DOCUMENT has been withheld.  If

27  work product protection is asserted, also include the matter for which the document

28  was created.

5

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

4.   With respect to any DOCUMENT maintained or stored electronically, harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

5.   Produce all DOCUMENTS maintained or stored electronically in TIFF format (branded with production numbers and, as appropriate, redactions) accompanied by data files which reference the beginning and ending image bates numbers of each document and associated image cross-reference files, family group indications, and with all metadata intact and in an appropriate and useable manner. Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

6.   Produce Microsoft Excel and other spreadsheet files in native format.

7.   Organize electronic DOCUMENTS produced for inspection in the same manner that YOU store them (*e.g.*, if maintained by a custodian, such as email residing on an email server, organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My documents" on a custodian's hard drive, organize DOCUMENTS for production by custodian with path information preserved, etc.).

8.   To the extent responsive DOCUMENTS reside in databases and other such systems and files, YOU are requested to produce the relevant database(s) in useable form and/or permit access for inspection, review, and extraction of responsive information.

9.   These requests require production of paper DOCUMENTS in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the Requests set forth below.  If you choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, bindings, or other containers in which the DOCUMENTS are found.  The titles, labels, or other descriptions on the boxes, file folders, bindings, or other containers are to be left intact.

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

10.    For any DOCUMENT or category of DOCUMENTS that was, but no longer is, in YOUR possession, custody, or control, describe each such DOCUMENT as completely as possible and provide the following information:

      (a)    The reason the DOCUMENT is no longer in YOUR possession, custody, or control;

      (b)    The PERSON or entity, if any, who has possession, custody, or control or, if unknown, so state;

      (c)    If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.*, destruction, loss, discarding, or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the PERSON authorizing disposal; (v) the PERSON disposing of the DOCUMENT; and (vi) the name, address, and business affiliation of the most recent custodian of the DOCUMENT.

11.    Pursuant to Federal Rule of Civil Procedure 26(e)(1), these Requests impose a continuing obligation subsequent to YOUR initial production to timely supplement YOUR response or production if YOU determine that YOUR response or production is incomplete or incorrect.

## **REQUESTS FOR PRODUCTION**

1.    All versions and drafts of the SCREENPLAY, including all versions and drafts of the SCREENPLAY that YOU directly or indirectly provided to any PERSON including any agents, managers, attorneys, producers, or any other representatives, or motion picture studios (such as UNIVERSAL).

2.    DOCUMENTS sufficient to identify all literary, motion picture, research, or other materials YOU read, viewed, heard, recalled from memory, or relied upon in connection with writing the SCREENPLAY.

3.    DOCUMENTS sufficient to identify all PERSONS to whom YOU provided the SCREENPLAY or who YOU allowed to read the SCREENPLAY.

7

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

4.      All cover letters, transmittal letters, buck slips, notes, or other COMMUNICATIONS included with or attached to any copy of the SCREENPLAY provided to any PERSON for any purpose.

5.      All COMMUNICATIONS between YOU and any PERSON in connection with that PERSON'S receipt or review of the SCREENPLAY.

6.      All COMMUNICATIONS YOU received indicating whether any PERSON was or was not interested in acquiring, licensing, or optioning any rights to the SCREENPLAY.

7.      All COMMUNICATIONS with any of YOUR agents, managers, or representatives RELATED TO the SCREENPLAY.

8.      All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the SCREENPLAY.

9.      All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the MOTION PICTURE.

10.     All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO JAMES BOND.

11.     All COMMUNICATIONS with the SECTION 6 PRODUCERS RELATED TO the JAMES BOND WORKS.

12.     All COMMUNICATIONS with UNIVERSAL RELATED TO the SCREENPLAY.

13.     All COMMUNICATIONS with UNIVERSAL RELATED TO the MOTION PICTURE.

14.     All DOCUMENTS and COMMUNICATIONS that mention or refer to one or more of the plaintiffs.

15.     All DOCUMENTS and COMMUNICATIONS that mention or refer to JAMES BOND.

8

PLAINTIFF MGM'S
FIRST SET OF RFPS TO BERG

16.     All DOCUMENTS and COMMUNICATIONS that mention or refer to any of the JAMES BOND WORKS or any of their titles, characters, plots, dialogue, settings, themes, or other literary or dramatic elements.

17.     All DOCUMENTS and COMMUNICATIONS that contain the words "Bond," "James Bond," "007," "00," "double-O," "will return," "M," "Q," "Moneypenny," "Bond Girls," the name of any other character in any of the JAMES BOND WORKS, "license to kill," or "his [or her] majesty's secret service."

18.     All DOCUMENTS RELATED TO any agreements or contracts YOU have negotiated, are negotiating, or have entered into with UNIVERSAL or any parent or subsidiary of UNIVERSAL RELATED TO the SCREENPLAY.

19.     All DOCUMENTS RELATED TO any monetary or other consideration YOU have received, or may receive in the future, RELATED TO the SCREENPLAY.

20.     All DOCUMENTS RELATED TO any financial consideration YOU received, or may receive in the future, RELATED TO the MOTION PICTURE.

21.     All DOCUMENTS RELATED TO any edits, revisions, rewrites, or changes any PERSON suggested be made, requested be made, directed be made, or considered making to the SCREENPLAY.

22.     All DOCUMENTS RELATED TO any edits, revisions, rewrites, or changes any PERSON has made to the SCREENPLAY.

23.     All DOCUMENTS RELATED TO any COMMUNICATIONS between plaintiffs and/or plaintiffs' counsel, on the one hand, and UNIVERSAL, on the other hand, RELATED TO the SCREENPLAY, including, but not limited to, the correspondence sent by plaintiffs and/or plaintiffs' counsel to UNIVERSAL dated October 23, 2013, November 18, 2013, November 27, 2013, and March 26, 2014, and the correspondence sent by UNIVERSAL to plaintiffs and/or plaintiffs'

9

1  counsel dated November 26, 2013 and March 31, 2014, or the subjects raised

2  therein.

3      24.    All DOCUMENTS RELATED TO whether the SCREENPLAY or the

4  MOTION PICTURE violates or may violate any PERSON'S intellectual property

5  rights or other rights.

6      25.    To the extent not produced in response to any prior request, all

7  DOCUMENTS and COMMUNICATIONS RELATED TO the SCREENPLAY

8  and/or the MOTION PICTURE.

9

10  Dated:  April 4, 2014                ROBERT M. SCHWARTZ
                                         CASSANDRA L. SETO
11                                       BRIAN J. FINKELSTEIN
                                         O'MELVENY & MYERS LLP
12
                                         MARC A. BECKER
13                                       QUINN EMANUEL URQUHART
                                              & SULLIVAN, LLP
14

15
                                         By:_____
16                                              Robert M. Schwartz
                                         Attorneys for Plaintiffs Danjaq, LLC; Metro-
17                                       Goldwyn-Mayer Studios Inc.; United Artists
                                         Corporation; Seventeen Leasing
18                                       Corporation; Eighteen Leasing Corporation;
                                         Nineteen Leasing Corporation; Twenty
19                                       Leasing Corporation; Twenty-One Leasing
                                         Company LLC
20

21

22

23

24

25

26

27

28

10

# EXHIBIT D

ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700

MARC A. BECKER (S.B. #138872)
    marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, <br><br> Defendants. | Case No. 2:14-cv-02527 DDP-Ex <br><br> **PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT UNIVERSAL CITY STUDIOS LLC** |

| | | |
|---|---|---|
| 1 | <u>Propounding Party</u>: | Plaintiff Metro-Goldwyn-Mayer Studios Inc. |
| 2 | <u>Responding Party</u>: | Defendant Universal City Studios LLC |
| 3 | <u>Set Number</u>: | One |

Pursuant to Federal Rule of Civil Procedure 33, Local Rule 33 of the United States District Court for the Central District of California, and the Court's order regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc. demands that defendant Universal City Studios LLC answer these Interrogatories, separately and fully, in writing and under oath, and that the answers be signed by YOU and served within thirty (30) days of the date of the Court's order regarding expedited discovery, at the law offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, CA 90067.

## **DEFINITIONS**

1.     "BERG" means defendant Aaron Berg together with any present or former employees, agents, managers, attorneys, representatives, accountants, or other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is a pseudonym or otherwise represents one or more other PERSONS, "BERG" means the PERSON or PERSONS who wrote the SCREENPLAY or who purport to be the screenwriter known as "Aaron Berg," together with any present or former employees, agents, managers, attorneys, representatives, accountants, or other PERSON(S) acting on his, her, or their behalves.

2.     "DESCRIBE" shall mean, and shall require you to:  (1) provide detailed information such as the date, time, place, and circumstances RELATING TO the topic, contention, allegation, subject, event, or issue; (2) state all facts RELATING TO the topic, contention, allegation, subject, event, or issue; and (3) state all PERSONS who you know or believe have knowledge or information RELATING TO the topic, contention, allegation, subject, event, or issue.

3.     "IDENTIFY," "IDENTITY," or "IDENTIFIED" means:

a.     When used in reference to a natural person, it means to state the person's full name, present or last-known full home address(es), present or last-known telephone number(s), present business affiliation(s), and present or last-known full business mailing address(es); and

b.     When used in reference to an organization, it means to state the organization's full name and, if it is a corporation, partnership, or other business entity, the full address of its principal place of business, otherwise, state the organization's present or last-known full mailing address(es).

4.     "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

5.     "PERSON" means any natural person, firm, association, organization, partnership, business trust, corporation, company, public entity, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

6.     "RELATE[D] TO" or "RELATING TO" shall be interpreted in its customary broad sense and shall include without limitation concerning, referring to, summarizing, reflecting, constituting, comprising, stating, containing, embodying, pertaining to, identifying, studying, involving, mentioning, discussing, consisting of, showing, commenting upon, evidencing, supporting, responding to, dealing with, describing, analyzing, refuting, contradicting, or is in any way pertinent to that subject, directly or indirectly, in whole or in part.

7.     "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by BERG, including any prior or later draft, version, iteration, revision, or adaptation thereof.

8.     "SECTION 6 PRODUCERS" means any one or more PERSONS who have been, or currently are, involved in developing, preparing, supervising, or

2

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO UNIVERSAL

otherwise working on the SCREENPLAY or the MOTION PICTURE, including, but not limited to, Lawrence Grey, Grey Matter Productions, Marc Platt, Marc Platt Productions, Adam Siegel, Nira Park, and/or Big Talk Pictures.

      9.    "YOU" or "YOUR" means defendant Universal City Studios LLC as well as all parents, subsidiaries, or other affiliates, predecessor or successor companies, any and all divisions, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, and/or affiliate acting on any of their behalves.

      10.    The terms "and" and "or" will be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within a category documents or information that would not otherwise be within its scope.

      11.    The terms "all" or "any" mean "any, all, each, and every."

      12.    The singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of any Interrogatory information that would otherwise not be brought within its scope.

## INTERROGATORIES

**Interrogatory No. 1:**

      IDENTIFY all PERSONS who contributed any ideas, expression, or content to the SCREENPLAY since October 11, 2013.

**Interrogatory No. 2:**

      For each PERSON IDENTIFIED in response to the previous Interrogatory, DESCRIBE fully and in detail, all ideas, expression, or content each such PERSON contributed to the SCREENPLAY since October 11, 2013.

**Interrogatory No. 3:**

      IDENTIFY all PERSONS to whom YOU provided the SCREENPLAY or who YOU allowed to read the SCREENPLAY.

3

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO UNIVERSAL

**Interrogatory No. 4:**

IDENTIFY all PERSONS with whom YOU consulted or who participated in YOUR decision to option or acquire any rights in the SCREENPLAY, including without limitation any rights to develop, produce, or exploit a motion picture based on the SCREENPLAY.

**Interrogatory No. 5:**

IDENTIFY all PERSONS whose services YOU have engaged, or are in the process of engaging, to revise, rewrite, polish, or perform any other writing services in connection with the SCREENPLAY.

**Interrogatory No. 6:**

IDENTIFY all PERSONS who are supervising or reviewing, or who have been asked to supervise or review, the work of other PERSONS who are revising, rewriting, polishing, or performing other writing services in connection with the SCREENPLAY.

**Interrogatory No. 7:**

State the Bates numbers (or other document production reference numbers) on the first and last pages of the version(s) of the SCREENPLAY YOU received from BERG, as requested in Request for Production 1(a) of Plaintiff Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of Documents To YOU.  If YOU did not mark the document(s) with such numbers, describe fully and in detail how to identify within YOUR document production the version(s) of the SCREENPLAY requested under Request for Production 1(a).

**Interrogatory No. 8:**

State the Bates numbers (or other document production reference numbers) on the first and last pages of the most recent version of the SCREENPLAY, as requested in Request for Production 1(b) of Plaintiff Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of Documents To YOU.  If YOU did not mark the most recent version of SCREENPLAY with such numbers,

describe fully and in detail how to identify within YOUR document production the version of the SCREENPLAY requested under Request for Production 1(b).

**Interrogatory No. 9:**

State the Bates numbers (or other document production reference numbers) on the first and last pages of the version(s) of the SCREENPLAY YOU gave or sent to any PERSON, as requested in Request for Production 1(c) of Plaintiff Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of Documents To YOU.  If YOU did not mark the document(s) with such numbers, describe fully and in detail how to identify within YOUR document production the version(s) of the SCREENPLAY requested under Request for Production 1(c).

**Interrogatory No. 10:**

IDENTIFY each of YOUR employees who has input into or responsibility for deciding whether to approve (*i.e.*, "green light") the MOTION PICTURE for production.

**Interrogatory No. 11:**

IDENTIFY each producer who developed, prepared, supervised, contributed to, has been attached to, or otherwise worked on the SCREENPLAY or the MOTION PICTURE.

**Interrogatory No. 12:**

State any tentative or firm dates on which YOU have scheduled the commencement of, or anticipate commencing, principal photography of the MOTION PICTURE.

**Interrogatory No. 13:**

State any tentative or firm dates on which YOU have scheduled or anticipate theatrically releasing the MOTION PICTURE in the United States.

5

1    Dated:  April 4, 2014             ROBERT M. SCHWARTZ

2                                         CASSANDRA L. SETO
                                        BRIAN J. FINKELSTEIN

3                                         O'MELVENY & MYERS LLP

4                                         MARC A. BECKER

5                                         QUINN EMANUEL URQUHART
                                           & SULLIVAN, LLP

6

7

8                                         By:_____

9                                                 Robert M. Schwartz
                                   Attorneys for Plaintiffs Danjaq, LLC; Metro-

10                                    Goldwyn-Mayer Studios Inc.; United Artists
                                   Corporation; Seventeen Leasing

11                                    Corporation; Eighteen Leasing Corporation;
                                   Nineteen Leasing Corporation; Twenty

12                                    Leasing Corporation; Twenty-One Leasing
                                   Company LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT E

ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700

MARC A. BECKER (S.B. #138872)
    marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, | Case No. 2:14-cv-02527 DDP-Ex

**PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT NBCUNIVERSAL MEDIA, LLC** |
| Plaintiffs, | |
| vs. | |
| UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, | |
| Defendants. | |

| | | |
|---|---|---|
| 1 | <u>Propounding Party</u>: | Plaintiff Metro-Goldwyn-Mayer Studios Inc. |
| 2 | <u>Responding Party</u>: | Defendant NBCUniversal Media, LLC |
| 3 | <u>Set Number</u>: | One |

4

5    Pursuant to Federal Rule of Civil Procedure 33, Local Rule 33 of the United

6  States District Court for the Central District of California, and the Court's order

7  regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc.

8  demands that defendant NBCUniversal Media, LLC answer these Interrogatories,

9  separately and fully, in writing and under oath, and that the answers be signed by

10  YOU and served within thirty (30) days of the date of the Court's order regarding

11  expedited discovery, at the law offices of O'Melveny & Myers LLP, 1999 Avenue

12  of the Stars, Suite 700, Los Angeles, CA 90067.

13                          **<u>DEFINITIONS</u>**

14    1.    "BERG" means defendant Aaron Berg together with any present or

15  former employees, agents, managers, attorneys, representatives, accountants, or

16  other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is a pseudonym or

17  otherwise represents one or more other PERSONS, "BERG" means the PERSON

18  or PERSONS who wrote the SCREENPLAY or who purport to be the screenwriter

19  known as "Aaron Berg," together with any present or former employees, agents,

20  managers, attorneys, representatives, accountants, or other PERSON(S) acting on

21  his, her, or their behalves.

22    2.    "DESCRIBE" shall mean, and shall require you to:  (1) provide

23  detailed information such as the date, time, place, and circumstances RELATING

24  TO the topic, contention, allegation, subject, event, or issue; (2) state all facts

25  RELATING TO the topic, contention, allegation, subject, event, or issue; and

26  (3) state all PERSONS who you know or believe have knowledge or information

27  RELATING TO the topic, contention, allegation, subject, event, or issue.

28

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO NBCUNIVERSAL

3.      "IDENTIFY," "IDENTITY," or "IDENTIFIED" means:

a.      When used in reference to a natural person, it means to state the person's full name, present or last-known full home address(es), present or last-known telephone number(s), present business affiliation(s), and present or last-known full business mailing address(es); and

b.      When used in reference to an organization, it means to state the organization's full name and, if it is a corporation, partnership, or other business entity, the full address of its principal place of business, otherwise, state the organization's present or last-known full mailing address(es).

4.      "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

5.      "PERSON" means any natural person, firm, association, organization, partnership, business trust, corporation, company, public entity, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

6.      "RELATE[D] TO" or "RELATING TO" shall be interpreted in its customary broad sense and shall include without limitation concerning, referring to, summarizing, reflecting, constituting, comprising, stating, containing, embodying, pertaining to, identifying, studying, involving, mentioning, discussing, consisting of, showing, commenting upon, evidencing, supporting, responding to, dealing with, describing, analyzing, refuting, contradicting, or is in any way pertinent to that subject, directly or indirectly, in whole or in part.

7.      "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by BERG, including any prior or later draft, version, iteration, revision, or adaptation thereof.

8.      "SECTION 6 PRODUCERS" means any one or more PERSONS who have been, or currently are, involved in developing, preparing, supervising, or

otherwise working on the SCREENPLAY or the MOTION PICTURE, including, but not limited to, Lawrence Grey, Grey Matter Productions, Marc Platt, Marc Platt Productions, Adam Siegel, Nira Park, and/or Big Talk Pictures.

9.     "YOU" or "YOUR" means defendant NBCUniversal Media, LLC as well as all parents, subsidiaries, or other affiliates, predecessor or successor companies, any and all divisions, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other PERSON, and/or affiliate acting on any of their behalves.

10.     The terms "and" and "or" will be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within a category documents or information that would not otherwise be within its scope.

11.     The terms "all" or "any" mean "any, all, each, and every."

12.     The singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of any Interrogatory information that would otherwise not be brought within its scope.

## **INTERROGATORIES**

**Interrogatory No. 1:**

IDENTIFY all PERSONS who contributed any ideas, expression, or content to the SCREENPLAY since October 11, 2013.

**Interrogatory No. 2:**

For each PERSON IDENTIFIED in response to the previous Interrogatory, DESCRIBE fully and in detail, all ideas, expression, or content each such PERSON contributed to the SCREENPLAY since October 11, 2013.

**Interrogatory No. 3:**

IDENTIFY all PERSONS to whom YOU provided the SCREENPLAY or who YOU allowed to read the SCREENPLAY.

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO NBCUNIVERSAL

**Interrogatory No. 4:**

IDENTIFY all PERSONS with whom YOU consulted or who participated in YOUR decision to option or acquire any rights in the SCREENPLAY, including without limitation any rights to develop, produce, or exploit a motion picture based on the SCREENPLAY.

**Interrogatory No. 5:**

IDENTIFY all PERSONS whose services YOU have engaged, or are in the process of engaging, to revise, rewrite, polish, or perform any other writing services in connection with the SCREENPLAY.

**Interrogatory No. 6:**

IDENTIFY all PERSONS who are supervising or reviewing, or who have been asked to supervise or review, the work of other PERSONS who are revising, rewriting, polishing, or performing other writing services in connection with the SCREENPLAY.

**Interrogatory No. 7:**

State the Bates numbers (or other document production reference numbers) on the first and last pages of the version(s) of the SCREENPLAY YOU received from BERG, as requested in Request for Production 1(a) of Plaintiff Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of Documents To YOU.  If YOU did not mark the document(s) with such numbers, describe fully and in detail how to identify within YOUR document production the version(s) of the SCREENPLAY requested under Request for Production 1(a).

**Interrogatory No. 8:**

State the Bates numbers (or other document production reference numbers) on the first and last pages of the most recent version of the SCREENPLAY, as requested in Request for Production 1(b) of Plaintiff Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of Documents To YOU.  If YOU did not mark the most recent version of SCREENPLAY with such numbers,

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO NBCUNIVERSAL

1    describe fully and in detail how to identify within YOUR document production the

2    version of the SCREENPLAY requested under Request for Production 1(b).

3    **Interrogatory No. 9:**

4        State the Bates numbers (or other document production reference numbers)

5    on the first and last pages of the version(s) of the SCREENPLAY YOU gave or

6    sent to any PERSON, as requested in Request for Production 1(c) of Plaintiff

7    Metro-Goldwyn-Mayer Studios Inc.'s First Set Of Requests For Production Of

8    Documents To YOU.  If YOU did not mark the document(s) with such numbers,

9    describe fully and in detail how to identify within YOUR document production the

10   version(s) of the SCREENPLAY requested under Request for Production 1(c).

11   **Interrogatory No. 10:**

12       IDENTIFY each of YOUR employees who has input into or responsibility

13   for deciding whether to approve (*i.e.*, "green light") the MOTION PICTURE for

14   production.

15   **Interrogatory No. 11:**

16       IDENTIFY each producer who developed, prepared, supervised, contributed

17   to, has been attached to, or otherwise worked on the SCREENPLAY or the

18   MOTION PICTURE.

19   **Interrogatory No. 12:**

20       State any tentative or firm dates on which YOU have scheduled the

21   commencement of, or anticipate commencing, principal photography of the

22   MOTION PICTURE.

23   **Interrogatory No. 13:**

24       State any tentative or firm dates on which YOU have scheduled or anticipate

25   theatrically releasing the MOTION PICTURE in the United States.

26

27

28

5

PLAINTIFF MGM'S FIRST SET OF
INTERROGATORIES TO NBCUNIVERSAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  April 4, 2014

ROBERT M. SCHWARTZ
CASSANDRA L. SETO
BRIAN J. FINKELSTEIN
O'MELVENY & MYERS LLP

MARC A. BECKER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP


By:_____
          Robert M. Schwartz
Attorneys for Plaintiffs Danjaq, LLC; Metro-Goldwyn-Mayer Studios Inc.; United Artists Corporation; Seventeen Leasing Corporation; Eighteen Leasing Corporation; Nineteen Leasing Corporation; Twenty Leasing Corporation; Twenty-One Leasing Company LLC

# EXHIBIT F

1   ROBERT M. SCHWARTZ (S.B. #117166)
        rschwartz@omm.com
2   CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
3   BRIAN J. FINKELSTEIN (S.B. #261000)
        brianfinkelstein@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, California  90067-6035
    Telephone:  (310) 553-6700
6
    MARC A. BECKER (S.B. #138872)
7       marcbecker@quinnemanuel.com
    QUINN EMANUEL URQUHART
8       & SULLIVAN, LLP
    865 S. Figueroa Street, 10th Floor
9   Los Angeles, California  90017
    Telephone:  (213) 443-3000
10
    Attorneys for Plaintiffs
11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14  DANJAQ, LLC, a Delaware limited          | Case No. 2:14-cv-02527 DDP-Ex
    liability company; METRO-
15  GOLDWYN-MAYER STUDIOS              **PLAINTIFF METRO-GOLDWYN-**
    INC., a Delaware corporation;          **MAYER STUDIOS INC.'S FIRST**
16  UNITED ARTISTS CORPORATION,        **SET OF INTERROGATORIES TO**
    a Delaware corporation; SEVENTEEN  **DEFENDANT AARON BERG**
17  LEASING CORPORATION, a
    Delaware corporation; EIGHTEEN
18  LEASING CORPORATION, a
    Delaware corporation; NINETEEN
19  LEASING CORPORATION, a
    Delaware corporation; TWENTY
20  LEASING CORPORATION, a
    Delaware corporation; and TWENTY-
21  ONE LEASING COMPANY LLC, a
    Delaware limited liability company,
22
                Plaintiffs,
23
         vs.
24
    UNIVERSAL CITY STUDIOS LLC, a
25  Delaware limited liability company;
    NBCUNIVERSAL MEDIA, LLC, a
26  Delaware limited liability company;
    and AARON BERG, an individual,
27
                Defendants.
28

1     <u>Propounding Party</u>:     Plaintiff Metro-Goldwyn-Mayer Studios Inc.

2     <u>Responding Party</u>:     Defendant Aaron Berg

3     <u>Set Number</u>:     One

4

5     Pursuant to Federal Rule of Civil Procedure 33, Local Rule 33 of the United

6 States District Court for the Central District of California, and the Court's order

7 regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc.

8 demands that defendant Aaron Berg answer these Interrogatories, separately and

9 fully, in writing and under oath, and that the answers be signed by YOU and served

10 within thirty (30) days of the date of the Court's order regarding expedited

11 discovery, at the law offices of O'Melveny & Myers LLP, 1999 Avenue of the

12 Stars, Suite 700, Los Angeles, CA 90067.

13 **DEFINITIONS**

14     1.     "DESCRIBE" shall mean, and shall require you to: (1) provide

15 detailed information such as the date, time, place, and circumstances RELATING

16 TO the topic, contention, allegation, subject, event, or issue; (2) state all facts

17 RELATING TO the topic, contention, allegation, subject, event, or issue; and (3)

18 state all PERSONS who you know or believe have knowledge or information

19 RELATING TO the topic, contention, allegation, subject, event, or issue.

20     2.     "IDENTIFY," "IDENTITY," or "IDENTIFIED" means:

21     a.     When used in reference to a natural person, it means to state the

22     person's full name, present or last-known full home address(es),

23     present or last-known telephone number(s), present business

24     affiliation(s), and present or last-known full business mailing

25     address(es);

26     b.     When used in reference to an organization, it means to state the

27     organization's full name and, if it is a corporation, partnership,

28     or other business entity, the full address of its principal place of

PLAINTIFF MGM'S<br>FIRST SET OF INTERROGATORIES TO BERG

business, otherwise, state the organization's present or last-known full mailing address(es); and

c.    When used in reference to a computer, hard drive, or local or networked computer storage device, it means to state the type of device, its manufacturer and model number, the date on which YOU acquired it or first used it, its current location (and, if it is not in YOUR possession, the date on which it left your possession), and whether it is currently operational (and, if it is not operational, the date on which it ceased operating).

3.    "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

4.    "PERSON" means any natural person, firm, association, organization, partnership, business trust, corporation, company, public entity, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

5.    "RELATE[D] TO" or "RELATING TO" shall be interpreted in its customary broad sense and shall include without limitation concerning, referring to, summarizing, reflecting, constituting, comprising, stating, containing, embodying, pertaining to, identifying, studying, involving, mentioning, discussing, consisting of, showing, commenting upon, evidencing, supporting, responding to, dealing with, describing, analyzing, refuting, contradicting, or is in any way pertinent to that subject, directly or indirectly, in whole or in part.

6.    "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by YOU, including any prior or later draft, version, iteration, revision, or adaptation thereof.

7.    "YOU" or "YOUR" means defendant Aaron Berg together with any present or former employees, agents, managers, attorneys, representatives, accountants, or other PERSON(S) acting on Mr. Berg's behalf.  If "Aaron Berg" is a pseudonym or otherwise represents one or more other PERSONS, "YOU" or

2

PLAINTIFF MGM'S
FIRST SET OF INTERROGATORIES TO BERG

"YOUR" means the PERSON or PERSONS who wrote the SCREENPLAY or who purport to be the screenwriter known as "Aaron Berg," together with any present or former employees, agents, managers, attorneys, representatives, accountants, or other PERSON(S) acting on his, her, or their behalves.

8.      The terms "and" and "or" will be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within a category documents or information that would not otherwise be within its scope.

9.      The terms "all" or "any" mean "any, all, each, and every."

10.      The singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of any Interrogatory information that would otherwise not be brought within its scope.

## INTERROGATORIES

**Interrogatory No. 1:**

IDENTIFY the author or authors of the SCREENPLAY, including, but not limited to, all PERSONS who contributed any ideas, expression, or content to the SCREENPLAY.

**Interrogatory No. 2:**

IDENTIFY every PERSON to whom YOU or any of YOUR representatives provided the SCREENPLAY, or allowed to read the SCREENPLAY, as part of any effort to pitch, market, generate interest in, sell, offer for sale, or otherwise grant any rights in or to the SCREENPLAY.

**Interrogatory No. 3:**

For each PERSON IDENTIFIED in response to the previous Interrogatory, state the date(s) on which YOU or any of YOUR representatives provided each such PERSON the SCREENPLAY, or allowed to read the SCREENPLAY, as part of any effort to pitch, market, generate interest in, sell, offer for sale, or otherwise grant any rights in or to the SCREENPLAY.

3

PLAINTIFF MGM'S
FIRST SET OF INTERROGATORIES TO BERG

**Interrogatory No. 4:**

IDENTIFY every PERSON YOU contacted or otherwise communicated with as part of any effort to pitch, market, generate interest in, sell, offer for sale, or otherwise grant any rights in or to the SCREENPLAY.

**Interrogatory No. 5:**

For each PERSON IDENTIFIED in response to the previous Interrogatory, state the date(s) on which YOU contacted or otherwise communicated with each such PERSON as part of any effort to pitch, market, generate interest in, sell, offer for sale, or otherwise grant any rights in or to the SCREENPLAY.

**Interrogatory No. 6:**

IDENTIFY all computers, hard drives, and local or networked computer storage devices (including disks, flash drives, thumb drives, etc.) that YOU used in connection with YOUR writing of, or professional efforts RELATED TO, the SCREENPLAY.

**Interrogatory No. 7:**

DESCRIBE fully and in detail any computer memory or hard drive cleaning or clearing products or programs YOU purchased for, installed on, or used on any of the computers, hard drives, or local or networked computer storage devices IDENTIFIED in response to the previous Interrogatory.

4

PLAINTIFF MGM'S
FIRST SET OF INTERROGATORIES TO BERG

Dated:  April 4, 2014

ROBERT M. SCHWARTZ
CASSANDRA L. SETO
BRIAN J. FINKELSTEIN
O'MELVENY & MYERS LLP

MARC A. BECKER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP


By:_____
             Robert M. Schwartz
Attorneys for Plaintiffs Danjaq, LLC; Metro-Goldwyn-Mayer Studios Inc.; United Artists Corporation; Seventeen Leasing Corporation; Eighteen Leasing Corporation; Nineteen Leasing Corporation; Twenty Leasing Corporation; Twenty-One Leasing Company LLC

5

EXHIBIT G

ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700

MARC A. BECKER (S.B. #138872)
    marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, <br><br> Defendant. | Case No. 2:14-cv-02527 DDP-Ex <br><br> **PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT UNIVERSAL CITY STUDIOS LLC** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Court's order regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc. will take the deposition upon oral examination of defendant Universal City Studios LLC ("Universal") in the above-captioned action at the office of O'Melveny & Myers LLP, 1999 Avenue of the Stars, 7th Floor, Los Angeles, California 90067, commencing at 10 a.m., on _____, or at such other time and place as agreed upon by the parties, and continuing from day to day thereafter until completed (weekends and court holidays excepted), on the subjects set forth in the "Description of Matters on Which Examination is Requested," attached hereto as Attachment A and incorporated herein by reference. The deposition will be taken before an officer authorized to administer oaths in the State of California, and will be recorded by videotape and by stenographic method through the instant visual display of the testimony.

Please take further notice that, in accordance with Rule 30(b)(6) and the Court's order regarding expedited discovery, Universal is hereby notified of its obligation to designate a person or persons to testify on its behalf about information known or reasonably available to Universal concerning each of the topics identified in the "Description of Matters on Which Examination is Requested."

PLAINTIFF MGM'S NOTICE OF DEPOSITION OF
UNIVERSAL CITY STUDIOS LLC

1    Dated:  April 4, 2014                    ROBERT M. SCHWARTZ
                                              CASSANDRA L. SETO
2                                             BRIAN J. FINKELSTEIN
                                              O'MELVENY & MYERS LLP
3
                                              MARC A. BECKER
4                                             QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP
5

6
                                              By:  _____
7                                                      Robert M. Schwartz
                                              Attorneys for Plaintiffs Danjaq, LLC;
8                                             Metro-Goldwyn-Mayer Studios Inc.;
                                              United Artists Corporation; Seventeen
9                                             Leasing Corporation; Eighteen Leasing
                                              Corporation; Nineteen Leasing
10                                            Corporation; Twenty Leasing
                                              Corporation; Twenty-One Leasing
11                                            Company LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

PLAINTIFF MGM'S NOTICE OF DEPOSITION OF
UNIVERSAL CITY STUDIOS LLC

# ATTACHMENT A

## DESCRIPTION OF MATTERS ON WHICH EXAMINATION IS REQUESTED

Pursuant to Federal Rule of Civil Procedure 30(b)(6) and the Court's order regarding expedited discovery, plaintiffs demand that Universal City Studios LLC designate one or more officers, directors, managing agents, or other persons who are most knowledgeable to testify regarding the matters listed below.

## DEFINITIONS

1.      "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by defendant Aaron Berg, including any prior or later draft, version, iteration, revision, or adaptation thereof.

2.      "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

## SUBJECT MATTERS FOR TESTIMONY

1.      The content of the SCREENPLAY in its current form, including any revisions that have been made since October 11, 2013 and any revisions defendants have planned, or are planning, to make.

2.      The date on which the MOTION PICTURE may or will commence production, or "principal photography," if different.

3.      The date on which the MOTION PICTURE may or will be initially released to the public in the United States.

3

PLAINTIFF MGM'S NOTICE OF DEPOSITION OF UNIVERSAL CITY STUDIOS LLC

# EXHIBIT H

1    ROBERT M. SCHWARTZ (S.B. #117166)
      rschwartz@omm.com
2    CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
3    BRIAN J. FINKELSTEIN (S.B. #261000)
      brianfinkelstein@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, California  90067-6035
     Telephone:  (310) 553-6700
6

7    MARC A. BECKER (S.B. #138872)
      marcbecker@quinnemanuel.com
8    QUINN EMANUEL URQUHART
      & SULLIVAN, LLP
9    865 S. Figueroa Street, 10th Floor
     Los Angeles, California  90017
10   Telephone:  (213) 443-3000

11   Attorneys for Plaintiffs

12            **UNITED STATES DISTRICT COURT**

13           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14   DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, <br><br>          Plaintiff, <br><br>    v. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, <br><br>          Defendant. | Case No. 2:14-cv-02527 DDP-Ex <br><br> **PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT NBCUNIVERSAL MEDIA, LLC** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Court's order regarding expedited discovery, plaintiff Metro-Goldwyn-Mayer Studios Inc. will take the deposition upon oral examination of defendant NBCUniversal Media, LLC ("NBCUniversal") in the above-captioned action at the office of O'Melveny & Myers LLP, 1999 Avenue of the Stars, 7th Floor, Los Angeles, California 90067, commencing at 10 a.m., on _____, or at such other time and place as agreed upon by the parties, and continuing from day to day thereafter until completed (weekends and court holidays excepted), on the subjects set forth in the "Description of Matters on Which Examination is Requested," attached hereto as Attachment A and incorporated herein by reference. The deposition will be taken before an officer authorized to administer oaths in the State of California, and will be recorded by videotape and by stenographic method through the instant visual display of the testimony.

Please take further notice that, in accordance with Rule 30(b)(6) and the Court's order regarding expedited discovery, NBCUniversal is hereby notified of its obligation to designate the person or persons most knowledgeable and qualified to testify on its behalf about each of the topics identified in the "Description of Matters on Which Examination is Requested."

1    Dated:  April 4, 2014                    ROBERT M. SCHWARTZ
                                              CASSANDRA L. SETO
2                                             BRIAN J. FINKELSTEIN
                                              O'MELVENY & MYERS LLP
3
                                              MARC A. BECKER
4                                             QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP
5

6
                                              By: _____
7                                                      Robert M. Schwartz
                                              Attorneys for Plaintiffs Danjaq, LLC;
8                                             Metro-Goldwyn-Mayer Studios Inc.;
                                              United Artists Corporation; Seventeen
9                                             Leasing Corporation; Eighteen Leasing
                                              Corporation; Nineteen Leasing
10                                            Corporation; Twenty Leasing
                                              Corporation; Twenty-One Leasing
11                                            Company LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   2

# ATTACHMENT A
# DESCRIPTION OF MATTERS ON WHICH EXAMINATION IS REQUESTED

Pursuant to Federal Rule of Civil Procedure 30(b)(6) and the Court's order regarding expedited discovery, plaintiffs demand that NBCUniversal Media, LLC designate one or more officers, directors, managing agents, or other persons who are most knowledgeable to testify regarding the matters listed below.

## DEFINITIONS

1.      "SCREENPLAY" means the screenplay titled *Section 6* purportedly authored by defendant Aaron Berg, including any prior or later draft, version, iteration, revision, or adaptation thereof.

2.      "MOTION PICTURE" means a motion picture based in whole or in part on the SCREENPLAY, regardless of what the motion picture is titled.

## SUBJECT MATTERS FOR TESTIMONY

1.      The content of the SCREENPLAY in its current form, including any revisions that have been made since October 11, 2013 and any revisions defendants have planned, or are planning, to make.

2.      The date on which the MOTION PICTURE may or will commence production, or "principal photography," if different.

3.      The date on which the MOTION PICTURE may or will be initially released to the public in the United States.

PLAINTIFF MGM'S NOTICE OF DEPOSITION OF
NBCUNIVERSAL MEDIA

# EXHIBIT I

ROBERT M. SCHWARTZ (S.B. #117166)
    rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700

MARC A. BECKER (S.B. #138872)
    marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, <br><br> Defendant. | Case No. 2:14-cv-02527 DDP-Ex <br><br> **PLAINTIFF METRO-GOLDWYN-MAYER STUDIOS INC.'S NOTICE OF DEPOSITION OF AARON BERG** |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of

3  Civil Procedure and the Court's order regarding expedited discovery, plaintiff

4  Metro-Goldwyn-Mayer Studios Inc. shall take the deposition upon oral examination

5  of defendant Aaron Berg in the above-captioned action at the offices of O'Melveny

6  & Myers LLP, 1999 Avenue of the Stars, 7th Floor, Los Angeles, California,

7  90067, commencing at 10 a.m., on _____, or at such other time and place as

8  agreed upon by the parties, and continuing from day to day thereafter until

9  completed (weekends and court holidays excepted), on the content of the *Section 6*

10 screenplay in its current form, including any revisions that have been made since

11 October 11, 2013 and any revisions defendants have planned, or are planning, to

12 make.  The deposition will be taken before an officer authorized to administer oaths

13 in the State of California, and will be recorded by videotape and by stenographic

14 method through the instant visual display of the testimony.

15    Dated:  April 4, 2014                    ROBERT M. SCHWARTZ
                                              CASSANDRA L. SETO
16                                            BRIAN J. FINKELSTEIN
                                              O'MELVENY & MYERS LLP
17
                                              MARC A. BECKER
18                                            QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP
19

20
                                              By: _____
21                                                        Robert M. Schwartz
                                              Attorneys for Plaintiffs Danjaq, LLC;
22                                            Metro-Goldwyn-Mayer Studios Inc.;
                                              United Artists Corporation; Seventeen
23                                            Leasing Corporation; Eighteen Leasing
                                              Corporation; Nineteen Leasing
24                                            Corporation; Twenty Leasing
                                              Corporation; Twenty-One Leasing
25                                            Company LLC

26

27

28

# EXHIBIT J

O

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

November 27, 2013

OUR FILE NUMBER
577,088-189

**BY EMAIL**

Jimmy Horowitz (jimmy.horowitz@nbcuni.com)
Maren Christensen (maren.christensen@unistudios.com)
David Burg (david.burg@nbcuni.com)
Universal Pictures
100 Universal City Plaza
Universal City, California  91608

WRITER'S DIRECT DIAL
(310) 246-6835

WRITER'S E-MAIL ADDRESS
rschwartz@omm.com

Re:    _Section 6_ Screenplay

Dear Mr. Horowitz, Ms. Christensen, and Mr. Burg:

This responds to David Burg's November 26, 2013 letter, which responded to my November 18, 2013 letter.  Universal's representations in Mr. Burg's letter are:

- _Section 6_ is a "spec script" that Universal is in the process of optioning.

- Universal has not decided whether it will exercise the option.

- If Universal does exercise the option "then, as is customary in the film industry, the script likely will undergo substantial revision as the project is developed and produced."

- "Consequently, any film based upon the script almost certainly will deviate significantly from its current iteration."

- Universal "has no intention of violating [MGM and Danjaq's] rights."

In light of and in reliance upon these representations, MGM and Danjaq agree that it would be, as you say, "premature" at this time to assert any claims based on the version of _Section 6_ we reviewed and addressed in the November 18, 2013 letter.  For those reasons, MGM and Danjaq will refrain from doing so at the present time.

However, given the extent of the infringement in the _Section 6_ screenplay in its current form, we seriously question whether any motion picture based on it, even as modified, would not infringe MGM and Danjaq's rights.  To avoid the need for unnecessary litigation, however, we

O'MELVENY & MYERS LLP
Mr. Horowitz, Ms. Christensen & Mr. Burg – November 27, 2013 – Page 2

request that, if Universal decides to produce *Section 6* (using that or some other title), Universal promptly provide us with a copy of the then-current screenplay so that we can determine whether it violates MGM and Danjaq's rights.

In the meantime, this letter is not intended to be a complete recitation of MGM and Danjaq's claims in respect of this matter, or the facts related thereto, and we reserve all of MGM and Danjaq's rights and remedies.

Very truly yours,

Robert M. Schwartz
of O'MELVENY & MYERS LLP

RMS:tm
OMM_US:71982419.1

cc:     Aaron Hart – Verve
        Adam Levine – Verve
        Adam Marshall – Caliber Media
        Rob Szymanski – Eclipse Law Corporation
        Gary Barber – MGM
        Ken Schapiro – MGM
        Scott Packman – MGM
        Cheryl Rodman – MGM
        Michael Moore – MGM
        Daniel M. Flores – MGM
        David Pope – Danjaq, LLC
        Kevin S. Marks – Gang, Tyre, Ramer & Brown
        Marc A. Becker – Quinn Emanuel Urquhart & Sullivan LLP

# EXHIBIT K



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

March 26, 2014

OUR FILE NUMBER
577,088-189

**BY EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6835

Jimmy Horowitz (jimmy.horowitz@nbcuni.com)
Maren Christensen (maren.christensen@unistudios.com)
David Burg (david.burg@nbcuni.com)
Universal Pictures
100 Universal City Plaza
Universal City, California  91608

WRITER'S E-MAIL ADDRESS
rschwartz@omm.com

Re:    _Section 6_ **Screenplay**

Dear Mr. Horowitz, Ms. Christensen, and Mr. Burg:

This follows up on our November 18, 26, and 27, 2013 letters regarding the _Section 6_ screenplay (the "Screenplay").

When we last heard from you (on November 26, 2013), you stated that Universal had not even decided whether to exercise its option on the Screenplay, and that any claims by MGM and Danjaq would therefore be "premature."

It now appears that Universal's position has changed.  According to recently published reports, Universal is proceeding with the development of a motion picture based on the Screenplay.  The reports state that Joe Cornish has agreed to direct the motion picture and that Jack O'Connell has agreed to play the role of "Alec Duncan."  The reports state also that Marc Platt, Adam Siegel, Lawrence Grey, and Nira Park are attached as producers.

In light of these developments, we hereby request on behalf of MGM and Danjaq that, by **5:00 pm** on **Tuesday, April 1, 2014**, Universal send me, on a confidential, attorneys-eyes-only basis:

1.    the most recently-revised version of the _Section 6_ screenplay;

2.    the version(s) of the screenplay sent to Joe Cornish, Jack O'Connell, Marc Platt, Adam Siegel, Lawrence Grey, Nira Park, and any other persons (or their representatives) with whom Universal has discussed becoming involved in the project, if the version(s) sent to such persons is(are) any different than the most recently-revised version; and,

O'MELVENY & MYERS LLP
Mr. Horowitz, Ms. Christensen & Mr. Burg – March 26, 2014 – Page 2

3.      if a revision is currently being prepared, a list of any material differences between that revision and the most recently-revised version.

I also renew our November 18, 2013 request that, to summarize, Universal cease and desist from any use of the *James Bond* literary works and motion pictures, including as and to the extent embodied in the Screenplay, and that Universal take no further steps to develop, produce, distribute, or otherwise exploit any audiovisual work derived from the Screenplay.

If Universal fails to respond to this letter by **5:00 pm** on **Tuesday, April 1, 2014**, or if we are unsatisfied with Universal's response, we will take all necessary steps here in the Central District of California to protect MGM and Danjaq's *James Bond* intellectual property.

This letter is not intended to be a complete recitation of MGM and Danjaq's claims or the facts related thereto, and we reserve all of MGM and Danjaq's rights and remedies.

Very truly yours,

Robert M. Schwartz
of O'MELVENY & MYERS LLP

RMS:tm
OMM_US:72180526.1

cc:     Aaron Hart – Verve
        Adam Levine – Verve
        Adam Marshall – Caliber Media
        Rob Szymanski – Eclipse Law Corporation
        Gary Barber – MGM
        Ken Schapiro – MGM
        Scott Packman – MGM
        Cheryl Rodman – MGM
        Michael Moore – MGM
        Daniel M. Flores – MGM
        David Pope – Danjaq, LLC
        Kevin S. Marks – Gang, Tyre, Ramer & Brown
        Marc A. Becker – Quinn Emanuel Urquhart & Sullivan LLP

# EXHIBIT L

## Schwartz, Robert M.

**Subject:**                    FW: Section 6/James Bond


**From:** Burg, David (NBCUniversal) [mailto:David.Burg@nbcuni.com]
**Sent:** Monday, March 31, 2014 6:14 PM
**To:** Schwartz, Robert M.; Horowitz, Jimmy (NBCUniversal); Christensen, Maren (NBCUniversal)
**Cc:** Zummo, Anthony (NBCUniversal); Byrnes, Stacey (NBCUniversal); Ragsac, Ted (NBCUniversal); 'Robert Szymanski'; 'ahart@vervetla.com'; 'alevine@vervetla.com'; 'adam@calibermediaco.com'; 'Gary Barber'; 'Ken Schapiro (kschapiro@mgm.com)'; spackman@mgm.com; 'Cheryl Rodman (CRodman@mgm.com)'; 'Daniel M. Flores (DFlores@mgm.com)'; 'Michael Moore'; 'david.pope@eon.co.uk'; 'Kevin S. Marks'; 'Marc A. Becker - Quinn Emanuel (marcbecker@quinnemanuel.com)'; Goore, Jeffrey (NBCUniversal)
**Subject:** RE: Section 6/James Bond

Dear Bobby,

I am responding to your letter of March 26, 2014.  We continue to believe your request for documents and information is premature in that this project remains in early development, and is unnecessary because Universal has no intention of violating the intellectual property rights of your clients.

Universal continues to reserve all of its rights and defenses.

Sincerely,

David

David L. Burg
Senior Vice President, Litigation
NBCUniversal
100 Universal City Plaza
Building 1280-6
Universal City, California  91608
Office:  818-777-1856
Cell:  818-730-9835
Email:  David.Burg@nbcuni.com