David Aronoff (SBN 125694)
daronoff@lathropgage.com
Amber Henry (SBN 247624)
ahenry@lathropgage.com
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 789-4600
Facsimile:  (310) 789-4601

Attorneys for Defendant
AARON BERG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, | Case No. 2:14-cv-02527 DDP-Ex **NOTICE OF MOTION AND MOTION OF DEFENDANT AARON BERG TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** <br><br> <u>**REDACTED – PUBLICLY FILED**</u> |
| Plaintiffs, | |
| v. | **Honorable Dean D. Pregerson** |
| UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual, | **Date:       June 30, 2014** <br> **Time:      10:00 a.m.** <br> **Place:     Courtroom 3 – 2nd Floor** |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 30, 2014, at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Dean D. Pregerson in Courtroom 3 of the U.S. Courthouse located at 312 N. Spring Street, Los Angeles, California, defendant Aaron Berg ("Berg") will and does hereby move this Court to dismiss the Complaint filed by plaintiffs Danjaq, LLC, Metro-Goldwyn-Mayer Studios Inc., United Artists Corporation, Seventeen Leasing Corp., Eighteen Leasing Corp., Nineteen Leasing Corp., Twenty Leasing Corp., and Twenty-One Leasing Co., LLC (collectively, "Plaintiffs") in its entirety as against Berg.  This motion is made pursuant to Fed. R. Civ. P. Rule 12(b)(6) on the grounds that the allegations of the Complaint against Berg fail to state a valid claim for relief.  This Motion is made following the Local Rule 7-3 conference of counsel, which took place on May 20, 2014.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice and the Exhibits thereto, the [Proposed] Order submitted herewith, all of the pleadings, files, and records in this proceeding, all matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED:  May  27, 2014                __/s/ David Aronoff_____
                                        David Aronoff
                                        Amber Henry
                                        LATHROP & GAGE LLP
                                        Attorneys for Defendant AARON BERG

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................. 1

II.     LEGAL STANDARD UNDER RULE 12(B)(6) .................................. 3

III.    THE WORKS ALLEGED IN PLAINTIFFS' COMPLAINT ................. 5

        A.      SECTION 6 ................................................................................ 5

        B.      JAMES BOND AND HIS FILMS ............................................ 7

IV.     THE APPLICABLE LAW OF COPYRIGHT ...................................... 10

        A.      The Elements of a Copyright Infringement Claim ......................... 10

        B.      The Defenses of Fair Use and *De Minimis* Use .............................. 12

V.      ARGUMENT – THE *SECTION 6* SCREENPLAY AS A MATTER
        OF LAW DOES NOT INFRINGE ANY OF THE BOND
        COPYRIGHTS ................................................................................... 15

        A.      The Characters Are Not Substantially Similar ................................ 16

                1.      Duncan v. Bond ...................................................... 17

                2.      █████████ v. M ...................................................... 18

                3.      ██████ v. Q ............................................................ 18

                4.      ████ v. Moneypenny ............................................. 19

                5.      █████████ v. Bond Villain .................................... 19

        B.      The Plots and Sequences of Events Are Not Substantially
                Similar ......................................................................... 20

        C.      The Settings Are Not Substantially Similar .................................. 23

        D.      The Themes Are Not Substantially Similar ................................... 24

        E.      The Dialogue Is Not Substantially Similar ................................... 24

        F.      Any Similarities In Mood and Pace Are *Scènes à Faire* ............... 25

        G.      Summary of Extrinsic Test Factors ............................................. 25

VI.     CONCLUSION ................................................................................... 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arden v. Columbia Pictures Ind., Inc.*,
   908 F. Supp. 1248 (S.D.N.Y. 1995) ........................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................4

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) .......................................10, 11, 12, 16, 17

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ...........................................10, 11, 12, 25

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006) ................................................................15

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006) ................................................................15

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ..........................................................4, 14

*Burnett v. Twentieth Century Fox Film Corp.*,
   491 F. Supp. 2d 962 (C.D. Cal. 2007)..............................................4, 14

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010)................................................4

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ................................................................15

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ........................................................10, 11

*Chase-Riboud v. DreamWorks, Inc.*,
   987 F. Supp. 1222 (C.D. Cal. 1997) ...................................................................1, 11

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ..............................................................................4

*CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*,
   97 F. 3d 1504 (1st Cir. 1996)......................................................................11, 13

*Comins v. Discovery Communications, Inc.*,
   200 F. Supp. 2d 512 (D. Md. 2002).......................................................................17

*DiTocco v. Riordan*,
   815 F.Supp.2d 655 (S.D.N.Y. 2011) .............................................................16, 17

*Eaton v. NBC*,
   972 F. Supp. 1019 (E.D. Va. 1997) ....................................................................17

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003)..........................................................................................3

*Faulkner Literary Rights v. Sony Pictures Classics*,
   953 F. Supp. 2d 701 (N.D. Miss. 2013) ...........................................................4, 14

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)................................................................................3, 10, 13

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006) ...................................................................10, 11, 12

*Hogan v. DC Comics*,
   48 F. Supp. 2d 298 (S.D.N.Y. 1999) ...................................................................16

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ...................................................................11, 12, 21

*Litchfield v. Spielberg*,
   736 F.2d 1352, 222 U.S.P.Q. 965 (9th Cir. 1984).....................................11, 12, 21

*Metro-Goldwyn-Mayer, Inc. v. Amer. Honda Motor Co., Inc.*,
   900 F. Supp. 1287 (C.D. Cal. 1995).......................................................................7, 16

*Newton v. Diamond*,

    388 F.3d 1189 (9th Cir. 2004) ................................................................. 13

*Olson v. NBC*,

    855 F.2d 1446 (9th Cir. 1988) ...............................................12, 13, 21, 25

*Perfect 10, Inc. v. Amazon.com, Inc.*,

    487 F.3d 701 (9th Cir. 2007) ................................................................... 15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,

    602 F.3d 57 (2d Cir. 2010) ........................................................................ 5

*Peters v. West*,

    776 F. Supp. 2d. 742 (N.D. Ill. 2011) ................................................. 11, 13

*Rice v. Fox Broadcasting Co.*,

    330 F.3d 1170 (9th Cir. 2003) ............................................................. 10, 11

*Roth v. Garcia Marquez*,

    942 F.2d 617 (9th Cir. 1991) ..................................................................... 5

*Sandoval v. New Line Cinema Corp.*,

    147 F.3d 215 (2d Cir. 1998) ..................................................................... 13

*Seltzer v. Green Day, Inc.*,

    725 F. 3d 1170 (9th Cir. 2013) ................................................................. 15

*Sheldon Abend Revocable Trust v. Spielberg*,

    748 F. Supp. 2d 200 (S.D.N.Y. 2010) ................................................... 1, 16

*Suntrust Bank v. Houghton Mifflin Co.*,

    268 F.3d 1257 (11th Cir. 2001) ............................................................. 3, 14

*Warner Bros. v. American Broad. Co., Inc.*,

    720 F.2d 231 (2d Cir. 1983) .........................................2, 13, 14, 15, 17

*Wild v. NBC Universal, Inc.*,

    788 F. Supp. 2d 1083 (C.D. Cal. 2011) ..................................................... 4

*Williams v. Crichton*,

    84 F.3d 581 (2d Cir. 1996) ................................................................. 11, 12

NOTICE OF MOTION AND MOTION OF AARON BERG TO DISMISS PLAINTIFFS' COMPLAINT

*Zella v. E.W. Scripps Co.*,

    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...............................................................4, 10

**Statutes and Other Authorities**

17 U.S.C. § 102(b) ...............................................................................................11

17 U.S.C. § 107 ...............................................................................................14, 15

37 C.F.R. § 202.1(a) ...............................................................................11, 13, 24

Fed. R. Civ. P. Rule 12(b)(6) ...............................................................3, 4, 14

1                      <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.**      <u>**INTRODUCTION**</u>

3          This copyright infringement action was filed by the alleged owners of the

4 copyrights in various works featuring the fictional character "James Bond" ("Bond").[1]

5 Plaintiffs seek relief against a pre-production screenplay entitled "Section 6" ("the

6 Screenplay") – an undeniably original creative work ▆▆▆▆▆▆ that was written by

7 defendant Aaron Berg ("Berg").[2]  Plaintiffs' Complaint alleges that the Screenplay and

8 its fictional protagonist "Alec Duncan" ("Duncan") infringe their alleged copyrights in

9 Bond and 23 Bond films listed in Appendix A to the Complaint – including the motion

10 pictures *Dr. No*, *Goldfinger*, *Thunderball*, *You Only Live Twice*, *The Man With The*

11 *Golden Gun*, *Octopussy*, *Tomorrow Never Dies*, and *Skyfall* ("the Bond Works").[3]

12 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

13 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

14 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

15 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

16 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17 _____

18 [1] Bond's creator was the late author Ian Fleming ("Fleming"), who wrote his first
Bond novel in 1953 and passed away in 1964.  Cmplt., ¶ 26.  Although Fleming's

19 estate is not a party to this case, Plaintiffs allege that they hold exclusive motion
picture rights in Fleming's Bond works.  Cmplt., ¶¶ 26-35.

20

21 [2] Plaintiffs seek relief against the initial draft of the Screenplay (which Berg wrote on
"spec" and later optioned to defendant Universal City Studios) knowing full well that

22 not all purchased scripts are produced, and that produced scripts are usually rewritten
and revised many times.  Indeed, many cases have recognized that intermediate drafts

23 of a screenplay are not even relevant in a motion picture copyright claim.  *See Chase-*

24 *Riboud v. DreamWorks, Inc.*, 987 F. Supp. 1222, 1227 n.5 (C.D. Cal. 1997); *Sheldon*
*Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 205 n.4 (S.D.N.Y. 2010).

25

26 [3] *See* Berg's concurrently-filed Request for Judicial Notice ("RJN"), Ex. "A" (copy of
the Screenplay) and Exs. "B"-"X" (the Bond Works).

27 [4] "MI6" is the British equivalent of the CIA. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

28 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

1



1

2

3

4

5

6

7

8

9

10

11

12

13

14      Even if these phrases appropriate protected expression (and they do

15 not), they are not infringing.  *Warner Bros. v. American Broad. Co., Inc*., 720 F.2d

16 231, 244 (2d Cir. 1983) (finding no infringement of *Superman* by the TV show *The*

17 *Greatest American Hero* and further holding "the use … of lines [from the TV show]

18 that either mention Superman and other characters from the Superman saga or

19 incorporate phrases associated with Superman … is manifestly not infringement.").

20      The Complaint fails to state a claim because its allegations of infringement are

21 belied by the actual expressive content of the Screenplay and the Bond Works – which

22 are identified in the Complaint and thus supersede Plaintiffs' pleading.  Specifically,

23 the Complaint fails to state claims of infringement under the Ninth Circuit's "extrinsic

24 test," which requires that unprotected elements, including *scènes à faire*, ideas and

25 staples, must be "filtered out" before the works at issue are compared.  In particular:

26      •    First, Plaintiffs' core allegations that the Screenplay's character Duncan is

27 an infringing version of Bond do not withstand scrutiny.

28

2



1  

2   In contrast, Bond joined MI6

3   and he is far more ____ than

4 Duncan – he studied at Cambridge and his family owns an estate in Scotland.

5      •     Second, Plaintiffs' other allegations of infringement rest on unprotectable

6 and fragmented *scènes à faire*, ideas, and staples of the spy and action-film genres

7 existing, if at all, only at a high level of abstraction –

8  

9   Cmpt., ¶ 58.  Plaintiffs cobbled-together their list of these similarities by

10 cherry-picking and then juxtaposing isolated, out-of-context scenes from over a dozen

11 Bond films.  Such hodgepodge lists are insufficient to establish substantial similarity.

12      •

13  

14  

15  

16  

17 **II.**    <u>**LEGAL STANDARD UNDER RULE 12(b)(6)**</u>

18      The purpose of copyright protection is "to promote the creation and publication

19 of free expression."  *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).  Thus, "[t]he most

20 fundamental axiom of copyright law is that '[n]o author may copyright his ideas.'"

21 *Feist Pubs., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 349 (1991) (citation omitted).

22 Rather, the law distinguishes "between ideas and expression and makes only the latter

23 eligible for copyright protection."  *Eldred*, 537 U.S. at 219; *see also Suntrust Bank v.*

24 *Houghton Mifflin Co*., 268 F.3d 1257 (11th Cir. 2001) (holding that "[i]n copyright

25 law, the balance between the First Amendment and copyright is preserved, in part, by

26 the idea/expression dichotomy and the doctrine of fair use.").

27      Moreover, a Court should dismiss a claim when its allegations fail to state facts

28 on which a claim for relief can be granted.  Fed. R. Civ. P. Rule 12(b)(6).  A claim

3

must, at a minimum, allege "sufficient factual matter" to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility depends on whether or not "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  Allegations showing only the "mere possibility of misconduct" are insufficient. *Iqbal*, 556 U.S. at 679; *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011).[5]

Thus, in a copyright infringement case, it is established that "[w]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, ***non-infringement can be determined on a motion to dismiss***." *Campbell v. Walt Disney Co*., 718 F. Supp. 2d 1108, 1111-12 (N.D. Cal. 2010) (*quoting Christianson v. West Pub. Co*., 149 F.2d 202, 203 (9th Cir. 1945)) (emphasis added); *see also Wild*, 788 F. Supp. 2d at 1098 (granting 12(b)(6) motion); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) (same).  Likewise, fair use can also be determined as a matter of law on a motion to dismiss. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (affirming grant of Rule 12(b)(6) motion); *Faulkner Literary Rights v. Sony Pictures Classics*, 953 F. Supp. 2d 701 (N.D. Miss. 2013) (granting Rule 12(b)(6) motion); *Burnett v. Twentieth Century Fox Film Corp*., 491 F. Supp. 2d 962 (C.D. Cal. 2007) (same).[6]

---

[5] Allegations of material fact in the complaint are assumed true, but the court is not required to accept legal conclusions that cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

[6] Under the "incorporation by reference" doctrine, in ruling on a Rule 12(b)(6) motion in a copyright infringement case, the Court may evaluate the works at issue and determine whether they are substantially similar. *Campbell*, 718 F. Supp. 2d at 1111 n.3; *Wild*, 788 F. Supp. 2d at 1090 n.1; *Zella*, 529 F. Supp. 2d at 1128 n.2.  "[T]he works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).

III.   **THE WORKS ALLEGED IN PLAINTIFFS' COMPLAINT**

    A.   **SECTION 6**

NOTICE OF MOTION AND MOTION OF AARON BERG TO DISMISS PLAINTIFFS' COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF AARON BERG TO DISMISS PLAINTIFFS' COMPLAINT



**B.**   **JAMES BOND AND HIS FILMS**

Bond is a fictional British Secret agent often known as "007" who works for MI6 starting in the 1950s.  As set forth in Plaintiff's Complaint and *Metro-Goldwyn-Mayer, Inc. v. Amer. Honda Motor Co., Inc.*, 900 F. Supp. 1287 (C.D. Cal. 1995), Bond is known for "his cold-bloodedness; his overt sexuality; his love of martinis 'shaken, not stirred;' his marksmanship; his 'license to kill' and use of guns; his physical strength; [and] his sophistication."  *Id.* at 1296.  In every film, he seduces one or more women and uses various high-tech devices and gadgets to escape incredible situations.  Bond's technology includes cars that can turn invisible or into underwater vehicles, jetpacks, killer spike umbrellas, a flamethrower disguised as a bagpipe, a safecracker with a copy-machine attachment, a special anti-shark gun that fires pellets of compressed gas, ring cameras, wrist mounted dart guns, trick briefcases, and watches that shoot poisonous darts or that can act as saws, magnets or even lasers.

7

Bond can fly planes and helicopters, pilot speed boats, operate underwater vehicles, and he even commands a space shuttle.  Bond is from an aristocratic family in Scotland, and the family's gamekeeper helped raise him until his parents were killed during a climbing accident in the French Alps when he was eleven.  He speaks many languages with ease, frequently wears tuxedos, and studied at Cambridge University.  *See* RJN, Exs. "B"-"X."

The principal Bond films alleged to have been infringed in the Complaint are:

• ***Dr. No*** – Bond is sent to Jamaica to investigate the disappearance of a fellow British agent.  The trail leads Bond to the underground base of Dr. Julius No, who is plotting to disrupt a U.S. space launch with an atomic-powered radio beam.

• ***From Russia With Love*** – Bond is sent to assist in the defection of Soviet consulate clerk in Turkey, where the evil organization SPECTRE has devised a plot to steal a Lektor cryptographic device from the Soviets and sell it back to them while exacting revenge on Bond for killing their agent Dr. No.

• ***Goldfinger*** – Bond investigates gold smuggling by the evil Auric Goldfinger and eventually uncovers Goldfinger's plans to attack the U.S. Bullion Depository at Fort Knox with nerve gas.

• ***Thunderball*** – Bond must find two NATO atomic bombs stolen by SPECTRE, which holds the world ransom for £100 million in diamonds, in exchange for not destroying a major city in England or the U.S.

• ***You Only Live Twice*** – Bond is dispatched to Japan after American and Soviet manned spacecraft disappear mysteriously in orbit.  On a remote Japanese island, Bond comes face to face with Ernst Stavro Blofeld, the head of SPECTRE, which is trying to provoke nuclear war between the superpowers.

• ***On Her Majesty's Secret Service*** – Bond again faces Blofeld, who is planning to sterilize the world's food supply using a group of brainwashed "angels of death" carrying bacteriological warfare agents unless the world meets his demands.

NOTICE OF MOTION AND MOTION OF AARON BERG TO DISMISS PLAINTIFFS' COMPLAINT

- ***The Man With the Golden Gun*** – Bond is sent after the Solex Agitator, a device that can harness the power of the sun, while facing wealthy assassin Francisco Scaramanga, who is using the device in a lethal high-tech solar power plant.

- ***For Your Eyes Only*** – Bond attempts to locate Britain's missing ATAC missile command system before the Soviets recover it and use it to launch a nuclear attack with Britain's submarine-based Polaris missiles.

- ***The Spy Who Loved Me*** – Bond goes after Karl Stromberg, who plans to destroy the world and then create a new civilization under the sea after launching nuclear missiles from British and Soviet ballistic-missile submarines.

- ***Goldeneye*** – Bond is assigned by his new boss, a female "M" to recover the access key to a top secret space weapon known as "Goldeneye" which orbits the Earth and can fire an electromagnetic pulse that shuts down all electronic equipment.

- ***Tomorrow Never Dies*** – Bond attempts to stop a power-mad media mogul, Elliot Carver, from orchestrating events to start a nuclear WWIII between the UK and China so that he can control exclusive broadcast rights in China.

- ***World is Not Enough*** – After the assassination of billionaire Sir Robert King by the terrorist Renard, Bond is assigned to protect King's daughter Elektra, who had been held for ransom by Renard.  Bond unravels a scheme to increase petroleum prices by triggering a nuclear meltdown in the waters off Istanbul.

- ***Skyfall*** – After being severely wounded and presumed dead, Bond goes into self-imposed retirement on a tropical beach.  However, he returns to MI6 after a lethal attack on its headquarters is carried out by a rogue ex-MI6 agent, Raoul Silva, using MI6's own computer system.  With MI6 compromised both inside and out, Bond and M take refuge at Bond's family estate in Scotland, where Bond kills Silva.

## IV. THE APPLICABLE LAW OF COPYRIGHT

### A. The Elements of a Copyright Infringement Claim

To state a copyright infringement claim, Plaintiffs must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pub., Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991).  The second prong requires that Plaintiffs allege that "the infringer had access to [their] copyrighted work[s] ***and that the works at issue are substantially similar in their protected elements***." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  Even if ownership and access are assumed, Plaintiffs cannot state a claim here because substantial similarity is lacking.  *Zella*, 529 F. Supp. 2d at 1133 (citing cases).

To assess substantial similarity as a matter of law, the Court must compare the works at issue applying the Ninth Circuit's objective "extrinsic test." *Benay v. Warner Bros. Entm't, Inc*., 607 F.3d 620, 624 (9th Cir. 2010).  This comparison "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." *Funky Films, Inc. v. Time Warner Entm't Co*., 462 F.3d 1072, 1077 (9th Cir. 2006).  "In applying the extrinsic test, this court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).

Importantly, courts "must take care to inquire only whether 'the protectable elements, standing alone, are substantially similar.'" *Cavalier*, 297 F.3d at 822 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)); *see also Benay*, 607 F.3d at 624; *Funky Films*, 462 F.3d at 1077.   In so doing, courts must "filter out and disregard the non-protectable elements in making the substantial similarity determination." *Funky Films*, 462 F.3d at 1077; *Cavalier*, 297 F.3d at 822.  This is because a party claiming infringement may place 'no reliance upon any similarity in expression resulting from unprotectable elements.'" *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1172 (9th Cir. 2003) (citation omitted).  In particular, the unprotectable

10

elements that must be "filtered out" include:

• <u>Ideas, including general plot ideas</u> – "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Berkic*, 761 F.2d at 1293 (also holding "[n]o one can own the basic idea for a story."); *see also Rice*, 330 F.3d at 1175 ("we have held that 'similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market.'"); 17 U.S.C. § 102(b) (excluding ideas from protection).

• <u>Historical facts</u> – Historical facts cannot be protected by copyright. *Chase-Riboud*, 987 F. Supp. at 1226 ("No claim of copyright protection can arise from the fact that plaintiff has written about historical and factual items").

• <u>Stock scenes and themes</u> – "Familiar stock scenes and themes that are staples of literature are not protected" and must be filtered out. *Benay*, 607 F.3d at 624; *Cavalier*, 297 F.3d at 823; *Berkic*, 761 F.2d at 1293-94.

• <u>*Scènes à faire*</u> – The phrase *scènes à faire* refers to sequences of events that "flow naturally from generic plot-lines." *Funky Films*, 462 F.3d at 1081; *Williams*, 84 F.3d at 589 (court holding "electrified fences, automated tours, dinosaur nurseries, and uniformed workers . . . are classic scenes-a-faire that flow from the uncopyrightable concept of a dinosaur zoo").

• <u>Short phrases, titles and names</u> – It is well-established that short phrases, titles and names are not protectable. *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F. 3d 1504, 1519-20 (1st Cir. 1996); *Peters v. West*, 776 F. Supp. 2d. 742, 750 (N.D. Ill. 2011); 37 C.F.R. § 202.1(a) (excluding "[w]ords and short phrases such as names, titles, and slogans" from copyright protection).

Additionally, the courts give little weight to a plaintiff's list of scattered "similarities" that are juxtaposed out of sequence. *See*, *e.g.*, *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir. 1994). Indeed, such lists "are inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (also holding that "[w]e are particularly cautious where, as here, the list

11

emphasizes random similarities scattered throughout the works."); *Olson v. NBC*, 855 F.2d 1446, 1450 (9th Cir. 1988).   This is because copyright does not protect isolated and fragmented incidents, but instead covers "the actual concrete elements that make up ***the total sequence of events and the relationships between the major characters***." *Berkic*, 761 F.2d at 1293 (emphasis added); *see also Williams*, 84 F.3d at 588 (quoting Professor Chafee's famous statement that "protection [of a dramatic work] covers the '*pattern*' of [the] work … ***the sequence of events and the development of the interplay of characters***") (emphases added).

Importantly, a plaintiff's burden to satisfy all of the elements of the extrinsic test is not lowered by labeling the defendant's work to be an "unauthorized ***derivative work***."  *See* Cmpt., ¶¶ 69a.-d. (emphasis added).  Rather, the Ninth Circuit has held that "'[a] work will be considered a derivative work ***only if it would be considered an infringing work*** if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such work.'"  *Litchfield*, 736 F.2d at 1357 (citation omitted; emphasis in original).

Under these rules, the Ninth Circuit has dismissed copyright infringement claims arising from works sharing far greater similarities than the Screenplay and the Bond Works.  For example, in *Benay*, the Ninth Circuit affirmed summary judgment even though defendants' film *The Last Samurai* and plaintiffs' screenplay shared the same title and both told the story of an American war veteran who traveled to Japan in the 1870s to train the Imperial Army in modern Western warfare in order to combat a samurai uprising.  *Benay*, 607 F.3d at 624-29; *see also Funky Films*, 462 F.3d at 1078-81; *Kouf*, 16 F.3d at 1044-46; *Berkic*, 761 F.2d at 1293; *Olson*, 855 F.2d at 1450-53.

### B.    The Defenses of Fair Use and *De Minimis* Use

Plaintiffs allege that the Screenplay's few phrases evoking the Bond Works purportedly copy protected expression because ██████████████████████████ ████████████████████████████████████████████

12



1      ████████████████████"[7]  These allegations

2 are deficient because, as mentioned above (*see* Section IV.A., *supra*) such short

3 phrases are not protected by copyright.  37 C.F.R. § 202.1(a); *CMM*, 97 F.3d at 1519-

4 20; *Peters*, 776 F. Supp. 2d. at 750.  ██████████████████████

5 ████████████████████████████████████

6 ████████████████████████████████████

7 ████████████████████████████████████

8 ████████████████████████████

9      Moreover, even if the short phrases at issue are found to be both protectable and

10 substantially similar, they still fail to support valid claims because of the *de minimis*

11 and fair use defenses.  *See Warner Bros.*, 720 F.2d at 242 (discussing application of

12 both *de minimis* defense and fair use to claims of copyright infringement of *Superman*

13 by the TV show *Greatest American Hero*).  "For an unauthorized use of a copyrighted

14 work to be actionable, the use must be significant enough to constitute infringement....

15 This means that even where the fact of copying is conceded, no legal consequences

16 will follow from that fact unless the copying is substantial."  *Newton v. Diamond*, 388

17 F.3d 1189, 1192-93 (9th Cir. 2004) (holding copying of six second, three note segment

18 of composition was *de minimis*); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215,

19 217 (2d Cir. 1998) (use of photographs shown for 35.6 seconds in a film was *de*

20 *minimis*).  Here, the Screenplay's few references to ████████████████

21

22 ─────────────────

23 [7] The Complaint also alleges copyright infringement on the grounds that the
Screenplay ████████████████████████████████████

24 ███████  Cmplt., ¶ 61.b.  Plaintiff claims that this joke is copyright-protected
expression from the 1997 movie *Tomorrow Never Dies*.  *Id.*  However, █████████

25 ████████████████████████████████████████████

26 ████████████████████████████  *See* RJN, Ex. "Y."  As the

27 joke was not Plaintiffs' "original" expression, it is not copyright-protected and cannot
support their claims of infringement.  *See Feist*, 499 U.S. at 345 ("To qualify for

28 copyright protection, a work must be ***original*** to the author.") (emphasis added).

13

1 ██████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ████████████████████████████████████ *Cf. Faulkner*, 953 F.

4 Supp. 2d at 706-12 (folding *de minimis* defense into the court's fair use analysis).

5       Additionally, fair use routinely excuses literary references that are far more

6 extensive than the few transitory phrases at issue here. *Warner Bros.*, 720 F.2d at 242-

7 44 (holding that fair use defense permitted *The Greatest American Hero* to spoof

8 *Superman* with "lines [from the TV show] ***that either mention Superman and other***

9 ***characters from the Superman saga or incorporate phrases associated with***

10 ***Superman***") (emphasis added); *Suntrust Bank*, 268 F.3d at 1268-69 (dissolving, on

11 fair use grounds, preliminary injunction against *Wind Done Gone*, an unauthorized

12 sequel featuring some of the same characters from *Gone With the Wind*); *Faulkner*,

13 953 F. Supp. 2d at 706-12 (granting Rule 12(b)(6) motion of on fair use grounds in

14 action alleging that motion picture *Midnight in Paris* improperly quoted William

15 Faulkner's *Requiem for a Nun*); *see also Brownmark*, 682 F.3d at 690 (affirming grant

16 of Rule 12(b)(6) motion on fair use grounds); *Burnett*, 491 F. Supp. 2d at 967-72.

17       Fair use turns on (1) the purpose and character of the use, including whether

18 such use is of a commercial nature; (2) the nature of the copyrighted work; (3) the

19 amount and substantiality of the portion used in relation to the copyrighted work as a

20 whole; and (4) the effect of the use upon the potential market for or value of the

21 copyrighted work.  17 U.S.C. § 107.  As stated by the Second Circuit in holding that

22 *Superman* was not infringed by the *Greatest American Hero*,

23     in an era of mass communications, ***it is to be expected that phrases***

24 ***and other fragments of expression in a highly successful***
***copyrighted work will become part of the language***….  But an

25 original work of authorship with elements of parody, though

26 undoubtedly created in the hope of commercial success, stands on a
different footing from the products of a discount chain.  ***Whatever***

27 ***aesthetic appeal such a work may have results from the creativity***

28 ***that the copyright law is designed to promote.  It is decidedly in the***

*interests of creativity, not piracy, to permit authors to take well-known phrases and fragments*.

*Warner Bros.*, 720 F.2d at 242 (emphases added).

Importantly, "an allegedly infringing work is typically viewed as transformative [under the first fair use factor] as long as *a new expressive content or message is apparent*.  *This is so even where … the allegedly infringing work makes few physical changes to the original or fails to comment on the original*."  *Seltzer v. Green Day, Inc.*, 725 F. 3d 1170, 1177 (9th Cir. 2013) (emphases added); *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013) (artist who altered and incorporated several copyrighted photographs into a series of paintings and collages engaged in transformative use as to most of the paintings because the images were presented with "fundamentally different aesthetic"); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 721 (9th Cir. 2007); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006); *Blanch v. Koons*, 467 F.3d 244, 252-53 (2d Cir. 2006).

Here, the Screenplay is ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Thus, these uses – assuming that Plaintiffs' brief phrases and character names are copyright-protected and are sufficiently alleged to have been appropriated at all – are transformative, insubstantial, and cannot affect Plaintiffs' market for their films.  As a result, the fair use factors of 17 U.S.C. § 107 have been satisfied as a matter of law.

# V.   ARGUMENT – THE *SECTION 6* SCREENPLAY AS A MATTER OF LAW DOES NOT INFRINGE ANY OF THE BOND COPYRIGHTS

Under the extrinsic test, the Screenplay, as a matter of law, is not substantially similar to the Bond Works in the key expressive elements of plot, themes, dialogue, mood, setting, pace, characters and sequences of events.  *See* Section IV.A., *supra*. Moreover, Plaintiffs' claims are not saved by the Screenplay's few short phrases

15

1   evoking the Bond Works.  *See* Section IV.B., *supra*.  Hence, the Complaint should be

2   dismissed in its entirety as to Berg.

### A.       The Characters Are Not Substantially Similar

4           The linchpin of Plaintiffs' Complaint rests on their allegations that Duncan

5   infringes Plaintiffs' alleged copyright in Bond.  This Court has indicated that Bond

6   may be a protectable character.  *See Metro-Goldwyn-Mayer*, 900 F. Supp. at 1295-97.

7   But even when a character is sufficiently delineated so as to be protectable, ***"[t]he bar***

8   ***for substantial similarity in a character is set quite high***."  *Sheldon Abend Revocable*

9   *Trust*, 748 F. Supp. 2d at 208 (emphasis added).[8]  Accordingly, the Ninth Circuit has

10  held that a copyright-protected character in the plaintiff's work cannot be infringed by

11  a character in the defendant's work where "the ***differences*** between them ***at least***

12  ***equal the similarities***."  *Benay*, 607 F.3d at 626 (emphases added).  Thus,

> care must be taken to draw the elusive distinction between a substantially
> similar character that infringes a copyrighted character despite slight
> differences in appearance, behavior, or traits, and a somewhat similar
> though non-infringing character whose appearance, behavior, or traits, and
> especially their combination, significantly differ from those of a
> copyrighted character, even though the second character is reminiscent of
> the first one.  ***Stirring one's memory of a copyrighted character is not***
> ***the same as appearing to be substantially similar to that character, and***
> ***only the latter is infringement***.

---

[8] In *Sheldon*, an action in which it was alleged that the copyrighted story underlying
the motion picture *Rear Window* had been infringed by the film *Disturbia,* the court
found no substantial similarity between two single male protagonists confined to their
homes who spy on their neighbors to stave off boredom – only to witness them
committing murder.  *Sheldon*, 748 F. Supp. 2d at 208; *see also Hogan v. DC Comics*,
48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999) (no substantial similarity between two
murderous young male half-vampire characters named Nicholas Gaunt); *DiTocco v.
Riordan*, 815 F. Supp. 2d 655, 667-69 (S.D.N.Y. 2011), *aff'd* 2012 WL 4016898, at *1
(2d Cir. Sept. 13, 2012) (no substantial similarity between two teenaged heroes who
fought creatures from Greek mythology); *Arden v. Columbia Pictures Ind., Inc.*, 908 F.
Supp. 1248, 1261 (S.D.N.Y. 1995) (no substantial similarity between two middle-
aged, self-centered bachelors who are trapped in a repeating day while pursuing love).

1   *Warner Bros.*, 720 F.2d at 242 (emphasis added).  Additionally, no infringement can

2   arise from characters that merely embody "basic character types."  *Eaton v. NBC*, 972

3   F. Supp. 1019, 1028 & n.16 (E.D. Va. 1997).  Moreover, characters that are standard

4   in the treatment of a given topic are unprotectable as *scènes à faire*.  *Comins v.*

5   *Discovery Communications, Inc.*, 200 F. Supp. 2d 512, 520 (D. Md. 2002); *DiTocco*,

6   815 F. Supp. 2d at 666 ("stock characters" not protected).

7                    **1.    Duncan v. Bond**

8           Plaintiffs' claim that Duncan infringes Bond fails as a matter of law because

9   "the differences between them at least equal the similarities."  *Benay*, 607 F.3d at 626.

10  ████████████████████████████████████████████████

11  █████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████

13  ██████████   In contrast, Bond joined MI6 ██████████████ is apparently in his 30s,

14  ███████████████████████████████████  and comes from landed aristocracy.

15  Whereas Bond is highly sophisticated, attended Cambridge University, and is known

16  for wearing a tuxedo and sipping vodka martinis, ██████████████████████

17  ████████████████████████████████████████████████████

18  █████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ██████████████████████   Although both Duncan and Bond █████████████

23  ███████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████

27  ████████████████   *See Warner Bros.*, 720 F.2d at 243 ("[a] viewer of … the 'promos'

28  would necessarily be exposed to the … characteristics that ***distinguish*** him from

17

1   Superman") (emphasis added).  While Duncan and Bond arguably are "similar" in that

2   they are both ████████████████████████████████████████████████

3   ████████████████   such general "character types" are not protected by copyright.

4          2.   ████████████████ **v. M**



20         3.   ████████████ **v. Q**

21         In the Bond Works, Q – standing for quartermaster, a standard military term for

22   someone who provides equipment and supplies to the troops – is the head of Q Branch,

23   a research and development division of the British Secret Service.  In most of the Bond

24   Works, he is restricted to "behind the scenes" involvement, either based in London or

25   secret bases in the field.  Q is often annoyed with Bond but provides Bond with highly

26   advanced gadgets and weapons anyway.  ████████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 █████████████████████████████████████████████████

4 ███████████████████████████████████████

5 ████████████████████████████████████████

6 █████████████████████████████████████████████

7 ████████████████████████████████████████████

8 █████████████████████████████████████████████

9 █████████████████████████████████████████████

10 █████████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14     4.    █████ **v. Moneypenny**

15     In the Bond Works, Miss Moneypenny is the secretary to M, who is Bond's boss

16 and the head of MI6.  Moneypenny's small parts in the Bond Works are always

17 highlighted by the romantic tension between her and Bond.  In *Skyfall*, we learn that

18 she was a former field agent before becoming the secretary for M.  The Screenplay

19 █████████████████████████████████████████████

20 █████████████████████████████████████████████

21 ████████████████████████████████████████████

22 █████████████████████████████████████████████

23 ██████████████████████████████████████████████

24 ██████████████████████████████████

25     **5.**    ████████████  **v. Bond Villain**

26     Plaintiffs argue that the villains in the Bond Works and the Screenplay are

27 substantially similar because both involve a "diabolical madman" who seeks world

28 domination.  However, this description can be applied to almost any bad guy in any

1   action movie, particularly a spy thriller, and is nothing more than a stock character or

2   *scènes à faire* for a spy drama.  Even if protectable, ███████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10   ██████████████████████████████████████ None of these

11   expressive elements are remotely similar to the villains found in the Bond Works.

12      **B.**    **The Plots and Sequence of Events Are Not Substantially Similar**

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████

26      Plaintiffs' citations to random isolated incidents from the Bond Works do not

27   help them.  Plaintiffs allege that the Screenplay's plot is substantially similar to the

28   Bond Works because both involve: ████████████████████████████████

1 ████████████████████████████████

2 █████████████████████████████████████

3 ████████████████████████████████

4 ██████████████████████████████████

5 ███████████████████████████ Cmpt. ¶¶ 60(a)-(j).

6 However, none of these elements are protectable as they all involve only ideas, stock

7 characters and/or *scènes à faire*.  Moreover, such lists of scattered "similarities" fail to

8 satisfy the extrinsic test.  *See Kouf*, 16 F.3d at 1045-46; *Litchfield*, 736 F.2d at 1356;

9 *Olson*, 855 F.2d at 1450.  Even assuming *arguendo* that these elements are protectable,

10 they are not substantially similar to any **expression** in the Screenplay:

11 • First, the concepts of ████████████████ are expressed entirely

12 differently in the Screenplay and the Bond Works.  In *From Russia with Love*, the plot

13 revolves around an encryption machine that SPECTRE has stolen from and wants to

14 sell back to the Soviets.  In *For Your Eyes Only*, Bond is sent on a mission to retrieve a

15 missile control device that uses encoded transmissions.  ████████████████

16 ███████████████████████████████████

17 ███████████████████

18 • Second, the manner in which Bond ███████████████ is not a

19 basis for substantial similarity.  In *For Your Eyes Only*, Bond throws the decoding

20 machine off a cliff, smashing it into pieces.  ███████████████

21 █████████████████████████████████████

22 • Third, the issue of █████████ is entirely dissimilar in the works.  In

23 *Skyfall*, M is forced into retirement because her operation to recover a stolen list of

24 top-secret information concerning British spies was unsuccessful.  ████████████

25 █████████████████████████████████████

26 ████████████████████████████████

27 ████████████████████████████████

28

1    • Fourth, the ███████████████████ is expressed entirely differently in the

2    Screenplay and the Bond Works.  In *You Only Live Twice* and *Tomorrow Never Dies*,

3    there was a risk of nuclear war. ████████████████████████████████

4    █████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████████

6    • Fifth, there are no "Bond Girl" equivalents in the Screenplay. █████████

7    █████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████

9    ████████████████████████████████████████ is totally unlike the scene

10   in *Goldeneye* in which a psychological evaluator is sent by M – and Bond seduces her

11   with a bottle of champagne in his Aston Martin after taking her on a car chase.

12   • Sixth, ████████████████████ by Bond and Duncan could not be more

13   unalike.  Bond's gadgets include a wristwatch that contains a laser, a ball-point pen

14   that contains an explosive charge, cars that become invisible or turn into airplanes and

15   underwater vehicles, attaché cases booby trapped with noxious gas, killer umbrellas

16   and the like.  They all are ahead of their time and extremely high-tech. ██████████

17   █████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   • Seventh, the ███████████ in the Screenplay is expressed in a manner that is

20   completely unlike any of the Bond Works. ████████████████████████████

21   ███████████████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████

24   ███████████████████████████████████████████████████

25   ███████████████████████████████████████████████████

26   ██████████████████████████████████████████████████

27   ████████████████████████████████████████████ None of this is

28   substantially similar to any protectable expression contained in the Bond Works.

1    • Eighth, the concept of ████████████████████ plainly a *scènes à*

2    *faire* in the context of an action-adventure spy thriller. ██████████████

3    ████████████████████████████████████

4    ████████████████████████ In contrast, in *Skyfall*, M tells Bond a

5    shower might be a good idea because Bond has been lounging on beaches, not shaving

6    or bothering with his appearance while he enjoyed his drunken "retirement."

7    • Ninth, the ██████████ in the works could not be more different. ████

8    ████████████████████████████████████████

9    ██████████████████████ In contrast, in *Goldeneye*,

10   Bond is escaping from a secret Soviet base when he sees a plane about to take off.  He

11   pulls the pilot out of the plane, but they both fall out as the plane heads towards taking

12   a nosedive off a cliff.  Bond then chases the pilot-less plane on a motorcycle, and

13   jumps the motorcycle off a cliff, tumbling through the sky to the falling plane.  At the

14   last moment as he falls to the ground, Bond grabs the plane and slips inside, pulls the

15   plane out of its nosedive, and successfully flies away.

16   • Finally, the ██████████ in the Screenplay is far different than the one in the

17   Bond Works.  In *The World is Not Enough*, Bond is inside the MI6 building and

18   crashes out through a door onto the Thames River in an experimental high-tech speed

19   boat. ████████████████████████████

20   ████████████████████████████

21   ████████████████████████

22   ████████████████████████

23   ████████████████████████████

24   ████████████████████████████

25   ████████████████████

26   **C.    The Settings Are Not Substantially Similar**

27   The settings are also vastly different in the works.  None of the Bond Works are

28   set in ████████████████████████

---

23

1   █████████████ Likewise, none of the Bond Works concern ████████████

2 █████████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ███████████████████████████████

8     **D.**    <u>**The Themes Are Not Substantially Similar**</u>

9     Given that the Screenplay and the Bond Works all involve espionage stories, it

10 is notable how their themes differ. ██████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ████████████████████████████████████████████ In

14 contrast, the theme in the Bond Works is that world-threatening evil can be defeated

15 with aplomb, humor, sexual exploits, self-confidence and high-tech gadgets.

16     **E.**    <u>**The Dialogue Is Not Substantially Similar**</u>

17     To allege that the dialogue in the Screenplay is substantially similar to the Bond

18 Works, Plaintiffs aver a short list of random lines of dialogue from seven separate

19 Bond films. Cmpt., ¶ 61. However, as discussed above, the Copyright Act does not

20 protect brief phrases (*see, e.g.*, 37 C.F.R. § 202.1(a)) and, in any event, all of the

21 alleged "similarities" of dialogue arise from non-protectable similarities of ideas, stock

22 elements and *scènes à faire* that naturally flow from action-adventure stories centered

23 on spies. There is nothing protectable about ████████████████████

24 █████████████████████████████████████████████████████

25 ████████████████████████ Moreover, as mentioned above (*see* n.7,

26 *supra*), ██████████████████████ Plaintiffs' "original" expression

27 in the Bond Works, and hence is not protectable. Finally, even if any of the allegedly

28 infringed dialogue elements actually are protectable, the so-called "similar" phrases in

24

1  the Screenplay are *dis*similar, *de minimis*, and protected by fair use, especially insofar

2  as they may seem to allude to the Bond Works.  *See* Section IV.B., *supra*.

3  **F.      Any Similarities In Mood and Pace Are *Scènes à Faire***

4          Finally, at a high level of generality, the Screenplay and Bond Works have a

5  similar fast-pace and mood because they are both in the spy action-adventure genre.

6  However, since the mood and pace of a work – as in this case – often naturally arise

7  from its genre, these elements are no more than nonprotectable *scènes à faire* that must

8  be filtered out and do not establish substantial similarity under the extrinsic test.  *See*

9  *Olson*, 855 F.2d at 1451 (holding that similarities of mood and pace that are "common

10 to [a] genre" are unprotectable and "do not demonstrate substantial similarity").

11 **G.      Summary of Extrinsic Test Factors**

12         •      In short, Plaintiffs' allegations of "substantial similarity" are largely based

13 on unprotected ideas, *scènes à faire* and staples of the action-adventure spy genre that

14 have been compiled and juxtaposed at a high degree of abstraction without regard to

15 the actual expressive elements of the works at issue.  Additionally, the Screenplay's

16 minimal evocations of the Bond Works are not infringing and are also excused by the

17 *de minimis* use defense and the fair use doctrine.  Thus, Plaintiffs' Complaint fails to

18 state a claim for relief because Plaintiffs are not seeking to safeguard what copyright

19 actually protects – *i.e.*, "the actual concrete elements that make up the total sequence

20 of events and relationships between the major characters."  *Berkic*, 761 F.2d at 1293.

21 **VI.   CONCLUSION**

22         For each of the foregoing reasons, this Motion should be granted in full and the

23 Complaint should be dismissed in its entirety as to Berg.

24 DATED:  May 27, 2014              __/s/ David Aronoff_____

25                                                   David Aronoff
                                                     Amber Henry
26                                                   LATHROP & GAGE LLP
27                                                   Attorneys for Defendant AARON BERG

28