1   ROBERT M. SCHWARTZ (S.B. #117166)
        rschwartz@omm.com
2   CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
3   BRIAN J. FINKELSTEIN (S.B. #261000)
        brianfinkelstein@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, California  90067-6035
    Telephone:  (310) 553-6700
6

7   MARC A. BECKER (S.B. #138872)
        marcbecker@quinnemanuel.com
8   QUINN EMANUEL URQUHART
        & SULLIVAN, LLP
9   865 S. Figueroa Street, 10th Floor
    Los Angeles, California  90017
10  Telephone:  (213) 443-3000

11  Attorneys for Plaintiffs

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company, | Case No. 2:14-cv-02527 DDP-Ex **REDACTED PLAINTIFFS' OPPOSITION TO DEFENDANT AARON BERG'S MOTION TO DISMISS** **Judge:**  Hon. Dean D. Pregerson **Magistrate:**  Hon. Charles F. Eick **Date:**  July 28, 2014 **Time:**  10:00 A.M. **Place:**  Courtroom 3 **Complaint:**  April 3, 2014 |

22                  Plaintiff,

23          v.                                   PORTIONS PROVISIONALLY FILED
                                                 UNDER SEAL AT
24  UNIVERSAL CITY STUDIOS LLC, a               DEFENDANTS' REQUEST
    Delaware limited liability company;
25  NBCUNIVERSAL MEDIA, LLC, a
    Delaware limited liability company; and
26  AARON BERG, an individual,

27                  Defendant.

28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  *SECTION 6* IS A CLONE OF THE *JAMES BOND* WORKS ....................... 5

III. PLAINTIFFS HAVE STATED A CLAIM FOR INFRINGEMENT ........... 9

    A.   Berg's Screenplay Fails The "Traditional" Extrinsic Test ................ 10

        1.   The James Bond Character ........................................................ 11

        2.   The Other Bond Characters ....................................................... 14

        3.   Dialogue ................................................................................... 18

        4.   Plot and Sequence .................................................................... 19

        5.   Theme, Pace, Mood, and Setting ............................................. 22

    B.   Berg's Screenplay Also Fails The *Metcalf* Test ................................ 23

IV.  BERG'S FAIR USE AND *DE MINIMIS* USE DEFENSES FAIL .............. 24

V.   CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Stallone,*
    1989 WL 206431 (C.D. Cal. Apr. 25, 1989)..............................5, 11, 15, 16

*Benay v. Warner Bros. Entm't Inc.,*
    607 F.3d 620 (9th Cir. 2010) ...........................................................13

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ..................................................................24, 25

*Cariou v. Prince,*
    714 F.3d 694 (2d Cir. 2013) ...........................................................25

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.,*
    97 F.3d 1504 (1st Cir. 1996) .........................................................18

*DC Comics v. Towle,*
    2013 WL 541430 (C.D. Cal. Feb. 7, 2013) ...............................16, 21

*Dillon v. NBCUniversal Media LLC,*
    2013 WL 3581938 (C.D. Cal. June 18, 2013).................................9

*Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.,*
    953 F. Supp. 2d 701 (N.D. Miss. 2013) ........................................25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ......................................................................23

*Fisher v. Dees,*
    794 F.2d 432 (9th Cir. 1986) ........................................................25

*Harper & Row Pub'rs, Inc. v. Nation Enters.,*
    471 U.S. 539 (1985) ......................................................................24

*Hogan v. DC Comics,*
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)............................................11

*Joshua Meier Co. v. Albany Novelty Mfg. Co.,*
    236 F.2d 144 (2d Cir. 1956) ...........................................................4

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.,*
    676 F.3d 841 (9th Cir. 2012) ........................................................23

# TABLE OF AUTHORITIES

*LaTele TV C.A. v. Telemundo Commc'ns Grp.,*
  2013 WL 1296314 (S.D. Fla. Mar. 27, 2013) ..........................................2, 14, 22

*Leadsinger, Inc. v. BMG Music Publ'g,*
  512 F.3d 522 (9th Cir. 2008)...............................................................................24

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001)...............................................................15, 22, 24

*Lone Wolf McQuade Assocs. v. CBS Inc.,*
  961 F. Supp. 587 (S.D.N.Y. 1997)..............................................................13, 14

*Metcalf v. Bochco,*
  294 F.3d 1069 (9th Cir. 2002)..................................................................*passim*

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.,*
  900 F. Supp. 1287 (C.D. Cal. 1995) ..........................................................*passim*

*Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Coop. Prods., Inc.,*
  479 F. Supp. 351 (N.D. Ga. 1979) ...............................................................2, 18

*Micro Star v. Formgen Inc.,*
  154 F.3d 1107 (9th Cir. 1998)...........................................................................20

*Murray Hill Publn's, Inc. v. ABC Commn's, Inc.,*
  264 F.3d 622 (6th Cir. 2001)..............................................................................18

*NEC Corp. v. Intel Corp.,*
  1989 WL 67434 (N.D. Cal. Feb. 6, 1989)..........................................................14

*New Line Cinema Corp. v. Bertlesman Music Grp,*
  693 F. Supp. 1517 (S.D.N.Y.1988) ....................................................................11

*Newton v. Diamond,*
  388 F.3d 1189 (9th Cir. 2003)............................................................................25

*Norse v. Henry Holt and Co.,*
  991 F.2d 563 (9th Cir. 1993)..............................................................................18

*Paramount Pictures Corp. v. Carol Publ'g Grp.,*
  11 F. Supp. 2d 329 (S.D.N.Y. 1998)..................................................................18

# TABLE OF AUTHORITIES

*Peters v. West,*
  776 F. Supp. 2d 742 (N.D. Ill. 2011)..................................................18

*Salinger v. Colting,*
  641 F. Supp. 2d 250 (S.D.N.Y. 2009)..........................................12, 20

*Sapon v. DC Comics,*
  2002 WL 485730 (S.D.N.Y. Mar. 28, 2002) ..................................2, 11

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003)..............................................................23

*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013)............................................................25

*Shaw v. Lindheim,*
  919 F.2d 1353 (9th Cir. 1990)......................................................*passim*

*Sheldon v. Spielberg,*
  748 F. Supp. 2d 200 (S.D.N.Y. 2010)................................................13

*Spry Fox, LLC v. LOLApps, Inc.,*
  2012 WL 5290158 (W.D. Wash. Sept. 18, 2012)..................................2

*Three Boys Music Corp. v. Bolton,*
  212 F.3d 477 (9th Cir. 2000)..........................................................9, 23

*TMTV Corp. v. Mass Prod. Inc.,*
  645 F.3d 464 (1st Cir. 2011) ..............................................................20

*Toho Co., Ltd. v. William Morrow and Co., Inc.,*
  33 F. Supp. 2d 1206 (C.D. Cal. 1998)................................................11

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,*
  715 F.2d 1327 (9th Cir. 1983)..............................................................9

*U.S. v. Martin,*
  438 F.3d 621 (6th Cir. 2006)..............................................................17

*Universal City Studios, Inc. v. Film Ventures Int'l, Inc.,*
  543 F. Supp. 1134 (C.D. Cal. 1982).........................................12, 15, 16

# TABLE OF AUTHORITIES

*Universal City Studios, Inc. v. Kamar Indus., Inc.*,
    1982 WL 1278 (S.D. Tex. Sep. 20, 1982)........................................................ 18

*Walt Disney Prods. v. Air Pirates*,
    581 F.2d 751 (9th Cir. 1978) ........................................................................... 5

*Warner Bros. Inc. v. Am. Broad. Cos., Inc.*,
    720 F.2d 231 (2d Cir. 1983) ............................................................. 12, 14, 25

STATUTES

17 U.S.C. § 107............................................................................................... 24

RULES

FED. R. CIV. P. 12(d) ....................................................................................... 15

OTHER AUTHORITIES

4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 13.03[A][1][b]
    (Matthew Bender, Rev. Ed.) ............................................................................. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The Court should deny defendant Berg's motion to dismiss because his *Section 6* screenplay misappropriates *substantially* more than enough protectable expression from plaintiffs' *James Bond* copyrighted works to state a claim for infringement.  Berg's Screenplay is infringing, not only under the "traditional" extrinsic test for substantial similarity, but also under the "unique arrangement of elements" test applied in the Ninth Circuit in cases such as *Metcalf v. Bochco*—an infringement standard that Berg's motion fails to even mention, much less refute.

Over the last 60 years—starting with Ian Fleming's novels and stories and continuing with plaintiffs' 23 films—plaintiffs have created the "*James Bond* world."  Movie audiences immediately recognize this fictional world in which a British agent, working for "Her Majesty's Secret Service," assigned a "double-O" number and issued a "license to kill," possessed of his wit, fearlessness, charm, and other unique mental and physical skills, is sent by the irritable chief of MI-6 on secret missions to take on megalomaniacal villains, protected by murderous henchmen, with diabolical schemes to harm England, if not the entire world.  He is armed with a signature handgun and ordinary objects that conceal advanced technology, by a quartermaster who is disappointed with the agent's failure to return his gadgets intact.  The agent is accompanied by beautiful women, who find him irresistible.  All of these fictional elements came from Fleming's and plaintiffs' efforts and, with many others, comprise the unique *James Bond* world.

Defendant Berg unlawfully appropriated that fictional *James Bond* world.  Plaintiffs did not file this case merely because Berg's Screenplay is about a British spy.  Berg was free to write a screenplay about a British spy using original characters, dialogue, plots, and other elements—as others have done.  This case arises because, in writing his Screenplay, Berg chose not to create *his own* fictional British spy, and *his own* fictional world, but to take all of the core characters and elements from the *James Bond* world and use them to write a *James Bond* story.

1   Berg attempted to cloak his infringement by ███████████████████ and

2   ██████████████████████. That makes no difference. Courts have

3   made clear that such changes are merely cosmetic and are to be ignored.[1]

4         Berg's central character is not an original character that he created. Instead,

5   it is a character who acts like James Bond, speaks like James Bond, and possesses

6   the other unique traits of James Bond. This Court has already held that plaintiffs'

7   James Bond character is subject to its own copyright, and that a use less extensive

8   than Berg's was infringing. *See Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor*

9   *Co., Inc.*, 900 F. Supp. 1287 (C.D. Cal. 1995) ("*Honda*"). Berg's copying of the

10  James Bond character is thus alone sufficient to defeat his motion. Remarkably, he

11  barely mentions the *Honda* case, and never even addresses its dispositive holding.

12        But Berg's misappropriation did not end there. He also copied all of the

13  Screenplay's other characters from the *James Bond* world: the head of Her

14  Majesty's Secret Service, the ████████████████ (who Berg unimaginatively calls

15  "█████" instead of "█████████"), the █████████ (the character "██" in the

16  Bond works) who ████████████████████████████████████████, the ███████

17  █████ and his ██████████████████, and the ████████████████████ who

18  are ████████████████████████. Tellingly, Berg's Screenplay

19

---

20  [1] As to names, *see Spry Fox, LLC v. LOLApps, Inc.*, 2012 WL 5290158, at *1
(W.D. Wash. Sept. 18, 2012) ("a writer who appropriates the plot of 'Gone with the

21  Wind' cannot avoid copyright infringement by naming its male protagonist 'Brett
Cutler' and making him an Alaskan gold miner"); *Metro-Goldwyn-Mayer, Inc. v.*

22  *Showcase Atlanta Coop. Prods., Inc.*, 479 F. Supp. 351, 354-56 (N.D. Ga. 1979)
(immaterial that defendant changed "Scarlett O'Hara" and "Rhett Butler" to "Shady

23  Charlotte O'Mara" and "Brett Studler"). As to time and place, *see* 4 M. NIMMER &
D. NIMMER, NIMMER ON COPYRIGHT § 13.03[A][1][b] (Matthew Bender, Rev. Ed.)

24  ("West Side Story" and "Romeo and Juliet" may be substantially similar, even
though many elements, including the "setting[,] … are far removed"); *LaTele*

25  *Telv'n C.A. v. Telemundo Commc'ns Grp.*, 2013 WL 1296314, at *4, *10 (S.D. Fla.
Mar. 27, 2013) (finding substantial similarity even though one work is set in

26  Venezuela in the 1980s while the other is set in Los Angeles 30 years later); *Sapon
v. DC Comics*, 2002 WL 485730, at *2-4, *11 (S.D.N.Y. Mar. 28, 2002) (Batman

27  protectable even though he changes to fit the times).

28

1   includes no █████████████████. His motion, which compares the key

2   characters of both parties' works, reflects that fact. *See* Mot. at 17-20.

3       Berg also stole key dialogue and phrases from the Bond works that are

4   among the most well-known in film, including Bond's signature introduction of

5   "Bond. James Bond," his "double-O" number, his "license to kill" and

6   employment by "Her Majesty's Secret Service"—all of which were created by

7   Fleming and are inextricably linked with the *James Bond* world—and the promise

8   that █████████████████. Berg stole the plot backbone that is a fixture

9   in the Bond works, and specific plot elements from, among others, *From Russia*

10  *With Love* (including its ██████████████), *Octopussy* (including the plot of a

11  ██████████████████████████), *GoldenEye* (including

12  the plot of a ███████████████████, use of a ██████

13  ███████, and Bond's escape from ████

14  in a ████████), and *Skyfall* (including the scene where Bond

15  ██████████████████████, concluding with ████████

16  ██████████). To cement the connection with the Bond works, Berg also

17  copied their core theme—that one man, working with only his wit and physical

18  skills, can take on and defeat a superior force. And to make his Screenplay as much

19  like Bond as possible, Berg also copied the settings, mood, and pace.

20      Even Berg struggles to defend the result. He admits the Screenplay "may

21  evoke aspects of the Bond Works" and "seem[s] to allude to the Bond Works."

22  Mot. at 2, 25. Berg is too modest. He did not copy a few minor bits of *James Bond*

23  set dressing, he lifted the most central, recognized, and valuable elements. It is not

24  just the quantity of what he copied, it is the pervasiveness of his theft. The result is

25  a misappropriation "multiplier effect" in which the similarity of each copied

26  element to its Bond counterpart becomes all the more clear and material.

27      Plaintiffs never authorized Berg to take any of their copyright-protected

28  property, or to sell it to their competitor, defendant Universal, for over $1 million.

1   Berg nonetheless asks the Court to decide this case on a pleading motion.  His

2   record is incomplete, however, as he ignores all of Fleming's novels and stories and

3   focuses solely on the motion pictures.  Regardless of what Berg left out of the

4   record, there are three fatal problems with his motion:

5       ***First***, Berg focuses on the alleged *dis*similarities between his Screenplay and

6   the Bond works, pointing to what he did not steal to mask all that he did.  Such

7   comparisons are irrelevant.  "No plagiarist can excuse the wrong by showing how

8   much of his work he did not pirate."  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th

9   Cir. 1990); *cf. Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 146-47

10  (2d Cir. 1956) ("[A] crude effort to give the appearance of dissimilarity is itself

11  evidence of copying.").  The *similarities* between the works here are overwhelming.

12      ***Second***, to defeat plaintiffs' claim at the pleading stage, Berg must show that

13  plaintiffs cannot plausibly allege that the Screenplay is substantially similar to the

14  Bond works.  Yet *none* of the cases Berg cites goes that far on comparable facts.

15  Those cases involved defendants who took much less of the plaintiff's property, or

16  nothing protectable at all.  Berg fails to cite a single case in which a court dismissed

17  a copyright claim at the pleading stage where the defendant took not only the key

18  character, but seven other characters, key lines of dialogue, plot elements, themes,

19  mood, and settings.  As shown below, there are many cases in which courts have

20  rejected similar arguments, even at the summary judgment stage, and even where

21  the defendant took far less of the plaintiff's work than Berg took here.

22      ***Third***, Berg ignores the allegations that tie to the alternative test for

23  substantial similarity, the "unique arrangement of elements" (even if unprotectable)

24  test, articulated in *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir. 2002), and

25  other cases.  Compl. ¶¶ 4, 5, 64.  Thus, even if Berg could show a lack of

26  substantial similarities in protectable elements like characters, dialogue, plot, etc.

27  (which he cannot), the Court must deny his motion, because Berg copied the unique

28  pattern and sequence of elements that have come to define the Bond works.

1   II.   *SECTION 6* IS A CLONE OF THE *JAMES BOND* WORKS.

2          Unlike most copyright cases, which involve a comparison between the

3   defendant's work and just one work of the plaintiff, this case concerns more than 12

4   written works and 23 motion pictures.  Berg copied liberally from these works,

5   including the characters, dialogue, and plot.  The resulting Screenplay constitutes a

6   derivative Bond work, whether it is deemed a sequel, prequel, or origin story.

7          The rule that dissimilarities between the works are to be ignored is

8   particularly important where, as here, the defendant took material from a series of

9   works.  *See Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. Apr. 25,

10  1989) (treatment for an unauthorized Rocky sequel was infringing even though it

11  had a different plot, time period, and setting than earlier films); *Walt Disney Prods.*

12  *v. Air Pirates*, 581 F.2d 751, 753-55 (9th Cir. 1978) (defendant's comic book

13  infringed Disney characters, even though defendant's were "active members of a

14  free thinking, promiscuous, drug ingesting counterculture," which was

15  "antithetical" to Disney's "scrubbed faces, bright smiles and happy endings").

16         Each of the Bond works centers on a set of core characters: (1) the British

17  agent (James Bond) employed by Her Majesty's Secret Service and issued a "00"

18  agent number, a "license to kill," and a signature handgun, who is handsome and

19  has specialized knowledge, exceptional fighting and shooting skills, fluency in

20  foreign languages, adeptness at gambling, universal charm with women, grace

21  under pressure, dry humor, a tuxedo, and gadgets, and who introduces himself as

22  "Bond.  James Bond," App.[2] ¶¶ 1-13, 28, 31, 32; (2) the cross and impatient head of

---

[2] To accept his arguments on the lack of similarity, Berg asks the Court to watch over 50 hours of Bond movies, and to do so without any reference guide or index. That imposes an improper burden on the Court at the motion to dismiss (or any other) stage.  Without waiving their objection to the inadequacy of Berg's submission, plaintiffs attach hereto an Appendix ("App.") that contains a *non-exhaustive* reference list of *some* of the noteworthy elements of the Bond films and *examples* of scenes where they are found, using the timestamps on Berg's DVD exhibits.  This is not intended to be a substitute for the more complete evidentiary showing plaintiffs will make, on a full record, in their case-in-chief.

Her Majesty's Secret Service ("M"), who develops an uncharacteristically close relationship with Bond and gives him the latitude to "do his job," *id.* ¶¶ 14-17; (3) the flirtatious secretary ("Moneypenny") who engages in suggestive banter with Bond, *id.* ¶¶ 18-19; (4) Q (the quartermaster) who outfits Bond with gadgets for the mission, and who is frustrated with his failure to return them intact, *id.* ¶¶ 20-21; (5) the "Bond Girls"——beautiful women who are attracted to Bond (as he is to them) and who evaluate him for readiness or assist him on his missions, often falling into peril and requiring Bond's help to escape, *id.* ¶¶ 12, 22; (6) the megalomaniacal villain who has some fantastic plan to inflict catastrophic damage on England or the world, *id.* ¶ 23; and (7) the villain's henchman, a brutal killer, *id.* ¶ 24.

   *Section 6* features the same cast of characters: (1) the British Agent (Alec Duncan) employed by His Majesty's Secret Service and issued a "00" agent number, a "license to kill," and a signature ██████, who is ██████ and has ████████████████████████████████████████████████████████████████████████████████████████, and who introduces himself as "Duncan. Alec Duncan," Berg Req. for Judicial Notice, Ex. A ("Ex. A") at 3, 23-24, 26-28, 37, 49, 54-55, 67-68, 72-74, 78, 80, 86-87, 89, 91, 102, 104, 109, 115, 118, 121, 134; (2) the head of His Majesty's Secret Service ("C"), who develops ████████████████████ and ██████████ *id.* at 7-9, 10, 76; (3) the ██████████████████ who ████████████, *id.* at 16-17; (4) ██████████ who ████████, and who is ████████████████████, *id.* at 27-28, 48, 76-78, 131; (5) ██████████ and ████████████████████ who are ████████████████ and who ████████████████████████████████████████████████, *id.* at 49-58, 67, 88, 124; (6) ██████████, the ████████████

6                      OPP. TO BERG'S MOT. TO DISMISS

1  who has a ████████████████████████████████████████████

2  ████████████████████████████ *id.* at 8, 14, 116-17, 120-21; and (7) the

3  ███████████████████████████████, *id.* at 6.

4          Although each of the Bond works is distinct, many elements are constant

5  across nearly every one: A villain and potential peril are identified.  M summons

6  Bond to discuss the situation.  M dispatches Bond on a mission to an exotic setting

7  far from London to investigate the villain, or those working with him, and find out

8  what he may be plotting and stop it.  Q outfits Bond with gadgets (powerful devices

9  hidden in unassuming objects) that, coincidentally, prove indispensable at just the

10  right moment.  Once in the field, Bond encounters (or is assigned) one or two

11  beautiful women who end up teaming with him to pursue and defeat the villain.

12  Bond gathers clues, follows the trail where it leads, encounters and surmounts

13  adversaries who protect the villain, including the "henchman"—a sadistic enforcer

14  with an imposing appearance.  During an action sequence, the Bond Girl is

15  separated from Bond and captured, and Bond must rescue her.  Bond nonetheless

16  finds his way to the villain's lair, which is physically imposing and heavily

17  guarded.  While attempting to infiltrate, Bond is captured and brought to the villain,

18  who tells Bond his diabolical plan and devises a way to torture or kill Bond.  He

19  personalizes the conflict by challenging Bond's beliefs and the values of the British

20  government.  Bond uses guile to escape with knowledge of the villain's plan.  In a

21  climactic and fast-paced "Bondian" action sequence, Bond attacks the villain, his

22  henchman, and their supporting force; defeats the plan; kills the villain and his

23  henchman (as he utters a witty remark); destroys the villain's lair; and returns safely

24  to England with the Bond Girl.  The Bond movies end with the words: "James

25  Bond will return."  App. ¶ 25.

26          Berg's Screenplay opens by ███████████████████████████████

27  ████████—and a ███████████████████████████████████████████

28  ████████████████████████████████████████████████████████████

1    ████████████████████████████. Ex. A at 3-4, 6-8, 10-12, 14, 18. ████

2    ████████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████. *Id.* at

5    23, 41-43, 49-50, 52, 56, 58, 61. ████████████████████████████████

6    ███████████████████████████████████████████████████████████████

7    ██████████████████████. *Id.* at 57-58, 75, 77-81. ███████████████

8    ██████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████. *Id.*

11   at 24, 26-28, 76-78, 80, 86, 91, 102, 104, 109, 118. ████████████

12   ██████████████████████████████████████████████. *Id.* at 88-

13   102. ████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████. *Id.* at 6, 103-08, 120.  During an action sequence,

17   ████████████████████████████████████████████████████████████.

18   *Id.* at 101-03, 106. ███████████████████████████████████████████

19   ████████████████████████. *Id.* at 62, 79, 90, 109-10. ████████████

20   ████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████

22   ████████████. *Id.* at 114-18. ███████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ██████████████████████. *Id.* at 117. ████████████████████████████

26   ██████████████. *Id.* at 117-19.  In a climactic and fast-paced action sequence,

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████

OPP. TO BERG'S MOT. TO DISMISS

1

2

3

4            . *Id.* at 117-22.                                    . *Id.*

5    at 127, 130.  The final frame states: "                     ." *Id.* at 134.

6    **III.    PLAINTIFFS HAVE STATED A CLAIM FOR INFRINGEMENT.**

7           The two elements of a claim for copyright infringement are: (1) ownership

8    and (2) copying of protectable expression. *Shaw*, 919 F.2d at 1356.  Copying is

9    often proven using the two-part proxy of access plus substantial similarity.  Berg

10   does not (and cannot) dispute that he had access to the Bond works. *Honda*, 900 F.

11   Supp. at 1297 ("[T]he sheer worldwide popularity and distribution of the Bond

12   films allows the Court to indulge a presumption of access.").  Where access is not

13   disputed, courts lower the degree of required similarity under the "inverse ratio

14   rule." *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

15          On the core issue raised by this motion—substantial similarity—Berg's

16   motion asks too much of the Court.  Courts are reluctant to decide substantial

17   similarity as a matter of law. *See Twentieth Century-Fox Film Corp. v. MCA, Inc.*,

18   715 F.2d 1327, 1330 n.6 (9th Cir. 1983) ("substantial similarity is usually an

19   extremely close question of fact"); *Dillon v. NBCUniversal Media LLC*, 2013 WL

20   3581938, at *4 (C.D. Cal. June 18, 2013) ("the Ninth Circuit has 'expressed a

21   certain disfavor for summary judgment on questions of substantial similarity'").

22   Given the Screenplay's extensive similarities, the only conclusion to be made as a

23   matter of law would be that it infringes the Bond works.

24          The Ninth Circuit applies a two-part test to determine substantial similarity:

25   (1) in the extrinsic test, the Court performs an objective analysis of the plot, theme,

26   dialogue, mood, setting, pace, characters, and sequence of events of the works at

27   issue; and (2) in the intrinsic test, the trier of fact performs a subjective assessment

28   of whether the works share the same overall look and feel. *Shaw*, 919 F.2d at 1360-

1    62.  Only the extrinsic test is relevant at this stage, which is used to weed out purely

2    frivolous claims.  *Id.* at 1359.  This is not such a claim.

3          **A.**    **Berg's Screenplay Fails The "Traditional" Extrinsic Test.**

4         There are two extrinsic tests.  Under the "traditional test," the court filters out

5    the extrinsic elements (*e.g.*, plot, characters, dialogue) in the plaintiff's work that

6    are not sufficiently original to merit copyright protection, and assesses whether the

7    remaining elements are substantially similar to those in the defendant's work.  *Id.* at

8    1362.  Under the "*Metcalf* test," the court assesses whether the defendant's work

9    contains the same unique arrangement of elements as the plaintiff's, even if those

10   elements would be unprotectable.  While the *Metcalf* test is discussed in Section

11   III.B, the analysis of the following elements is equally applicable to that test.

12        Plaintiffs can satisfy the "traditional" extrinsic test by showing substantial

13   similarities between the characters, dialogue, plot and sequence of events, pace,

14   theme, mood, and setting in the Screenplay and the Bond works.  *Shaw*, 919 F.2d at

15   1362-64.  As discussed below, Berg took each of these elements from the Bond

16   works and used them in his infringing Screenplay.  Remarkably, Berg's motion

17   fails to address *Honda*.  This Court found substantial similarity to the Bond works

18   on far fewer similarities (in a short commercial) than those present here:

19        (1) the theme, plot, and sequence both involve the idea of a *handsome hero*

20   *who, along with a beautiful woman, lead a grotesque villain on a high-speed*
     *chase, the male appears calm and unruffled, there are hints of romance*

21   *between the male and female, and the protagonists escape with the aid of*
     *intelligence and gadgetry*; (2) the settings both involve the idea of a *high-*

22   *speed chase with the villain in hot pursuit*; (3) the mood and pace of both

23   works are *fast-paced and involve hi-tech effects* …; (4) both … dialogues are
     laced with *dry wit and subtle humor*; (5) the characters of Bond and the

24   Honda man are very similar in the way they look and act—both heroes are

25   *young, tuxedo-clad, British-looking men with beautiful women in tow and*
     *grotesque villains close at hand*; moreover, both men *exude uncanny calm*

26   *under pressure, exhibit a dry sense of humor and wit, and are attracted to,*

27   *and are attractive to, their female companions.*

28   900 F. Supp. at 1298.

OPP. TO BERG'S MOT. TO DISMISS

The extrinsic test can be met by showing that a character in the defendant's work is substantially similar to the plaintiff's copyrighted character, even if none of the other extrinsic elements are substantially similar. *See Honda*, 900 F. Supp. at 1296-97; *Anderson*, 1989 WL 206431, at *8. Thus, Berg's motion can and should be denied solely because the lead character in his Screenplay is substantially similar to James Bond, without further analysis of the remaining extrinsic elements.

## 1.    The James Bond Character

More than 20 years ago, this Court held that "James Bond is a copyrightable character," separate and apart from the films in which he appears. *Honda*, 900 F. Supp. at 1296-97. Courts have reached the same conclusion with other well-known characters. *See, e.g., Anderson*, 1989 WL 206431, at *6 (holding that *Rocky* characters as developed in three *Rocky* movies "constitute expression protected by copyright independent from the story in which they are contained"); *New Line Cinema Corp. v. Bertlesman Music Grp.*, 693 F. Supp. 1517, 1521 n.5 (S.D.N.Y. 1988) (same; Freddy Krueger); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1216 (C.D. Cal. 1998) (same; Godzilla). Characters like James Bond, who have been "highly developed" across several works, are entitled to "strong[] protect[ion]." *Sapon*, 2002 WL 485730, at *11 (Batman).[3]

Berg took *far more* of Bond's distinctive character traits than Honda did:

| | Bond | Duncan | | Bond | Duncan | | Bond | Duncan |
|---|---|---|---|---|---|---|---|---|
| Works for "Her/His Majesty's Secret Service" | ✓ | ✓ | Secret agent, assigned a "00" number | ✓ | ✓ | Issued a "license to kill" | ✓ | ✓ |

---

[3] Berg contends that "the bar for substantial similarity in a character is set quite high," Mot. at 16, but the same standard applies to characters as to other extrinsic elements. *Honda*, 900 F. Supp. at 1298. The cases Berg cites are distinguishable; they involved unprotectable "stock" characters whose similarities were inevitable. *E.g., Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999) (noting that vampires necessarily have pale skin). British spies do not "necessarily" need to have a "00" agent number (Fleming's invention), use ███, be ███, or have any of the more than a dozen traits that James Bond possesses and that Berg copied.

*See, e.g.*, App. ¶¶ 1-3, 7-11, 26-32; *supra* at 5-9.

Berg attempts to defend his copying of the Bond character by pointing to minor differences between Bond and Duncan. Mot. at 17-18. But "slight differences in appearance, behavior, or traits" are not sufficient to defeat substantial similarity. *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 242 (2d Cir. 1983). The differences Berg identifies are immaterial:

- While ███████████████████████████████, the relevant similarity is that ███████████████████████████████. The ███████████████████ is a function of the time period, which is irrelevant. *See supra* n.1; *Salinger v. Colting*, 641 F. Supp. 2d 250, 261-62 (S.D.N.Y. 2009) ("the mere fact[] that ... [the] character is 60 years older" and living "in the present day" irrelevant where core traits were shared).

- Berg argues that while Duncan and Bond both ███████████ ███████████████████████████. What matters is that ███████████████████████████████████. *See Universal City Studios, Inc. v. Film Ventures Int'l, Inc.*, 543 F. Supp. 1134, 1137 (C.D. Cal. 1982) (finding two politicians substantially similar despite different backstories and motivations—one was a gubernatorial candidate worried about the impact of shark attacks on a windsurfing race and the other a mayor worried about the impact on the Fourth of July).

12

OPP. TO BERG'S MOT. TO DISMISS

1    • Berg says that Bond is known for wearing a tuxedo whereas

2    ███████████████████████████. The relevant similarity is that both Bond

3    and Duncan ████████████████████████. *See Honda*,

4    900 F. Supp. at 1298; *Lone Wolf McQuade Assocs. v. CBS Inc.*, 961 F. Supp.

5    587, 594-95 (S.D.N.Y. 1997) (that one character "wears dirty jeans" and the

6    other "clean jeans" did not "detract from the[ir] substantial similarity").

7         Courts have found characters to be substantially similar with far less overlap

8    than present here. *E.g.*, *Shaw*, 919 F.2d at 1363 ("[Both are] well dressed, wealthy

9    and have expensive tastes.  The most striking similarity is their self-assuredness,

10   and unshakeable faith in the satisfactory outcome of any difficult situation.").  In

11   *Lone Wolf*, another case Berg fails to mention, the court found a triable issue of fact

12   as to whether the characters in "Walker, Texas Ranger" and "Lone Wolf McQuade"

13   were substantially similar based on the lead characters' common "approaches to

14   law enforcement, style, fighting technique, characteristic behavior, and methods of

15   operation as modern-day Texas Rangers, … attitudes toward authority and rules,

16   and their style of attire and choice of vehicle."  961 F. Supp. at 594.  Bond and

17   Duncan share even *more* common traits.

18        The cases Berg relies on are inapposite.  In *Benay v. Warner Bros. Entm't*

19   *Inc.*, 607 F.3d 620, 625 (9th Cir. 2010), the "most important similarities" between

20   the two works arose from "shared historical facts" and related "stock" elements.

21   Berg *concedes* that the Screenplay is not based on historical facts.  Mot. at 20.

22   And, unlike here, a "close[] examination [of the *Benay* works] … exposes many

23   more differences than similarities"—*e.g.*, the main characters were "starkly

24   different," there were "a number of important characters" that had "no obvious

25   parallel in the other," and there were no similarities in dialogue (other than the word

26   for "foreigner").  607 F.3d at 625-29; *see also Sheldon v. Spielberg*, 748 F. Supp.

27   2d 200, 205-09 (S.D.N.Y. 2010) (characters' "dissimilarities vastly outweigh the

28   similarities"—*e.g.*, protagonist in *Disturbia* was "troubled and depressed teenager"

13

1  "struggling with the loss of his father," whereas protagonist in *Rear Window* was

2  "male of indeterminate age" whose "character is minimally developed").

3      Berg errs in arguing that the distinctive Bond traits he copied—such as James

4  Bond's ████████ —are "general character types" and thus not protectable. Mot.

5  at 18. Berg misapplies the law. Certain character traits are considered "stock" or

6  *scènes-à-faire* where they "naturally flow from a common theme … because it is

7  'virtually impossible to write about a particular historical era or fictional theme

8  without [them]." *LaTele*, 2013 WL 1296314, at *6. But ████████ is not a

9  "stock" feature of a spy story; rather, this was a creative device and key trait in both

10  the Bond works and Screenplay, since ███████████████████████

11  ████████████████████████████████. Compl. ¶¶ 4(a), 58,

12  61(c); *compare* Ex. A at 34-35 *with* App. ¶¶ ████.

13      Moreover, courts will not analyze similarities on such a granular level

14  "whereby every skill the two characters share is dismissed as an idea, rather than a

15  protected form of expression" which "risks elimination of any copyright protection

16  for a character, unless the allegedly infringing character looks and behaves exactly

17  like the original." *Lone Wolf*, 961 F. Supp. at 593 (quoting *Warner Bros.*, 720 F.2d

18  at 243 ("[S]imilarity cannot be rejected by isolating as an idea each characteristic

19  the characters have in common.")). Berg did not take just a few of James Bond's

20  traits. He took the most important ones, and their unique combination that, in total,

21  define James Bond. Even if each element, standing alone, were unprotectable, that

22  would "not diminish the expressive aspect of the combination" Berg stole. *Id.* In

23  determining substantial similarity, courts must look at the work as a whole, and "be

24  careful not to lose sight of the forest for the trees." *NEC Corp. v. Intel Corp.*, 1989

25  WL 67434, at *9 (N.D. Cal. Feb. 6, 1989).

26      **2.**    **The Other Bond Characters**

27      The Screenplay contains all of the familiar characters from the Bond works,

28  ██████████████████: M, Q, Moneypenny, the Bond Girls, the Villain, and

14

1   his Henchman.  Notably, the Screenplay includes no ███████████.  Berg's

2   wholesale copying of the recurring cast of Bond characters constitutes infringement

3   by itself.  *See Anderson*, 1989 WL 206431, at *7 (ruling that "the Rocky characters

4   are delineated so extensively that they are protected from bodily appropriation

5   when taken as a group and transposed into a sequel by another author"); *see also*

6   *Universal*, 543 F. Supp. at 1137 (finding substantial similarity in characters where

7   "all the major characters in 'Great White' have substantially similar counterparts in

8   'Jaws'").[4]  Even standing alone, ██████████████████ is also

9   substantially similar to its counterpart in the Bond works:

10      <u>M and C</u>.  Both are the head of MI-6 and are ████████████████████

11      ██████████.  App. ¶ 14.  More important, they both have the same ████████

12      ████████ and ████████████████████████.  *See*

13   Compl. ¶ 58; App. ¶¶ ████; Ex. A at 6-8, 10, 58, 83, 133.  Berg argues that M and

14   C have different backstories, but such differences are "secondary" and do not

15   "erode the similarity" between their core characteristics.  *See Shaw*, 919 F.2d at

16   1362 (finding irrelevant that defendants' character, unlike plaintiff's, was

17   "motivated by his dissatisfaction with prior covert government employment and his

18   desire to renew his relationship with his estranged wife and son").

19          Berg further attempts to defend his theft of M and other supporting characters

20   by arguing they are "stock" in the spy genre.  Plaintiffs disagree, but Berg's

21   argument would require the Court to consider facts outside the complaint, which is

22   improper on a motion to dismiss.  *See* FED. R. CIV. P. 12(d); *see also Lee v. City of*

23   *Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).  Moreover, where characters

24

---

25   [4] While ████████ has a cameo in the Screenplay as ████████████,
     the events and dialogue are fictional.  Prime Minister Margaret Thatcher is depicted
26   in *For Your Eyes Only*, and fictional British government officials are depicted in
     many Bond works.  *E.g.*, App. ¶ 40 (Colonel Smithers of the Bank of England in
27   *Goldfinger* and Sir Frederick Gray, Minister of Defence, in *The Spy Who Loved Me*,
     *Moonraker*, and numerous other films).

28

1    have been well-delineated, as the Bond characters have been, they are protectable

2    and *not scènes-à-faire*. *See Anderson*, 1989 WL 206431, at *7 (holding the

3    supporting characters in *Rocky* were copyrightable because their "physical and

4    emotional characteristics … were set forth in tremendous detail in three Rocky

5    movies"); *DC Comics v. Towle*, 2013 WL 541430, at *15 (C.D. Cal. Feb. 7, 2013)

6    (Batmobile "sufficiently delineated" to constitute a copyrightable character).

7        <u>Q and ████</u>. The Q and ████ characters are also substantially

8    similar.  Both are "████████" who provide ███████████████████

9    ████████████████████████████████████████████

10   ████. Compl. ¶ 58; App. ¶¶ ████; Ex. A at 27-28, 48, 76-77, 131.  Berg claims

11   the characters are different because ████████████████████, rather

12   than as the head of "Q Branch." Mot. at 18-19.  But that difference, and any other

13   supposed differences in their relationships with Bond/Duncan, flows from the

14   legally irrelevant fact that Berg set his Bond story in the early days of MI-6.  The

15   similarity is perfected when, at the end of the Screenplay, █████████████

16   ████████████████████. Ex. A at 131-32.

17       <u>Moneypenny and ████</u>. Berg concedes that ████ is a reference to

18   Bond's Moneypenny. Mot. at 19 ("████████████████████████████

19   ████████████"). Such similarities ████ indicate copying. *Universal*,

20   543 F. Supp. at 1141 (that a major character in "Great White" was named "Peter

21   Benton," and the author of "Jaws" was named "Peter Benchley," confirms "the

22   creators of 'Great White' wished to be as closely connected with Plaintiffs' motion

23   picture, 'Jaws,' as possible").  Berg focuses on a difference: In the latest Bond film,

24   Moneypenny is a former field agent.  But as noted above, a different backstory is

25   legally immaterial and does not alter the relevant similarities.

26       <u>Bond Girls</u>. ████████████ are classic "Bond Girls" in that they

27   are ████████████████████. Compl. ¶ 58; App.

28

16                              OPP. TO BERG'S MOT. TO DISMISS



1   ¶.⁵ Berg admits that ███████████████████████████████████████
2   ███████ but claims they are different from any Bond Girl because
3   ████████████ in a different way than did the Bond Girl in ████, and
4   because ██████████████████████████████████████████████████
5   ██████. Mot. at 22. The salient point is that, ████████, the Bond Girl
6   ████████████████ by ████ in the ████. Compl. ¶¶ 58,
7   60(e); App. ¶ ██. And the notion that ██████████ Mot. at 17, is false. The
8   Screenplay notes ████████ between ████ and ████, and has a
9   scene in which he ████████████████████████ and he is
10  ████████████████ Ex. A at 52, 67, 132.
11  ___Bond Villain and___ ████████. ████ is a classic Bond villain: he
12  is a ████████ who seeks ████████████████ so he can
13  ████████████. Compl. ¶¶ 4, 58, 65(d); Ex. A at 121; App.
14  ¶ ██. Berg claims that ████ is distinct from any *single* Bond villain, and thus not
15  substantially similar. Not only is this untrue (██ is substantially similar to ████
16  ████████████████████████████████████████████,
17  *see* App. ¶ ██), it is beside the point. Because each Bond film usually has a new
18  villain, the proper analysis is not whether Berg copied a particular one, but whether
19  he copied the Bond villain archetype. As explained above, he did.⁶

20  ────────────────────
21  ⁵ Berg also copied the Bond Girl naming convention. Like most Bond Girls, ████
    ████ (*i.e.*, ████) and ████████ (*i.e.*, ████), have ████
22  names. *E.g.*, App. ¶ 12 (Honey Ryder in *Dr. No*, Kissy Suzuki in *You
    Only Live Twice*, and Mary Goodnight in *The Man with the Golden Gun*).
23  ⁶ Berg's contention that Bond villains are "stock" characters, while false, only
24  reinforces that this case cannot be decided at the pleading stage. Bond villains are
    unique among fictional antagonists in that they are not motivated by petty gains, but
25  diabolically seek to change the world—*e.g.*, Blofeld seeks to incite war between
    Russia and the U.S. in *You Only Live Twice* and Ourumov seeks to inflict chaos on
26  England in *GoldenEye*. App. ¶ 23; Compl. ¶¶ 4, 58, 65(d); Ex. A at 121; *see U.S. v.*
27  *Martin*, 438 F.3d 621, 640-41 (6th Cir. 2006) (describing "the James Bond movie
    villain" as someone who has a "grand scheme of world domination/annihilation"
28  and penchant for revealing "each of the steps necessary to achieve his plan").

Bond Henchman and ███████████. Although the complaint describes

████ as a classic Bond henchman, Berg's motion omits any mention or defense

of him. Like most Bond henchmen (*e.g.*, Jaws in *The Spy Who Loved Me* and

Oddjob in *Goldfinger, see* App. ¶ 24), ████ has a ████████████████

████████████████. Ex. A at 6; Compl. ¶ 58. Berg does not dispute that.

### 3. **Dialogue**

As noted above, Berg lifted key dialogue and catch phrases from the Bond

works. *Supra* at 3, 5-9 ("double-O," "license to kill," etc.). Courts have recognized

that copying what is "readily recognizable to the lay observer as [a] key line[] of

dialogue from the copyrighted movie" constitutes infringement. *Murray Hill*

*Publn's, Inc. v. ABC Commn's, Inc.*, 264 F.3d 622, 632-33 (6th Cir. 2001). Berg

seeks to excuse himself on the ground that he only took a *few* "words" and "short

phrases." Mot. at 13-15. Courts have rightly rejected such arguments. *See Murray*

*Hill*, 264 F.3d at 632-33 ("E.T. phone home" and "I love you, E.T." protectable);

*Universal City Studios, Inc. v. Kamar Indus., Inc.*, 1982 WL 1278, at *4-5 (S.D.

Tex. Sep. 20, 1982) (same); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th

Cir. 1993) ("even a small taking may sometimes be actionable"); *Paramount*

*Pictures Corp. v. Carol Publ'g Grp.*, 11 F. Supp. 2d 329, 334 (S.D.N.Y. 1998)

("[c]opying only small portions of a series of copyrighted works offers no

protection for a defendant"). The cases Berg cites are inapt, as they deal with

attempts to monopolize the use of ordinary words, typically in commercial

advertising, not fictional dialogue.[7] And they do not involve dialogue that is

instantly recognizable as derived from a famous film series. *Id.*; *Showcase Atlanta*,

479 F. Supp. at 356 ("the impression that [the infringing work] undoubtedly gives

---

[7] *See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) ("if you're still 'on the clock' at quitting time" and "clock in and make $50 hour" were "ordinary employment phraseology" and unprotectable); *Peters v. West*, 776 F. Supp. 2d 742, 751 (N.D. Ill. 2011) ("wronger," "wait no longer," and "Kate Moss" were trite or factual phrases and use in song was thus unprotectable).

OPP. TO BERG'S MOT. TO DISMISS

to anyone … is that it is a version of Gone With The Wind, invoking in the
audience images of th[at] work"). Berg copied other dialogue, as well:

- ███████████████████████████ was taken verbatim
  from *Tomorrow Never Dies*, Compl. ¶ 61(b); App. ¶ ██; Ex. A at 68;[8]
- ██████████████████████████████████████████
  ██████ was taken from *Dr. No*, Compl. ¶ 61(g); App. ¶ ███; Ex. A at 54;
- The line that █████████████████████████ was taken from
  *Skyfall*, Compl. ¶ 61(c); App. ¶ ███; *see also id.* ¶ ███; Ex. A at 35; and
- █████████████████████████████████████████
  just as Bond does in *Casino Royale*, Compl. ¶ 61(d); App. ¶ ███; Ex. A at 75.

    Berg argues that these similarities arise from unprotectable elements. But
*Honda* found substantial similarity based on the mere fact that the dialogue in
Honda's commercial was "laced with dry wit and subtle humor." 900 F. Supp. at
1298. Here, Berg copied not only that style of dialogue, but the dialogue itself.

### 4. Plot and Sequence

    To hide that he took the backbone of his story from numerous Bond films,
along with specific plot elements and sequences, Berg sold his Screenplay as a true
story about the formation of MI-6 based on ████████████████. Ex. A at 2.
His lawyers do not even attempt to defend that lie, conceding ██████████
████████████████████████████ Mot. at 20 (emphasis added).
Berg copied that fictional tale from the Bond works.

    Plots are substantially similar when the works share a series of similar
events, even if those individual events are not "remarkably unusual," and even if
the plots contain significant differences. *Shaw*, 919 F.2d at 1363. The substantial
similarity analysis is somewhat different where, as here, the plaintiff alleges not

---

[8] ████████████████████████████████████████. Mot. at 11. The problem is that Berg copied
the dialogue verbatim from *Tomorrow Never Dies*, and used it in the same context.

that defendant made a 1:1 copy of a particular work, but that defendant prepared a derivative work (*e.g.*, an unauthorized version of a Bond story) based on a body of works. In such cases, courts do not require that the plot of the infringing work be identical to the infringed work—the plots of unauthorized sequels or prequels are necessarily different than the originals. Instead, courts require a plaintiff to show only that the works share the same basic "plot design." *See TMTV Corp. v. Mass Prod. Inc.*, 645 F.3d 464, 470-71 (1st Cir. 2011) ("Infringement can occur where—without copying a single line—the later author borrows wholesale the entire backdrop, character, interrelationships, genre, and plot design of an earlier work. Imagine, for example, that the first Sherlock Holmes stories had [just been copyrighted], and [defendant] had then written his own sequels carrying everything forward into a new plot."); *Salinger*, 641 F. Supp. 2d at 254, 261-62 (unauthorized "Catcher in the Rye" sequel with different plot and time period); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) ("A copyright owner holds the right to create sequels … and the stories told in the N/I MAP files are surely sequels, telling new … tales of Duke's fabulous adventures.").

As set forth in the complaint and summarized in Section II above, the Screenplay copied the plot design from the Bond works—*i.e.*, the core sequence of events depicted in the Bond films. Compl. ¶¶ 4(b), 59.

*Honda* found substantial similarity where the plot of a short TV commercial, like the Bond works, "involve[d] the idea of a handsome hero who, along with a beautiful woman, lead a grotesque villain on a high-speed chase, the male appears calm and unruffled, there are hints of romance between the male and female, and the protagonists escape with the aid of intelligence and gadgetry." 900 F. Supp. at 1298. The Screenplay contains all of this *and far more*. Tellingly, Berg's motion fails to address the direct overlap in plot design.

Berg not only took the plot design from the Bond works, he stole specific plot elements. Some of these are identified in the Complaint, and include:

1     "███████████." Each Bond film █████████████████████

2     ██████████████████████ Compl. ¶¶ 4(b), 60(k); App. ¶██. The

3     Screenplay ██████: "████████████." Ex. A at 134. Berg's motion fails to

4     address that copying.

5          <u>Gadgets</u>. The Bond works are famous for Bond's use of everyday gadgets

6     with hidden but powerful features. Compl. ¶¶ 4c; 58, 60(f), 61(f); App. ¶ 11. The

7     Screenplay ███████████. Ex. A at 27-28, 76-77, 131. Berg dismisses

8     █████████████████████████████████████████████████████

9     ████████████████████████████████. Mot. at 19. But any difference

10    ██████████████ is a function of the different time period, which is irrelevant.

11    *Towle*, 2013 WL 541430, at *15 (noting the "design of the Batmobile often reflects

12    the car models of the time ... [r]egardless of the evolving design of the Batmobile, it

13    retains distinctive characteristics."). The key similarity is that both are █████

14    ████████████████████████████████ (*i.e.,*

15    █████ and a ████████████████████, Ex. A at 24, 27, 76, 86, 91,

16    92, 118)—just like Bond's (████████████████████████████

17    ██████ and a ████████████████████, App. ¶██).

18         <u>Torture Scene</u>. Another feature of the Bond works is a scene in which Bond

19    is captured and tortured by the villain or his henchman, learns of the villain's plot,

20    and escapes to foil it. This occurs repeatedly in Bond films—*e.g.,* App. ¶ 36—and

21    is uniquely expressed within the genre. *See Honda*, 900 F. Supp. at 1295. Berg

22    admits that ███████████████████, Mot. at 22, but says his █████

23    ████████████████████████████████████ and a

24    ██████████████ that differs from any Bond film. Again, such details are irrelevant,

25    as they stem from the change in time period and the fact that the Screenplay is not a

26    copy of any *one* Bond film, but takes plot pieces from the *series* of films.

27         <u>Other Scenes</u>. The complaint cites many other plot similarities, including

28    missions to ██████████████████████, ██████████████████,

1  missions to ███████████████████████████, scenes in which ████████
2  ██████████ and they discuss ██████████████████████ scenes in
3  which █████████████████████████████, and specific ████████████

4  action sequences.  Compl. ¶¶ 59-60.  A review of the Bond films confirms these
5  similarities and belies Berg's efforts to distinguish them.  *Id.*  Berg's argument that
6  these scenes are unprotectable *scènes-à-faire* is improper at the pleading stage.
7  *Supra* at 15.  It also ignores *Honda*'s finding that similar scenes—a helicopter
8  chasing a car, a car with a detachable roof, and a villainous henchman trying to
9  break into the agent's car—were not *scènes-à-faire*.  900 F. Supp. at 1298.

10       As emphasized in *Shaw*, what matters is the totality of plot elements: "Even
11  if none of these plot elements is remarkably unusual in and of itself, the fact that
12  both scripts contain all of these similar events gives rise to a triable question of
13  substantial similarity."  919 F.2d at 1363-64; *LaTele*, 2013 WL 1296314, at *10
14  (while both works contained "standard" plot elements, "the level and number of
15  similarities in the details, and particularly in the sequence of events" gives rise to
16  substantial similarity).  That is the case here.

17       **5.    Theme, Pace, Mood, and Setting**

18       The Screenplay takes the same theme that underlies the Bond works: that of a
19  lone hero who, using exceptional wit and physical skills, prevails in a personal
20  conflict of global significance against a megalomaniacal villain.  Compl. ¶¶ 4(e),
21  62-63; App. ¶ 37.  Berg points to minor differences in the themes, but as the Court
22  held in *Shaw*, such secondary differences in theme cannot "erode the similarity
23  between the central themes embodied in the … two works."  919 F.2d at 1362.

24       Berg concedes that the Screenplay and the Bond works "have a similar fast-
25  pace and mood," but argues these similarities "naturally arise" from the "spy
26  action-adventure genre."  Mot. at 25.  Ruling on what "naturally arises" from the
27  spy genre would require the Court to consider evidence outside the complaint,
28  which is improper on a motion to dismiss.  *See Lee*, 250 F.3d at 688-90.  In any

1    event, *Honda* recognized that the Bond works are unique, even within the spy

2    genre.  900 F. Supp. at 1295 ("it is clear that James Bond films are unique in their

3    expression of the spy thriller idea").

4        *Honda* also found substantial similarity where the works both involved

5    "exotic locations" and "the idea of a high-speed chase with the villain in hot

6    pursuit."  *Id.* at 1295, 1298.  Berg took far more than that, including ███████

7    ███████ (*GoldenEye*), ████████████ (*Skyfall*), and ████.

8    Compl. ¶¶ 4b, 60(a), 60(h); App. ¶¶ ███; Ex. A at 33, 47, 109, 123.  Berg claims

9    the settings are not substantially similar because ████████████████

10   ███████  Mot. at 23.  But differences based on changes in time period cannot

11   defeat substantial similarity.  *See supra* n.1.

12   **B.    Berg's Screenplay Also Fails The *Metcalf* Test.**

13       Even if, contrary to *Honda* and the many other cases cited above, all of the

14   foregoing similarities were deemed unprotectable, the Court would still have to

15   deny Berg's motion.  The Ninth Circuit made clear in *Metcalf* and other cases that a

16   work's unique combination and/or sequence of unprotectable elements can itself be

17   protectable.  294 F.3d at 1074; *see L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,

18   676 F.3d 841, 850 (9th Cir. 2012) ("Original selection, coordination, and

19   arrangement of [unprotectable] elements is protectible."); *Satava v. Lowry*, 323

20   F.3d 805, 811 (9th Cir. 2003) (same); *Shaw*, 919 F.2d at 1363 ("[A] pattern [that] is

21   sufficiently concrete ... warrant[s] a finding of substantial similarity."); *Three Boys*

22   *Music*, 212 F.3d at 485 (infringement based on "combination of unprotectible

23   elements"); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991)

24   ("copyright protection [applies to] ... an original selection or arrangement" of

25   unprotectable facts).  Berg's motion fails to address this extrinsic test.

26       As detailed in Section II above (*see supra* at 5-9), the complaint alleges that

27   the Screenplay copies the Bond works' unique combination and sequence of

28   elements, including: (a) the traits of the James Bond character; (b) ████████

                                         23        <span style="font-variant: small-caps;">Opp. To Berg's Mot. To Dismiss</span>

1  supporting character; (c) the Bond catch phrases (*e.g.*, Bond's signature
2  introduction, "double-O" agent number, "license to kill," and "███████" ███ );
3  (d) the Bond plot structure and individual plot elements; (e) the central Bond theme
4  (*i.e.*, a singular hero, acting alone and using his exceptional wit and physical skills,
5  prevailing in a personalized conflict of global significance against a
6  megalomaniac); (f) the fast pace; (g) the settings of ████████████████
7  ███████ ; and (h) the Bond mood. Compl. ¶¶ 2, 4-5, 56-64. This in itself satisfies
8  the extrinsic test, and Berg's failure to address the legal significance of these
9  allegations under *Metcalf, et al.*, is grounds alone to deny his motion.

10 **IV.   BERG'S FAIR USE AND *DE MINIMIS* USE DEFENSES FAIL.**

11         The fair use defense includes four statutory factors, the most important of
12 which is the effect on "the potential market for the copyrighted work."  17 U.S.C. §
13 107; *Harper & Row Pub'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).  The
14 complaint alleges that Berg's Screenplay will compete with and harm plaintiffs'
15 Bond works, including the next Bond film slated for release in 2015.  Compl. ¶¶ 54-
16 55.  Market harm is "presumed" where, as here, "the intended use is for commercial
17 gain."  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2008).
18 Given the complaint's allegations, the absence of harm cannot be decided on a
19 motion to dismiss, *Lee*, 250 F.3d at 688—which alone defeats the defense.

20         Nor is the Screenplay a "transformative" use of the Bond works, as the fair
21 use defense requires.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579
22 (1994).  Berg stole the most recognizable elements from the Bond world, and the
23 unique combination and sequence of those elements, put them in his Screenplay,
24 and sold it to plaintiffs' competitor Universal for in excess of $1 million.  Compl.
25 ¶¶ 2-3, 42.  This type of commercial use, which "merely 'supersede[s] the objects'

26
27
28

24

1  of the original," is not fair use.  *Campbell*, 510 U.S. at 579; *see Honda*, 900 F.

2  Supp. at 1300 (rejecting fair use).[9]

3        Berg cannot fall within the *de minimis* use defense either.  Certain instances

4  of "trivial copying" are deemed *de minimis*.  *Newton v. Diamond*, 388 F.3d 1189,

5  1193, 1195-96 (9th Cir. 2003) (three-note segment in 4½ minute song).  "[A] taking

6  is considered *de minimis* only if it is so meager and fragmentary that the average

7  audience would not recognize the appropriation."  *Fisher v. Dees*, 794 F.2d 432,

8  434 n.2 (9th Cir. 1986); *e.g.*, *Faulkner Literary Rights, LLC v. Sony Pictures*

9  *Classics Inc.*, 953 F. Supp. 2d 701, 706-12 (N.D. Miss. 2013) (eight-second quote

10  in 90-minute film).  Here, by contrast, Berg lifted the most recognizable elements

11  from a huge number of Bond works and used them throughout the Screenplay.  The

12  average audience would recognize and associate them with Bond, as Berg

13  concedes.  Mot. at 2, 25 (the Screenplay "evoke[s]" and "allude[s] to" the Bond

14  works).  Berg's wholesale appropriation of the fictional *James Bond* world, as

15  alleged by plaintiffs, cannot be dismissed as *de minimis*.

16  **V.   CONCLUSION**

17        For the foregoing reasons, the Court should deny Berg's motion.

18        Dated:  June 25, 2014          Respectfully submitted,

19

20                              By: *Robert M. Schwartz*

21                                Robert M. Schwartz

                              Attorneys for Plaintiffs

22

23  ─────────────

  [9] The cases Berg cites are inapposite, as they involve transformative uses that are

24  "fundamentally different and new."  *E.g.*, *Cariou v. Prince*, 714 F.3d 694, 708 (2d

Cir. 2013) (defendant's pop culture art "almost entirely obscured" plaintiff's photos

25  and used "fundamentally different aesthetic"); *Seltzer v. Green Day, Inc.*, 725 F.3d

1170, 1177 (9th Cir. 2013) (defendants transformed plaintiff's artwork by covering

26  it with "a large red 'spray-painted' cross" to comment on "the hypocrisy of

religion"); *Warner Bros.*, 720 F.2d at 244 (defendant parodied Superman by

27  "highlight[ing his] differences [to] humorous effect—*e.g.*, by stating defendant's

28  character was "*unable* to leap tall buildings in a single bound") (emphasis added).

# APPENDIX A:

## Index of Examples of Elements in Selected *James Bond* Motion Pictures.

The following is a non-exhaustive index of elements found in selected *James Bond* motion pictures.  Exhibit citations are to the exhibit DVDs to defendant's May 27, 2014 request for judicial notice.  Dkt. No. 23. Timestamps are based on viewing the DVDs using Windows Media Player running on Windows 7.

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 1. James Bond is employed by "Her Majesty's Secret Service" ("HMSS"). | Ex. E (*Thunderball*) at 41:30-41:34<br>Ex. G (*On Her Majesty's Secret Service*) at 28:11-28:32 |
| 2. James Bond is assigned and uses a "007" secret agent number. | Ex. B (*Dr. No*) at 9:45-9:54, 12:28-14:23<br>Ex. D (*Goldfinger*) at 18:15-18:26<br>Ex. N (*Octopussy*) at 1:08:12-1:08:18<br>Ex. X (*Skyfall*) at 2:17:02-2:17:39 |
| 3. James Bond has a "license to kill." | Ex. B (*Dr. No*) at 13:10-13:15<br>Ex. N (*Octopussy*) at 1:08:12-1:08:18<br>Ex. Q (*License to Kill*) at 35:27-35:46<br>Ex. U (*Die Another Day*) at 6:41-6:47 (Bond's MI-6 Security Service profile notes he is licensed to kill) |
| 4. James Bond is required to replace his inferior handgun with a more powerful one (a Walther PPK). | Ex. B (*Dr. No*) at 12:28-14:23 (Walther PPK)<br>Ex. R (*GoldenEye*) at 59:33-59:52 (Walther PPK) |
| 5. James Bond is handsome. | Ex. B (*Dr. No*) (Sean Connery)<br>Ex. G (*On Her Majesty's Secret Service*) (George Lazenby)<br>Ex. I (*Live and Let Die*) (Roger Moore)<br>Ex. P (*The Living Daylights*) (Timothy Dalton)<br>Ex. V (*Casino Royale*) (Daniel Craig) |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 6. James Bond has specialized knowledge. | Ex. G (*On Her Majesty's Secret Service*) at 44:38-44:52 (Bond enters the room as M is tending to a butterfly collection: "Unusually small for a *Nymphalis polychloros*." M responds: "I wasn't aware that your expertise included lepidoptery.")<br><br>Ex. H (*Diamonds Are Forever*) at 8:33-9:14 (Bond's knowledge of high-end sherries)<br><br>Ex. J (*The Man with the Golden Gun*) at 10:50-11:53 (Bond memorized MI6's full file on Scaramanga)<br><br>Ex. O (*A View to a Kill*) at 10:50-11:30 (Bond's knowledge of electro-magnetic pulses)<br><br>Ex. R (*GoldenEye*) at 20:47-21:17 (Bond identifies counterfeit license plate) |
| 7. James Bond is possessed of exceptional fighting and shooting skills. | Ex. C (*From Russia with Love*) at 44:10-46:43 (fighting and shooting)<br><br>Ex. D (*Goldfinger*) at 4:05-4:59 (fighting)<br><br>Ex. E (*Thunderball*) at 2:20-3:30 (fighting), 1:03:42-1:04:27 (fighting underwater), 1:19:25-1:20:08 (fighting underwater), 2:05:34-2:06:38 (fighting)<br><br>Ex. W (*Quantum of Solace*) at 18:50-19:41 (fighting) |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 8. James Bond is fearless and calm, and exhibits grace under pressure. | Ex. C (*From Russia with Love*) at 44:10-46:43 (Bond is calm during a chaotic shootout), 1:45:45-1:49:03 (Bond is calm through boat chase that ends with him setting fire to pursuers with flare gun, saying cooly, "Where there's smoke, there's fire"), 1:50:18-1:51:20 (Bond is calm while being held at gunpoint) |
| | Ex. D (*Goldfinger*) at 1:08:06-1:10:12 (Bond toys with guard and is calm while escaping from Goldfinger's jail cell) |
| | Ex. E (*Thunderball*) at 1:20:18-1:21:14 (Bond is calm while trapped underwater with a shark), 1:30:08-1:31:49 (Bond dances calmly, knowing he's being targeted for death) |
| | Ex. H (*Diamonds Are Forever*) at 1:56:12-1:57:12 (Bond remains cool while being served dinner by two assassins) |
| | Ex. I (*Live and Let Die*) at 1:51:14-1:52:24 (Bond remains calm and does not flinch while Dr. Kanaga cuts his arm to draw blood for the sharks) |
| | Ex. K (*The Spy Who Loved Me*) at 1:40:35-1:42:40 (Bond remains cool while extracting the detonator from a nuclear warhead, on a submarine filled with other nuclear warheads) |
| | Ex. W (*Quantum of Solace* ) at 00:55-4:12 (Bond barely breaks a sweat through gun-fighting car chase, and then calmly parks and matter-of-factly tells a man apparently locked in his trunk "It's time to get out") |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 9. James Bond is dry-witted and finds humor in the face of danger or after dispatching an opponent. | Ex. C (*From Russia with Love*) at 1:51:20-1:52:21 (when Rosa Klebb dies after trying to kick James Bond with poison-tipped shoe: "She's had her kicks")<br><br>Ex. D (*Goldfinger*) at 4:05-4:59 (when Bond electrocutes an intruder in the bathtub: "Shocking.  Positively shocking."), 1:42:27-1:42:44, 1:44:52-1:44:58 (when Bond electrocutes Oddjob: "He blew a fuse")<br><br>Ex. E (*Thunderball*) at 1:40:40-1:40:53 (when Vargas is shot with a spear gun: "I think he got the point")<br><br>Ex. I (*Live and Let Die*) at 1:54:38-1:55:12 (after Bond causes Dr. Kananga to inflate and explode from ingesting a shark gun pellet: "He always did have an inflated opinion of himself") |
| 10. James Bond is often featured wearing a tuxedo. | Ex. D (*Goldfinger*) at 2:26-3:25, 20:46-22:35<br><br>Ex. E (*Thunderball*) at 49:15-51:50<br><br>Ex. M (*For Your Eyes Only*) at 1:00:40-1:02:18<br><br>Ex. V (*Casino Royale*) at 1:07:50-1:09:10 ("dinner jacket"), 1:32:30-1:32:50 |
| 11. James Bond uses ordinary objects that conceal advanced technology ("gadgets"). | Ex. I (*Live and Let Die*) at 10:27-11:15 (magnetic wristwatch "powerful enough to even deflect the path of a bullet", 12:17-12:30 (Bond uses magnetic wristwatch to undress woman), 1:52:28-1:52:46 (Bond uses magnetic wristwatch to obtain shark pellet that he later uses to kill Dr. Kananga)<br><br>Ex. P (*The Living Daylights*) at 33:48-35:06 (a keychain with stun gas, plastic explosives, and a lockpick), 2:03:43-2:04:13 (Bond uses keychain to kill Whitaker)<br><br>Ex. S (*Tomorrow Never Dies*) at 4:41-5:04 (Bond uses a lighter that acts as an explosive) |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 12. James Bond encounters "Bond Girls"—beautiful women, typically with unusual or suggestive names, who are attracted to Bond (as he is to them) and who often assist him on his missions or evaluate him for readiness. | Ex. B (*Dr. No*) at 1:02:06-1:04:04 (Honey Ryder)<br><br>Ex. F (*You Only Live Twice*) at 1:18:20-1:23:00, 1:53:48-1:54:42 (Kissy Suzuki)<br><br>Ex. H (*Diamonds Are Forever*) at 17:19-21:02, 41:10-43:54 (Tiffany Case)<br><br>Ex. J (*The Man with the Golden Gun*) at 26:50-28:00, 1:05:35-1:07:25 (Mary Goodnight)<br><br>Ex. R (*GoldenEye*) at 15:08-17:05, 47:00-47:12 (M sends woman to evaluate Bond's fitness for duty)<br><br>Ex. U (*Die Another Day*) at 36:01-39:43, 1;34:00-1:26:03, 1:43:13-1:44:47, 2:02:02-2:04:59 (Jinx) |
| 13. James Bond introduces himself as "Bond. James Bond." | Ex. B (*Dr. No*) at 7:50-8:04<br><br>Ex. D (*Goldfinger*) at 11:52-12:04<br><br>Ex. R (*GoldenEye*) at 20:21-20:28<br><br>Ex. S (*Tomorrow Never Dies*) at 31:30-31:46 |
| 14. The minister of intelligence is referred to as "M" (the first letter of his or her last name). | Ex. D (*Goldfinger*) at 59:35-1:00:08<br><br>Ex. R (*GoldenEye*) at 38:00-38:20<br><br>Ex. X (*Skyfall*) at 35:15-35:25, 2:15:40-2:16:15, 2:17:02-2:17:39 (Olivia Mansfield is M at the start of the motion picture; Gareth Mallory is M at the end) |
| 15. M is cross and impatient. | Ex. H (*Diamonds Are Forever*) at 7:46-8:24<br><br>Ex. I (*Live and Let Die*) at 8:05-9:06<br><br>Ex. J (*The Man with the Golden Gun*) at 10:50-13:59<br><br>Ex. R (*GoldenEye*) at 45:33-47:55 (M calls Bond a "sexist, misogynist, dinosaur") |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 16. M develops an uncharacteristically close relationship with James Bond. | Ex. R (*GoldenEye*) at 47:30-48:07 (M tells Bond to "come back alive")<br><br>Ex. V (*Casino Royale*) at 57:15-57:42 (Bond and M's conversation ends with M telling Bond, "I knew you were you")<br><br>Ex. X (*Skyfall*) at 35:45-36:50 (when M defends Bond's reinstatement, Gareth claims M is "sentimental about [Bond]"), 1:46:18-1:46:55 (M and Bond discuss Bond's upbringing and orphanhood), 2:13:05-2:14:30 (Bond holds M as she dies and proceeds to cry and kiss her forehead, while her last words are, "I did get one thing right" as she stares into his tearing eyes) |
| 17. M gives James Bond latitude to do his job. | Ex. E (*Thunderball*) at 42:06-43:14 (M sends Bond on a mission with no guidance on how to proceed; Bond asks M to change his mission location, and M immediately changes it)<br><br>Ex. R (*GoldenEye*) at 37:35-38:55, 43:30-48:05 (M sends Bond on a mission with no guidance on how to proceed but to "come back alive")<br><br>Ex. S (*Tomorrow Never Dies*) at 4:43-9:33 (When Admiral Roebuck doubts Bond, asking: "What the hell is he doing?" M responds: "His job," and smirks when Bond completes his mission successfully)<br><br>Ex. U (*Die Another Day*) 1:00:54-1:02:57 (M tells Bond that he has "become useful again," and he dismisses her, saying, "Then, maybe it's time you let me get on with my job.") |
| 18. The Bond motion pictures feature a flirtatious secretary named Moneypenny. | Ex. B (*Dr. No*) at 9:40-10:37<br><br>Ex. D (*Goldfinger*) at 19:11-20:02<br><br>Ex. J (*The Man with the Golden Gun*) at 14:06-14:58<br><br>Ex. R (GoldenEye) at 36:26-37:31<br><br>Ex. S (*Tomorrow Never Dies*) at 23:07-23:49, 27:12-27:29<br><br>Ex. X (*Skyfall*) at 2:16:27-2:16:49 |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 19. Moneypenny engages in flirtatious or sexually suggestive banter with James Bond. | Ex. B (*Dr. No*) at 9:55-10:20 (Bond: "Moneypenny! What gives?" Moneypenny: "Me, given an ounce of encouragement. You never take me to dinner looking like this, James. You never take me to dinner, period." Bond: "I would, you know. Only 'M' would have me court-martialed for illegal use of government property." Moneypenny: "Flattery will get you nowhere - but don't stop trying.")<br><br>Ex. C (*From Russia with Love*) at 23:29-23:56 (Bond: "You've never been to Istanbul?" Moneypenny: "No…. Maybe I should get you to take me there someday. I've tried everything else." Bond: "Darling Moneypenny, you know I never even look at another woman." Moneypenny: "Oh, really, James?" Bond: "Let me tell you the secret of the world.")<br><br>Ex. E (*Thunderball*) at 12:12-12:31 (Bond: "Moneypenny, next time I see you, I'll put you across my knee." Moneypenny: "… I can hardly wait!")<br><br>Ex. J (*The Man with the Golden Gun*) at 14:27-14:38 (Bond: "Moneypenny, you are better than a computer." Moneypenny: "In all sorts of ways, but you never take advantage of them.")<br><br>Ex. S (*Tomorrow Never Dies*) at 23:30-23:45 ("cunning linguist") |
| 20. The quartermaster who outfits Bond with advanced gadgets for his missions is referred to as "Q." | Ex. D (*Goldfinger*) at 22:39-25:15<br><br>Ex. P (*The Living Daylights*) at 33:33-35:57<br><br>Ex. Q (*Licence to Kill*) at 1:12:30-1:14:40 |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 21. Q gets frustrated with James Bond's failure to return the gadgets intact. | Ex. D (*Goldfinger*) at 23:51-24:26 (Q: "Reception on the dashboard, here. Audio-visual range, 150 miles…. And incidentally, we'd appreciate its return, along with all your other equipment—*intact* for once, when you return from the field.") <br><br> Ex. K (*The Spy Who Loved Me*) at 1:01:48-1:02:29 (Q: "I want you to take great care of this equipment …" Bond: "Q, have I ever let you down?" Q: "Frequently.") <br><br> Ex. T (*The World Is Not Enough*) at 20:24-20:40 ([Q is frustrated with Bond as he demonstrates the assigned gadgetry] Bond: "Is it something I said?" Q: "No, something you destroyed.") |
| 22. The "Bond Girls" often fall into peril and require James Bond's help to escape. | Ex. B (*Dr. No*) at 1:45:56-1:47:22 (Bond rescues Honey Ryder from Dr. No's lair before it explodes) <br><br> Ex. K (*The Spy Who Loved Me*) at 57:54-59:45 (Bond saves Major Anya Amasova from Jaws) <br><br> Ex. U (*Die Another Day*) at 1:24:00-1:26:03, 1:43:13-1:44:47 (Bond rescues Jinx) |
| 23. James Bond battles megalomaniacal villains who have some fantastic plan to inflict catastrophic damage on England or the world. | Ex. D (*Goldfinger*) at 1:10:20-1:12:46, 1:23:20-1:24:54 (Goldfinger seeks to destabilize the world's finances by irradiating the gold at Fort Knox with an atomic device) <br><br> Ex. F (*You Only Live Twice*) at 1:06:55-1:07:22, 1:39:05-1:39:16 (Blofeld seeks to incite war between Russia and the U.S.) <br><br> Ex. N (*Octopussy*) at 16:36-19:14, 1:32:30-1:33:47 (Russian General Orlov reveals plans to detonate a bomb in Germany and then invade Europe against the wishes of his government) <br><br> Ex. R (*GoldenEye*) at 1:16:11-1:17:25, 1:51:28-1:53:07 (Russian General Ourumov and Janus seek to bring England to its knees by destroying the data on every computer in London) |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 24. The villains have henchmen who are brutal killers with menacing appearances. | Ex. D (*Goldfinger*) at 25:53-26:08, 1:39:37-1:42:40 (Oddjob)<br><br>Ex. K (*The Spy Who Loved Me*) at 42:26-43:38, 57:54-59:45 (Jaws)<br><br>Ex. O (*A View to a Kill*) at 13:22-13:40, 52:40-53:20 (May Day) |
| 25. The Bond movies (other than *Dr. No*) end with the following words on screen: "James Bond will return." | Ex. C (*From Russia with Love*) at 1:53:37<br>Ex. Q (*Licence to Kill*) at 2:12:46<br>Ex. R (*GoldenEye*) at 2:09:36<br>Ex. X (*Skyfall*) at 2:17:55 |
| 26. James Bond typically uses his birth name (James Bond), not a cover name, while in the field. | Ex. C (*From Russia with Love*) at 29:00-29:24<br>Ex. D (*Goldfinger*) at 11:40-12:04, 50:25-50:30<br>Ex. E (*Thunderball*) at 50:08-50:37 |
| 27. James Bond is an orphan. | Ex. R (*GoldenEye*) at 1:09:30-1:09:50<br><br>Ex. V (*Casino Royale*) at 1:00:00-1:01:15<br><br>Ex. X (*Skyfall*) at 1:46:18-1:46:55 (M and Bond refer to Bond's upbringing and orphanhood) |
| 28. James Bond speaks foreign languages. | Ex. F (*You Only Live Twice*) at 14:05-14:30 (Japanese)<br><br>Ex. S (*Tomorrow Never Dies*) at 22:16-23:45 (Danish), 27:47-27:58 (German)<br><br>Ex. T (*The World Is Not Enough*) at 59:10-59:21 (Russian) |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 29. James Bond is cold-blooded. | Ex. B (*Dr. No*) at 56:15-58:45 (Bond sets a trap, lays in wait, toys with Professor Dent, and then shoots him)<br><br>Ex. K (*The Spy Who Loved Me*) at 27:01-27:26 (Bond asks henchman for information, kills him, then calmly fixes his tie)<br><br>Ex. M (*For Your Eyes Only*) at 1:19:30-1:20:20 (Bond kicks Locque's car off a cliff with Locque still inside)<br><br>Ex. J (*The Man with the Golden Gun*) at 1:43:32-1:44:00 (Scaramanga: "[T]he English don't consider it sporting to kill in cold blood, do they?"  Bond: "Don't count on that.")<br><br>Ex. V (*Casino Royale*) at 1:44:20-1:44:30 (Asked if it bothered him to kill people, "I wouldn't be very good at my job if it did.") |
| 30. James Bond is a British military veteran. | Ex. F (*You Only Live Twice*) at 9:10-9:53 (newspaper article noting death of a Naval Commander)<br><br>Ex. O (*A View to a Kill*) at 5:58-6:05, 10:27-33<br><br>Ex. X (*Skyfall*) at 17:02-17:12 (draft obituary listing Bond as a Commander in the Royal Navy) |
| 31. James Bond is overtly sexual and charming to women. | Ex. C (*From Russia with Love*) at 17:49-19:30, 53:12-55:24<br><br>Ex. D (*Goldfinger*) at 3:27-4:05, 12:20-14:50<br><br>Ex. E (*Thunderball*) at 17:04-17:23, 18:15-18:26, 1:22:01-1:23:52<br><br>Ex. S (*Tomorrow Never Dies*) at 22:16-23:45, 26:44-27:28<br><br>Ex. U (*Die Another Day*) at 36:01-39:43 |

35

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 32. James Bond is an adept gambler. | Ex. B (*Dr. No*) at 7:01-8:45<br><br>Ex. E (*Thunderball*) at 49:49-51:42<br><br>Ex. M (*For Your Eyes Only*) at 1:00:40-1:02:18<br><br>Ex. R (GoldenEye) at 18:16-19:52<br><br>Ex. V (*Casino Royale*) at 1:15:26-1:16:02 (Bond reveals how he discovered Le Chiffre's "tell"), 1:38:17-1:42:32 |
| 33. M states that orphans make the best secret agents. | Ex. X (*Skyfall*) at 1:46:18-1:46:56 |
| 34. A reference is made to the "stopping power" of James Bond's gun. | Ex. B (*Dr. No*) at 12:39-13:51 |
| 35. James Bond, when asked, answers that killing does not bother him. | Ex. V (*Casino Royale*) at 1:44:20-1:44:30 |
| 36. Bond motion pictures often contain a scene in which James Bond is captured and tortured by the villain or his henchman, learns about the villain's plot, and escapes with knowledge of the plot. | Ex. I (*Live and Let Die*) at 1:49:00-1:55:12<br><br>Ex. G (*On Her Majesty's Secret Service*) at 1:18:46-1:23-13<br><br>Ex. T (*The World Is Not Enough*) at 1:43:10-1:48:39 |
| 37. A theme of the Bond motion pictures is that a lone hero who—using exceptional wit and physical skills—prevails in a personal conflict of global significance against a megalomaniacal villain. | Ex. G (*On Her Majesty's Secret Service*)<br><br>Ex. H (*Diamonds Are Forever*)<br><br>Ex. R (*GoldenEye*)<br><br>Ex. V (*Casino Royale*) |
| 38. In *GoldenEye*, James Bond fights a villain at an icy Russian military compound and escapes in a plummeting plane. | Ex. R (*GoldenEye*) at 8:17-10:40 |

| BOND ELEMENT | SELECTED EXAMPLES FROM BOND FILMS |
|---|---|
| 39. In *Skyfall*, James Bond breaks into M's apartment to discuss his future, concluding with M's telling Bond that a shower might be in order. | Ex. X (*Skyfall*) at 25:20-27:40 |
| 40. Real and fictional British government officials are depicted in many Bond works. | Ex. D (*Goldfinger*) at 20:02-22:36 (Colonel Smithers of the Bank of England)<br><br>Ex. K (*The Spy Who Loved Me*) at 12:44-13:03 (Sir Frederick Gray, Minister of Defence)<br><br>Ex. L (*Moonraker*) at 9:17-9:27 (Sir Frederick Gray, Minister of Defence)<br><br>Ex. M (*For Your Eyes Only*) at 2:04:17-2:05:02 (Prime Minister Margaret Thatcher) |

37