1   ROBERT M. SCHWARTZ (S.B. #117166)
        rschwartz@omm.com
2   CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
3   BRIAN J. FINKELSTEIN (S.B. #261000)
        brianfinkelstein@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, California  90067-6035
    Telephone:  (310) 553-6700
6

7   MARC A. BECKER (S.B. #138872)
        marcbecker@quinnemanuel.com
8   QUINN EMANUEL URQUHART
        & SULLIVAN, LLP
9   865 S. Figueroa Street, 10th Floor
    Los Angeles, California  90017
10  Telephone:  (213) 443-3000

11  Attorneys for Plaintiffs

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14  DANJAQ, LLC, a Delaware limited          Case No. 2:14-cv-02527 DDP-Ex
    liability company; METRO-GOLDWYN-
15  MAYER STUDIOS INC., a Delaware           **PLAINTIFFS' OPPOSITION TO**
    corporation; UNITED ARTISTS             **MOTION TO DISMISS**
16  CORPORATION, a Delaware                  **COMPLAINT BY DEFENDANTS**
    corporation; SEVENTEEN LEASING          **UNIVERSAL CITY STUDIOS**
17  CORPORATION, a Delaware                  **AND NBCUNIVERSAL MEDIA**
    corporation; EIGHTEEN LEASING
18  CORPORATION, a Delaware                  **Judge:**      Hon. Dean D. Pregerson
    corporation; NINETEEN LEASING           **Magistrate:** Hon. Charles F. Eick
19  CORPORATION, a Delaware
    corporation; TWENTY LEASING             **Date:**       July 28, 2014
20  CORPORATION, a Delaware                  **Time:**       10:00 A.M.
    corporation; and TWENTY-ONE             **Place:**      Courtroom 3 - 2nd Fl.
21  LEASING COMPANY LLC, a Delaware
    limited liability company,               **Complaint:**  April 3, 2014
22
                    Plaintiff,
23
             v.
24
    UNIVERSAL CITY STUDIOS LLC, a
25  Delaware limited liability company;
    NBCUNIVERSAL MEDIA, LLC, a
26  Delaware limited liability company; and
    AARON BERG, an individual,
27
                    Defendant.
28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................ 1

II.  UNIVERSAL MISSTATES THE LEGAL STANDARD GOVERNING
     PLEADINGS .......................................................................... 4

III. SUMMARY OF PLAINTIFFS' ALLEGATIONS ............................. 7

IV.  PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE A
     CLAIM AGAINST UNIVERSAL FOR DIRECT INFRINGEMENT ............ 9

     A.   Universal Has Infringed By Reproducing, Distributing, And Preparing
          Derivative Works Based On The Bond Works ................................. 9

     B.   Universal's "Defenses" To Plaintiffs' Direct Infringement Claims Are
          Without Merit ...................................................................... 14

V.   PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE CLAIMS
     FOR INDIRECT INFRINGEMENT ................................................ 17

     A.   The Complaint Pleads A Claim For Contributory Infringement ......... 17

     B.   The Complaint Pleads A Claim For Vicarious Infringement ............. 19

     C.   The Complaint Pleads A Claim For Inducement of Infringement ...... 21

VI.  NO CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..................... 21

VII. CONCLUSION ........................................................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1013 (9th Cir. 2001) ..................................................................*passim*

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................................ 15

*Anderson v. Stallone*,
1989 WL 206431 (C.D. Cal. Apr. 25, 1989).................................... 10, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 4, 5, 13

*Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*,
648 F.3d 986 (9th Cir. 2011) ........................................... 5, 11, 12, 13, 16

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
742 F. Supp. 2d 1101 (C.D. Cal. 2010) ............................................... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................... 4, 5, 13, 21

*Brayton Purcell LLP v. Recordon & Recordon*,
2007 WL 420122 (N.D. Cal. Feb. 6, 2007)........................................ 20

*Cal. State Water Res. Control Bd. v. F.E.R.C.*,
966 F.2d 1541 (9th Cir. 1992) ........................................................... 15

*Cass Cnty. Music Co. v. C.H.L.R., Inc.*,
88 F.3d 635 (8th Cir. 1996) ............................................................... 20

*Chase-Riboud v. Dreamworks Inc.*,
987 F. Supp. 1222 (C.D. Cal. 1997) .................................................. 14

*Clinton v. Acequia, Inc.*,
94 F.3d 568 (9th Cir. 1996) ............................................................... 15

*Columbia Pictures Indus. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)........................................................... 21

*DC Comics v. Towle*,
2013 WL 541430 (C.D. Cal. Feb. 7, 2013) ........................................ 11

*Dillon v. NBCUniversal Media LLC*,
2013 WL 3581938 (C.D. Cal. June 18, 2013)................................. 5, 17

*Florer v. Collins*,
2012 WL 367283 (W.D. Wash. Jan. 9, 2012) .................................... 22

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
930 F.2d 277 (3d Cir. 1991) ............................................................. 12

## TABLE OF AUTHORITIES

*Gilbert v. New Line Prods.*,
  2010 WL 891333 (C.D. Cal. Feb. 17, 2010) .................................................... 13

*Hudson v. Universal Pictures Corp.*,
  2004 WL 1205762 (E.D.N.Y. Apr. 29, 2004) ................................................. 14

*Int'l Harvester Co. v. Deere & Co.*,
  623 F.2d 1207 (7th Cir. 1980) ........................................................................ 15

*Jewel v. Nat'l Sec. Agency*,
  673 F.3d 902 (9th Cir. 2011) .......................................................................... 21

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................ 5, 17

*Kimbell v. Rock*,
  2009 WL 3248208 (C.D. Cal. Oct. 8, 2009) .................................................. 17

*LaTele Telv'n C.A. v. Telemundo Commc'ns Grp., LLC*,
  2013 WL 1296314 (S.D. Fl. Mar. 27, 2013) .............................................. 18, 20

*Live Face on Web, LLC v. Howard Stern Prods.*,
  2009 WL 723481 (E.D. Pa. Mar. 17, 2009) ................................................... 19

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................ 22

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ........................................................................ 18

*Marvel Enters., Inc. v. NCSoft Corp.*,
  2005 WL 878090 (C.D. Cal. Mar. 9, 2005) ................................................... 19

*Med-Systems, Inc. v. Masterson Mktg., Inc.*,
  2011 WL 5873399 (S.D. Cal. Nov. 23, 2011) ............................................... 18

*Menlo Logistics, Inc. v. Gainey Transp. Servs., Inc.*,
  2005 WL 1021443 (N.D. Cal. May 2, 2005) .................................................... 9

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002) .......................................................................... 8

*MGM Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ....................................................................................... 21

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*,
  856 F.2d 1341 (9th Cir. 1988) ........................................................................ 11

*Novell, Inc. v. Unicom Sales, Inc.*,
  2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ............................................... 11

*Ortiz-Gonzalez v. Fonovisa*,
  277 F.3d 59 (1st Cir. 2002) ............................................................................ 11

OPP. TO UNIVERSAL'S MOT. TO DISMISS

**TABLE OF AUTHORITIES**

*Peace and Freedom Party v. Bowen*,
   912 F. Supp. 2d 905 (E.D. Cal. 2012) ................................................................. 9

*Pickett v. Prince*,
   207 F.3d 402 (7th Cir. 2000) ............................................................................. 10

*Portland Police Ass'n v. Portland*,
   658 F.2d 1272 (9th Cir. 1981) ........................................................................... 15

*Pye v. Mitchell*,
   574 F.2d 476 (9th Cir. 1978) ........................................................................ 3, 16

*Quirk v. Sony Pictures Entm't Inc.*,
   2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) ..................................................... 14

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
   2011 WL 166198 (N.D. Cal. Jan. 18, 2011) ....................................................... 6

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ........................................................................... 14

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ............................................................................. 8

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
   363 F.3d 1361 (Fed. Cir. 2004) ......................................................................... 15

*Simonyan v. Ally Fin. Inc.*,
   2013 WL 45453 (C.D. Cal. Jan. 3, 2013) ............................................................ 6

*Smith v. Mikki More, LLC*,
   2014 WL 1875929 (S.D.N.Y. May 9, 2014) ................................................. 18, 20

*Solis v. City of Fresno*,
   2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ....................................................... 6

*Vivendi SA v. T-Mobile USA, Inc.*,
   586 F.3d 689 (9th Cir. 2009) ............................................................................... 6

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
   2012 WL 3101659 (C.D. Cal. July 31, 2012) ...................................................... 5

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985) ..................................................................... 14

*Walker v. Univ. Books*,
   602 F.2d 859 (9th Cir. 1979) ............................................................................. 14

*Walt Disney Prods. v. Filmation Assocs.*,
   628 F. Supp. 871 (C.D. Cal. 1986) ............................................................. *passim*

# TABLE OF AUTHORITIES

**STATUTES**

17 U.S.C. § 101 ...................................................................................................... 12

17 U.S.C. § 103(a) ................................................................................................. 10

17 U.S.C. § 106 ................................................................................................ *passim*

17 U.S.C. § 502(a) .................................................................................................... 4

**RULES**

FED. R. CIV. P. 15(a)(2) .......................................................................................... 21

FED. R. EVID. 201(b)(2) ............................................................................................ 9

**OTHER AUTHORITIES**

3 D. NIMMER & M. NIMMER, NIMMER ON COPYRIGHT § 12.04[A][2]
   (Matthew Bender, Rev. Ed.) ............................................................................. 19

## I.     INTRODUCTION

Defendants Universal City Studios and NBCUniversal Media (collectively, "Universal") move to dismiss based on the legally incorrect premise that they cannot be liable even if the *Section 6* Screenplay infringes plaintiffs' copyrights. Universal's reliance on the assertion that it did not write or contribute to the Screenplay is inconsequential: Plaintiffs have alleged past and ongoing conduct *by Universal* sufficient to constitute direct and secondary copyright infringement. Accordingly, this action is not, as Universal claims, "premature."  Rather, the Court should deny Universal's motion on each of the following independent grounds:

*First*, it makes no difference that Universal did not write the Screenplay. The complaint alleges "post-purchase" conduct *by Universal* that directly infringed plaintiffs' copyrights.  Universal: (a) reproduced (*i.e.*, made copies of) the Screenplay without plaintiffs' permission, in violation of 17 U.S.C. § 106(1), Compl. ¶¶ 44, 69; (b) distributed copies of the Screenplay to engage producers, directors, and actors—critical steps in making a motion picture based on that Screenplay—in violation of section 106(3), Compl. ¶¶ 9, 44, 51, 69; and (c) authorized the preparation of an *additional* infringing Screenplay (*i.e.*, an unauthorized derivative work) in violation of section 106(2), Compl. ¶¶ 45-50, 69. Universal's motion does not address any of that conduct; yet each constitutes a sufficient, separate basis to state a claim against Universal for direct infringement of the Bond works, and each is sufficient grounds to deny Universal's motion.[1]

Universal's post-filing admissions, of which this Court can take notice, defeat Universal's motion as to plaintiffs' secondary infringement claims (the Second through Fourth Claims).  On April 11, 2014, in opposing plaintiffs' request for expedited discovery, Universal admitted that it has commissioned the preparation of a revised Screenplay and is supervising that work right now.  *See*

---

[1] The "Bond works" are the *James Bond* motion pictures and literary works identified in Appendix A to plaintiffs' complaint.  Dkt. No. 1.

Dkt. Nos. 15 at 2:7-10, 2:27-3:1; 15-1 ¶¶ 3, 7.  Those facts not only satisfy the pleading standard for plaintiffs' secondary infringement claims, they would be sufficient to defeat a motion for summary judgment.

*Second*, Universal's motion is based on the erroneous premise that its liability is measured only by the "final" screenplay or the film that it eventually produces, and that "earlier" drafts (*e.g.*, the Screenplay it bought from Berg and the revision it commissioned) are irrelevant to the question of whether it has infringed the Bond works.  *See* Mot. at 6-7.  That theory applies to cases where the plaintiff seeks to use "interim" drafts to prove that the "final" version is infringing.  But plaintiffs have not sought to do that here and have no need to do so.  Universal *has already* unlawfully copied and distributed a screenplay that infringes plaintiffs' rights.  Universal is liable *now* for its past conduct with regard to *that* screenplay.  That is enough to state a claim for direct infringement and deny Universal's motion.

With respect to the claims for secondary infringement, Universal argues that plaintiffs cannot sue until it has finished making its revisions to the Screenplay.  That is not the law.  Courts can and do find "intermediary" works to be a sufficient basis on which to find infringement.  Further, between now and the end of the production of any *Section 6* motion picture, were the project to proceed that far, the Screenplay will *always* be subject to change and thus, from a film-making standpoint, remain "unfinished."  But the law does not require plaintiffs to sit on their rights until Universal deems its revisions to be "finished" or until the movie "wraps."  For purposes of suing over the separate derivative work that a revised Screenplay constitutes, the law requires only that some change have been made and that it have been reduced to a tangible medium of expression, such as a word processing file on Berg's computer.  The complaint alleges just that: that Universal has hired one or more writers and that they are revising the Screenplay.  Compl. ¶¶ 45-48, 50.  As noted above, that is not conjecture: Universal admitted two months ago that it hired Berg to revise the Screenplay and that his work is ongoing.

OPP. TO UNIVERSAL'S MOT. TO DISMISS

*See* Dkt. Nos. 15 at 2:7-10, 2:27-3:1; 15-1 ¶¶ 3, 7.  Such conduct constitutes the preparation of a separate derivative work based upon the Bond works.

The complaint alleges that this separate derivative work infringes plaintiffs' copyrights.  Compl. ¶¶ 46-50.  Plaintiffs have a valid basis to allege that: (a) the revised Screenplay is based on a screenplay that is infringing; (b) before filing this lawsuit, plaintiffs gave Universal the opportunity to exonerate itself by telling plaintiffs what revisions Universal was going to make to remove the infringing content, but Universal refused to do so—a fact from which the jury could infer that the revised Screenplay continues to infringe plaintiffs' copyrights; (c) Universal has refused to provide plaintiffs with any of the revised pages; and (d) Universal has paid Berg over $1 million for the Screenplay and it would be contrary to industry practice, and make no sense, to pay anything close to that amount of money for a screenplay whose characters, plot, key dialogue, themes, settings, etc., the buyer intended to immediately discard.  *See* Compl. ¶¶ 2-5, 7-11, 40, 42-43, 53, 56-71.  Thus, and as detailed in Section V below, these allegations are sufficient to state a claim for secondary infringement.  Universal may want to dispute them, but it may not do so on a pleading motion.

***Third***, neither plaintiffs nor the Court are required, in testing the sufficiency of the complaint, to accept Universal's pledge that it will eventually revise the Screenplay so as to remove all infringing content.  Indeed, the Court is required to do the opposite: accept factual allegations in the complaint as true and draw all reasonable inferences in *plaintiffs'* favor.  Regardless, copyright infringement is a strict liability claim; thus, Universal's disclaimer of an intent to infringe is legally meaningless.  *See Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable").[2]  And if lawsuits could be dismissed based solely on the defendant's

---

[2] All emphases added and all internal citations and quotations omitted, unless otherwise noted.

1  "assurance" that it would not violate the plaintiff's rights, or would cure a past

2  violation of those rights, no case would get beyond the pleading stage.

3  *Fourth*, Universal's motion is based on an erroneous reading of the pleading

4  standards applicable to allegations a plaintiff may assert on "information and

5  belief." Plaintiffs are entitled to plead such allegations, especially where, as here,

6  the basis for those facts is in Universal's exclusive control. Here, these facts are

7  based not on mere conjecture, but on public reports and decades-long customs and

8  practices for the development of motion pictures with which plaintiffs are familiar.

9  Thus, plaintiffs have exceeded the standards for sufficiently pleading facts on

10 information and belief. Further, Universal has admitted some of these facts in

11 opposing expedited discovery—which are properly the subject of judicial notice—

12 and is thereby estopped from attacking the sufficiency of those allegations.

13 Notwithstanding Universal's attempt to trivialize the monetary damages its

14 infringing conduct has thus far inflicted, plaintiffs are entitled to exercise the full

15 array of remedies provided under the Copyright Act, including the injunctive

16 provisions of section 502(a) to prevent or restrain further acts of infringement,

17 including the further reproduction and distribution of the Screenplay and the

18 preparation of further unauthorized derivative works based on it. For these reasons,

19 and those discussed below, the Court should deny Universal's motion.

20 **II.    UNIVERSAL MISSTATES THE LEGAL STANDARD GOVERNING**

21 **PLEADINGS.**

22 Universal misstates the legal standards under *Twombly/Iqbal*. *See* Mot. at

23 10-12. To defeat a motion to dismiss, a plaintiff need only "plead[] factual content

24 that allows the court to draw the reasonable inference that the defendant is liable for

25 the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell*

26 *Atl. Corp. v. Twombly*, 550 U.S. 544, 556-59 (2007). To satisfy that, plaintiffs must

27 merely "nudge[] their claims across the line from conceivable to plausible."

28 *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556 (a claim is plausible, even if finding "actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely").

In evaluating the plausibility of the complaint, the Court must accept the complaint's allegations as true and draw all reasonable inferences in plaintiffs' favor. *See Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*, 648 F.3d 986, 991, 994 (9th Cir. 2011). This legal principle applies to complaints that allege copyright infringement. *See, e.g., Dillon v. NBCUniversal Media LLC*, 2013 WL 3581938, at *3-5 (C.D. Cal. June 18, 2013) ("[a]fter examining the Treatment and viewing the Program, the Court concludes that, *drawing all reasonable inferences in favor of Plaintiff*, there are enough similar elements for Plaintiff to state a claim of copyright infringement at this stage of the litigation").

Contrary to Universal's argument, *Twombly* "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 961 n.85 (C.D. Cal. 2012); *see also W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 2012 WL 3101659, at *2 (C.D. Cal. July 31, 2012) (plaintiff may allege "on information and belief" when it "lacks personal knowledge about certain facts, but obtained hearsay or other secondhand information that lead him or her to believe them to be true"). That is the case here. Only Universal knows the extent of the infringing actions it has taken with regard to the Screenplay. Because of this, plaintiffs based certain allegations on published reports about Universal's conduct with respect to the Screenplay, on industry customs concerning the development of motion picture projects, and on reasonable inferences that flow therefrom. Compl. ¶¶ 7-11, 14, 21, 27-29, 51, 53. Plaintiffs brought these facts to Universal's attention before filing this lawsuit. Compl. ¶¶ 10-11. Plaintiffs gave Universal ample opportunity to dispute those facts, but

OPP. TO UNIVERSAL'S MOT. TO DISMISS

1    Universal refused to do so.  *Id.*  Plaintiffs thus have a more than sufficient basis to

2    allege Universal's conduct on information and belief.

3        Universal errs in relying on *Richtek Tech. Corp. v. UPI Semiconductor

4    Corp.,* 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011), to argue that "information

5    and belief" pleadings are improper.  The plaintiff in *Richtek* pled only that it owned

6    the copyright in a work and that defendants had copied it, without identifying the

7    infringing work or describing how it was similar to the infringed work.  *Id.* at *3.

8    The *Richtek* plaintiff's failure to plead elements of a claim for infringement doomed

9    that complaint—not the use of "information and belief" allegations:

10           The closest the complaint comes [to alleging copyright infringement]

11           are paragraphs 77 and 78:

12                   77.    Upon information and belief, Defendants … have

13                          had access to Richtek's Copyright Works.

14                   78.    Upon information and belief, Defendants … have

15                          made unauthorized copies, prepared derivative

16                          works and distributed copies of Richtek's

17                          copyright works … without Richtek's permission.

18           … Richtek's argument that these paragraphs put Maxchip on notice of

19           its copyright infringement contentions is laughable.

20    *Id.*  Universal's attempt to liken plaintiffs' detailed 40-page complaint to those two

21    paragraphs in *Richtek* is, to use that court's word, "laughable."[3]

22

23

24    _____

      [3] Universal's other "information and belief" cases are inapposite.  *See* Mot. at 10-12

25    (*citing Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009)

      (dismissing complaint on *forum non conveniens* ground where complaint alleged no

26    facts connecting the claims to United States); *Simonyan v. Ally Fin. Inc.*, 2013 WL

      45453, at *2 (C.D. Cal. Jan. 3, 2013) (dismissing complaint that failed to meet

27    heightened pleading standard of particularity in fraud claim); *Solis v. City of

      Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) (dismissing "class of

28    one" equal protection claim where plaintiff identified no similarly-situated person)).

### III.   SUMMARY OF PLAINTIFFS' ALLEGATIONS.

In late 2013, plaintiffs learned from published reports that Universal had acquired rights to the Screenplay and that it had paid in excess of $1 million for it. Compl. ¶¶ 7, 39, 42, 43, 53.  In November, plaintiffs wrote to Universal describing the infringing nature of the Screenplay, and asked Universal to stop its development activities.  *Id*. ¶ 7.  Universal declined, stating that it had made no decision on whether to pursue the project and that a lawsuit was premature.  *Id*. ¶ 8.

In March 2014, additional published reports contradicted Universal's prior representations.  *Id.* ¶¶ 9, 51.  Instead of being ambivalent about whether to pursue the project, Universal had contracted with producers, a director, and a lead actor— the key creative talent for a motion picture—and was planning to launch a franchise around the Screenplay.  *Id*. ¶¶ 9, 44, 51.  Plaintiffs know from their own experience, *id.* ¶ 14, 21, 27-29, and reasonable inferences, that talent does not commit to a project without seeing the screenplay.  Thus, Universal necessarily must have reproduced the Screenplay and distributed it, at a minimum, to four producers, a director, and an actor.  *Id.* ¶¶ 9, 44, 51, 53.  Plaintiffs asked Universal whether it was using the infringing Screenplay to engage cornerstone talent for the project and again asked Universal to stop development.  *Id*. ¶ 10.  Plaintiffs also asked whether Universal had revised the Screenplay and requested that Universal provide plaintiffs with any revised version, as well as the version Universal had copied and distributed to those it was seeking to hire for the project, if different.  *Id.*  Universal refused to provide any information and refused to stop development.  *Id.*  Tellingly, Universal did not deny that it had copied and distributed the infringing Screenplay.

The complaint alleges that the Screenplay infringes plaintiffs' copyrights in the Bond works.  It alleges that plaintiffs own those copyrights and that the Screenplay copies material from the Bond works without authorization.  *Id.* ¶¶ 3-5, 27, 30-35, 38, 40, 52, 56-71.  It further alleges that Universal made copies of the Screenplay and distributed it, and authorized others to prepare a revised Screenplay

that copies material from the Bond works.  *Id.* ¶¶ 9, 44-51, 69.  Such allegations are

sufficient to state a claim for copyright infringement.  *See A&M Records, Inc. v.*

*Napster, Inc.*, 239 F.3d 1013 (9th Cir. 2001) (plaintiffs need only allege "ownership

of the allegedly infringed material" and "that the alleged infringers violate[d] at

least one exclusive right granted to copyright holders under 17 U.S.C. § 106").

Universal does not challenge the legal sufficiency of those allegations.

Because evidence of direct copying is often hard to adduce, the complaint

also alleges facts related to the alternative method of proving "copying," that is, that

Berg had access to plaintiffs' works, and that the Bond works and the Screenplay

are substantially similar.  Compl. ¶¶ 3-5, 37-38, 40, 56-64.  Universal's motion

does not challenge those allegations either.  The complaint also alleges facts on

which a fact-finder could find substantial similarity, namely, the elements of the

"extrinsic" test (similarity in characters, plot, dialogue, theme, setting, pace, mood,

etc.) and the "intrinsic" test (ordinary observer's subjective assessment of similarity

in expression).  *Id.* ¶¶ 3-4, 40, 56-64; *see Shaw v. Lindheim*, 919 F.2d 1353, 1356-

57 (9th Cir. 1990).  Universal's motion does not dispute those allegations.

Even if those elements are deemed unprotectable under the extrinsic test, the

complaint also alleges that the Screenplay copies the unique selection and

arrangement of elements from the Bond works and is therefore infringing under the

Ninth Circuit's *Metcalf* standard.  Compl. ¶¶ 2-5, 64; *see Metcalf v. Bochco*, 294

F.3d 1069, 1074 (9th Cir. 2002).  Universal does not challenge the *Metcalf*

allegations.  (Nor does Berg, which is also fatal to *his* motion.  *See* Dkt. No. 22.)

Universal's conduct implicates claims for relief for both direct and indirect

(secondary) infringement.  The complaint alleges not only that Universal has made

copies of the infringing work and distributed those copies, but also that Universal

has commissioned the preparation of an unauthorized derivative work based on the

infringing work, hired Berg to aid in that endeavor, and directed him.  Compl.

¶¶ 45-50, 72-94.  Moreover, plaintiffs have alleged that the current revised version

of the Screenplay infringes the Bond works.  *Id.* ¶ 50.  Those allegations describe conduct that makes Universal liable for contributory infringement, vicarious infringement, and inducement to infringe.  *See infra*, Section V.

After plaintiffs filed this lawsuit, Universal admitted that it is working with co-defendant Berg to prepare a derivative work based on the infringing Screenplay. *See* Dkt. Nos. 15-1 ¶ 3 ("As part of the customary process to develop a possible motion picture, Mr. Berg was subsequently engaged to undertake a rewrite of the Original Berg Script based on instructions from Universal."); 15 at 2:27-3:1 (same). Universal made this admission on April 11, 2014—more than two months ago. Plaintiffs ask the Court, in the concurrently filed request for judicial notice, to take judicial notice of these party admissions and to consider the admissions in ruling on defendants' motions to dismiss.[4]

## IV.   PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE A CLAIM AGAINST UNIVERSAL FOR DIRECT INFRINGEMENT.

### A.   Universal Has Infringed By Reproducing, Distributing, And Preparing Derivative Works Based On The Bond Works.

To state a claim for direct copyright infringement, a plaintiff need allege only "ownership of the allegedly infringed material" and "that the alleged infringers violate[d] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  *A&M Records*, 239 F.3d at 1013.  Universal does not dispute that plaintiffs own copyrights to the Bond works, *see* Compl. ¶¶ 26-27, 29-35, and, for purposes of its motion, Universal does not dispute that the Screenplay infringes the Bond

---

[4] Courts may take judicial notice of party admissions in court filings. *See Menlo Logistics, Inc. v. Gainey Transp. Servs., Inc.*, 2005 WL 1021443, at *1 n.1 (N.D. Cal. May 2, 2005) (taking judicial notice of admission in answer); FED. R. EVID. 201(b)(2) (court may take judicial notice of evidence that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Courts may rely on judicially noticeable facts in ruling on a motion to dismiss. *Peace and Freedom Party v. Bowen*, 912 F. Supp. 2d 905, 907 (E.D. Cal. 2012) (taking judicial notice of admission in ruling on a 12(b)(6) motion).

1   works, Mot. at 2 n.1.[5]  Thus, the only question on plaintiffs' direct infringement

2   claim is whether Universal violated any of the exclusive rights granted to the

3   copyright holder with respect to the Screenplay.

4         As Universal admits, plaintiffs—as copyright holders—have the exclusive

5   right to reproduce, distribute, and prepare derivative works based on the Bond

6   works.  *See* 17 U.S.C. § 106; Mot. at 5.  This means that only plaintiffs can create,

7   copy, or distribute sequels, prequels, remakes, or new versions of the Bond works,

8   or use the characters (including James Bond), plots, dialogue, and other protectable

9   elements of the Bond works in other works.  *See Anderson v. Stallone,* 1989 WL

10  206431, at *8-11 (C.D. Cal. Apr. 25, 1989).

11        The complaint alleges that the Screenplay is based upon the Bond works and

12  thus constitutes an unauthorized derivative work.  Compl. ¶¶ 2-5, 38, 40, 50, 56-64.

13  As such, neither Berg nor Universal may exercise any of a copyright owner's rights

14  under section 106 with regard to the Screenplay.[6]  Universal does not challenge

15  these allegations or the legal conclusions that flow from them.

16        ***Universal Violated Plaintiffs' Exclusive Reproduction Right.***  It is a

17  violation of plaintiffs' rights under section 106(1) to reproduce (*i.e.*, make copies

18  of) the Screenplay without authorization.  *See* 17 U.S.C. § 106(1) ("the owner of

19  _____

20  [5] Universal's assertions that it will heavily revise the Screenplay, and that future
    versions will not infringe the Bond works, tacitly acknowledge that the Screenplay
21  is infringing.  *See* Mot. at 8 ("Plaintiffs have been told, over and over again, that
    [the revised] screenplay[] … will not violate Plaintiffs' rights"), 10 ("Universal has
22  represented [the revised screenplay] will 'deviate significantly' from the
    Screenplay"); Compl. ¶ 8 (if Universal "elected to develop a motion picture based
23  on the screenplay, it would 'deviate significantly from its current iteration'").

24  [6] The person who prepares an unauthorized derivative work may not exercise any of
    the exclusive rights of a copyright owner with regard to any of the infringing
25  portions of that work.  *See* 17 U.S.C. § 103(a) ("protection for a work employing
    preexisting material in which copyright subsists does not extend to any part of the
26  work in which such material has been used unlawfully"); *Pickett v. Prince*, 207
    F.3d 402, 405-06 (7th Cir. 2000) (denying plaintiff's infringement claim where
27  plaintiff had created an unauthorized derivative work and then sought copyright
    protection for another's infringement of the material he had stolen for his work).

28

copyright … has the exclusive right[] to … reproduce the copyrighted work in copies"); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co*., 856 F.2d 1341, 1343 (9th Cir. 1988) (preparing a new unauthorized derivative work using artwork taken from a book collecting artwork—*i.e.*, a derivative work—infringed copyrights in the book and in the artwork itself); *DC Comics v. Towle*, 2013 WL 541430, at *12 (C.D. Cal. Feb. 7, 2013) ("The owner of the underlying work has standing to assert copyright infringement of the derivative work, even when the defendant copies only from the derivative work.").  The complaint alleges that Universal made copies of the Screenplay without plaintiffs' permission and used those copies to induce producers, a lead actor, and a director to make a motion picture based on that Screenplay.  Compl. ¶¶ 9, 44, 51-53, 69.  The Court must accept these allegations as true.  *See Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 991.  This alone is sufficient to state a claim against Universal for direct copyright infringement.  *See Walt Disney Prods. v. Filmation Assocs*., 628 F. Supp. 871, 876 (C.D. Cal. 1986) ("infringement occurs whenever an unauthorized copy … is made, even if it is used solely for the private purposes of the reproducer").

   ***Universal Violated Plaintiffs' Exclusive Distribution Right.***  Likewise, it is a violation of plaintiffs' rights under section 106(3) to distribute the Screenplay— an unauthorized derivative work based upon the Bond works—without plaintiffs' permission.  *See* 17 U.S.C. § 106(3) ("the owner of copyright … has the exclusive right[] to … distribute copies"); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002) (unauthorized distribution of copyrighted works constitutes direct infringement); *Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *14-15 (N.D. Cal. Aug. 17, 2004).  The complaint alleges, based on widely published media reports, that after Universal purchased the Screenplay—an unauthorized derivative work—Universal distributed it to prospective actors, directors, and producers without plaintiffs' permission.  Compl. ¶¶ 2, 5, 7, 9, 42-44, 51-53, 69, 75. Again, the Court must accept these allegations as true.  *See Ass'n for L.A. Deputy*

*Sheriffs*, 648 F.3d at 991.  Universal's conduct infringed plaintiffs' exclusive right of distribution, and is sufficient to state a claim against Universal for direct infringement.  *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 300 (3d Cir. 1991) ("a violation of section 106(3) can … occur when illicit copies of a copyrighted work are only distributed to one person," even as a gift).

  ***Universal Violated Plaintiffs' Exclusive Right To Prepare Derivative Works, And The Exclusive Right To <u>Authorize</u> Others To Do So.***  Under section 106(2), only plaintiffs possess the right to prepare derivative works based on the Bond works, or to authorize others to prepare such works.  *See* 17 U.S.C. § 106(2); *Anderson,* 1989 WL 206431, at *11 (holding that an unauthorized treatment for a sequel to the *Rocky* motion pictures infringed Sylvester Stallone's "exclusive right to prepare derivative works … based upon these movies").  The complaint alleges facts sufficient to state a claim against Universal for violation of section 106(2), namely the existence of a revised Screenplay, Universal's authorization of its creation, and that the revised Screenplay infringes plaintiffs' copyrights.

  The complaint alleges the existence of a revised Screenplay, and that Universal is responsible for its creation.  Compl. ¶¶ 46-50.  More than two months ago, Universal admitted that it hired Berg to revise the Screenplay and continues to supervise his work.  Dkt. Nos. 15 at 2:27-3:1; 15-1 ¶ 3.  The revision process need not be complete before plaintiffs can sue.  Even if the revised Screenplay exists only as a working version in an electronic file on Berg's computer, plaintiffs can pursue copyright claims based on that work.  *See* 17 U.S.C. § 101 ("'Copies' are material objects … in which a work is fixed by any method … and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device .… [When the work is] prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."); *Walt Disney Prods.*, 628 F. Supp. at

876 ("It is thus irrelevant that [defendant] has not concluded or 'realized' what it considers to be a final [work]: the Act prohibits the creation of copies, even if the creator considers those copies mere interim steps toward some final goal."). Plaintiffs' allegations and Universal's admissions are thus a sufficient basis for a fact-finder to reasonably infer that a separate unauthorized derivative work based on the Bond works exists, even if in a form Universal considers to be "unfinished," and that Universal authorized and is responsible for its preparation.

The complaint alleges that the revised Screenplay infringes the Bond works. Compl. ¶ 50.  This allegation is based on: (a) the fact that the original Screenplay is infringing, *id.* ¶¶ 2-5, 7-11, 38, 40, 56-71; (b) the facts that Universal refused to identify any changes to the Screenplay it requested or planned to make and refused to provide plaintiffs with the revised Screenplay itself, *id.* ¶¶ 10-11; and (c) the fact that Universal paid Berg over $1 million for the Screenplay, *id.* ¶¶ 7, 42, 53, and industry practice and common sense, which dictate that Universal would not have paid that amount for a screenplay whose characters, plot, key dialogue, themes, settings, etc., it intended to immediately jettison, *id.* ¶¶ 7, 11, 42-43, 53.

The Court must accept all of these allegations as true, and the reasonable inferences that flow from them.  *See Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 991.  Under *Iqbal* and *Twombly*, plaintiffs have sufficiently alleged that Universal authorized the creation of an infringing work in violation of 17 U.S.C. § 106(2).

Universal misapplies the relevant law in arguing that the Screenplay is not actionable because it is merely an intermediary work.  Mot. at 6-7.  So-called intermediary works are relevant and actionable when a plaintiff alleges the intermediary work infringes its copyrights: "[P]reliminary works created in production of [a] motion picture can constitute infringing copies within the meaning of the 1976 Copyright Act."  *Walt Disney Prods.*, 628 F. Supp. at 874; *see also Gilbert v. New Line Prods.*, 2010 WL 891333, at *1, 3 (C.D. Cal. Feb. 17, 2010) (permitting plaintiff to pursue claim that defendants' intermediary

13

screenplays infringed plaintiffs' screenplays); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1519 (9th Cir. 1992) ("intermediate copying … may infringe the exclusive rights granted to the copyright owner in section 106 … regardless of whether the end product of the copying also infringes those rights"). Universal's cases do not hold otherwise. Rather, they stand for a different proposition: that courts will generally not consider intermediary works as evidence that a *later* version of the work is infringing. *E.g. Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 433, 436-37 (S.D.N.Y. 1985) (plaintiff alleged only that final film infringed his written work).[7] The Ninth Circuit has rejected the same argument Universal makes here. *Sega*, 977 F.2d at 1518 (defendant "points to a number of cases that it argues establish the lawfulness of intermediate copying … [i]n each case … [the] lawsuit alleged infringement *only as to the final work of the defendants*"). In this lawsuit, plaintiffs alleged that the original Screenplay *and* the revised Screenplay infringe the Bond works. Compl. ¶¶ 1-5, 38, 40-50, 56-71, 75. Those allegations are sufficient to allow plaintiffs to rely on the original and revised Screenplays to show infringement. *See Walt Disney Prods.*, 628 F. Supp. at 874.[8]

### B.   Universal's "Defenses" To Plaintiffs' Direct Infringement Claims Are Without Merit.

*The Controversy Is "Ripe."*  Universal seeks to excuse its conduct by claiming that this lawsuit is premature. Here again, Universal is wrong on the law. For a dispute to be ripe, Article III requires only that: (1) the record be fit for review and (2) hardship would befall the parties in the absence of the Court's

---

[7] *See also Quirk v. Sony Pictures Entm't Inc.*, 2013 WL 1345075, at *3, *6 (N.D. Cal. Apr. 2, 2013) (same); *Hudson v. Universal Pictures Corp.*, 2004 WL 1205762, at *1, *3-4 (E.D.N.Y. Apr. 29, 2004) (same; court nevertheless considered intermediate drafts); *Chase-Riboud v. Dreamworks Inc.*, 987 F. Supp. 1222, 1224, 1231 (C.D. Cal. 1997) (same).

[8] *See also Walker v. Univ. Books*, 602 F.2d 859, 864 (9th Cir. 1979) ("the fact that an allegedly infringing copy of a protected work may itself be only an inchoate representation of some final product to be marketed commercially does not in itself negate the possibility of infringement").

consideration.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds*.  Those elements are met here.  First, the record is fit for review because the Court has before it the Bond works and the infringing Screenplay Universal bought (which Universal has already reproduced, distributed, and authorized revisions to).  In view of plaintiffs' allegations and Universal's judicially noticeable admissions discussed above, the Court may reasonably infer that a revised draft now exists on Berg's computer and/or in Universal's possession and can be obtained through discovery.  Second, hardship would befall *both* parties in the absence of court action because the value of plaintiffs' intellectual property will continue to be harmed by Universal's unlawful use, plaintiffs will continue to be unable to control their intellectual property, and Universal will continue to incur expenses developing a project to which it has no underlying rights.

An issue is generally unripe for review when it is merely "theoretical" or "abstract."  *Cal. State Water Res. Control Bd. v. F.E.R.C.*, 966 F.2d 1541, 1562 (9th Cir. 1992).  Given that Universal has already engaged in infringing conduct with the version of the Screenplay it purchased and with the revised version it subsequently had prepared, Compl. ¶¶ 7, 9, 40-55, 69, this dispute cannot be said to concern only theoretical, future conduct that may never occur.  Universal's cited cases are thus inapposite.  *See Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (breach-of-contract claim not ripe because defendant's performance was not yet due and, thus, breach might never occur); *Portland Police Ass'n v. Portland*, 658 F.2d 1272, 1274-75 (9th Cir. 1981) (claim not ripe where five contingencies needed to take place before alleged wrongful conduct could occur).[9]

---

[9] Universal cites two other cases for the proposition that "[i]n analogous cases seeking declaratory relief, courts have dismissed *copyright* claims as premature unless a party seeking relief can establish that the potentially infringing work 'presented to the court is the same product which will be produced if a declaration of noninfringement is obtained.'"  Mot. at 10.  In addition to being a misstatement of the law, as addressed above, plaintiffs misstate the holdings of these cases—both address *patent* claims, not copyright claims.  *See Sierra Applied Scis., Inc. v.*

Finally, Universal misstates the law when it argues that an infringement suit is ripe only when the "final" infringing work has been completed.  *See* Mot. at 9-10.  That argument is an extension of Universal's incorrect assertion that "intermediary works" cannot be actionable.  *See id.* at 6-7.  As noted above, that is contrary to the case law.  *See Walt Disney Prods.*, 628 F. Supp. at 874.  A copyright dispute is ripe where, as here, defendant engages in infringing activity.

***Universal's Self-Serving Promise That The Next Version Of The Screenplay Will Not Infringe Is Irrelevant.***  Universal's assertion that it does not intend to infringe plaintiffs' copyrights in the future is improper and irrelevant.  Infringement is a strict liability action.  *See Pye*, 574 F.2d at 481 ("even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable").  A defendant cannot excuse itself from a lawsuit by merely representing that it will cease violating the plaintiff's rights.

Moreover, Universal's assertions about its intentions, and about the extent to which the existing revised version of the Screenplay (which neither plaintiffs nor the Court has seen) infringes plaintiffs' copyrights, are contrary to the allegations of the complaint, Compl. ¶¶ 3-5, 10-11, 45-50, and are not supported by judicially noticeable documents or facts.  Thus, the Court cannot accept Universal's assertions on a motion to dismiss.  Instead, for purposes of this motion, the Court must accept plaintiffs' allegations that the revised Screenplay infringes plaintiffs' copyrights.  *See Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 991.  Plaintiffs may reasonably infer, based on industry custom and practice and their years of experience in the motion picture industry, that discovery will bear this out.  Without the copied *James Bond* material, including the characters, plot, dialogue, settings, mood, etc., the Screenplay would be eviscerated.  The complaint alleges that Universal was attracted to the material—and paid handsomely for it—because of its "Bond-like"

---

*Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379-80 (Fed. Cir. 2004); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216-17 (7th Cir. 1980).

elements.  Compl. ¶¶ 2-5, 40, 42, 53, 56-64.  Universal may dispute these facts, but it cannot do so at the pleading stage.[10]

## V.   PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE CLAIMS FOR INDIRECT INFRINGEMENT.

Plaintiffs' complaint alleges sufficient facts to state claims for contributory infringement, vicarious infringement, and inducement of infringement.  Universal attacks plaintiffs' indirect infringement claims on the grounds that they are pled on "information and belief" and that they are unfounded because Universal has claimed that a revised Screenplay does not yet exist and that it does not intend to infringe moving forward.  For the reasons noted above, those arguments lack merit and plaintiffs are entitled to all reasonable inferences in their favor.  *See*, *e.g.*, *Keegan*, 838 F. Supp. 2d at 961 n.85 (allegations based on "information and belief" are proper where information is in sole possession of defendant); *Dillon*, 2013 WL 3581938, at *5 (denying defendants' motion to dismiss copyright infringement claim based, in part, on "drawing all reasonable inferences in favor of Plaintiff").

### A.   The Complaint Pleads A Claim For Contributory Infringement.

To state a claim for contributory infringement, a plaintiff must allege that the defendant: (1) knew of direct infringing activity, and (2) "induce[d], cause[d] or materially contribute[d] to the infringing conduct of another."  *A&M Records*, 239 F.3d at 1019.

The complaint alleges each of those elements.  It alleges that the Screenplay is an unauthorized derivative work based on the Bond works and that Universal

---

[10] The Court should permit the case to proceed so plaintiffs can obtain the revised versions of the Screenplay and bring them before the Court in due course.  *See Kimbell v. Rock*, 2009 WL 3248208, at *4 (C.D. Cal. Oct. 8, 2009) (granting discovery to enable plaintiff to obtain allegedly infringing film to pursue relief); *Walt Disney Prods.*, 628 F. Supp. at 878 (denying defendants' motion for summary judgment where "any inadequacy in [plaintiff's] evidentiary showing [of substantial similarity] [wa]s largely the consequence of [defendant's] unwillingness to produce [allegedly infringing content] in discovery").

knew it, Compl. ¶¶ 2-5, 38, 40-41, 56-64, 75; that Universal nevertheless purchased the infringing Screenplay and hired Berg to revise it, *id.* ¶¶ 40, 42-43, 45-48, 53; Dkt. Nos. 15 at 2:7-10, 2:27-3:1, 15-1 ¶¶ 3, 7; and that Universal induced, caused, or materially contributed to Berg's unauthorized preparation, duplication, and distribution of the revised Screenplay by, *inter alia*, paying Berg for the Screenplay and hiring and directing him to revise it into its current, infringing form, *id.* ¶¶ 42-43, 45-48, 50, 76; *see* Dkt. Nos. 15 at 2:7-10, 15-1 ¶¶ 3, 7.  Where, as here, a party engages someone to create an infringing work, the hiring party has engaged in contributory infringement.  *See Smith v. Mikki More, LLC*, 2014 WL 1875929, *3-4 (S.D.N.Y. May 9, 2014) (denying motion to dismiss claim for contributory copyright infringement when plaintiff alleged defendant hired an artist to "re-create [plaintiffs'] works"); *LaTele Telv'n C.A. v. Telemundo Commc'ns Grp., LLC*, 2013 WL 1296314, at *10-11 (S.D. Fl. Mar. 27, 2013) (denying motion to dismiss contributory infringement claim when plaintiff alleged defendants "had knowledge of [other defendants'] infringement" by employing the infringing telenovela's screenwriter and "intentionally induced or materially contributed to the infringement by controlling the … creation and development of [the telenovela] and by approving its production and broadcast").

Universal's reliance on *Med-Systems* and *Luvdarts* to attack the adequacy of plaintiffs' contributory infringement claims is misplaced.  In *Med-Systems*, plaintiff's claim failed because he did not allege defendant contributed to the infringing conduct.  *Med-Systems, Inc. v. Masterson Mktg., Inc.*, 2011 WL 5873399, at *7 (S.D. Cal. Nov. 23, 2011).  Similarly, in *Luvdarts*, plaintiffs failed to allege facts showing defendants had knowledge of the allegedly infringing activity.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013).  As described above, plaintiffs' complaint contains neither of these defects and, to the contrary, alleges facts sufficient to support every element of a claim for contributory infringement.

**B.     The Complaint Pleads A Claim For Vicarious Infringement.**

To state a claim for vicarious infringement, a plaintiff must allege that the defendant: (1) received a direct financial benefit from the infringement, and (2) had the right and ability to supervise or control that infringement.  *See A&M Records*, 239 F.3d at 1023.  The complaint alleges facts sufficient to satisfy both elements.

First, the complaint alleges that Universal has enjoyed direct financial benefits from Berg's infringement.  A "direct financial benefit" exists when "there is a causal relationship between the infringing activity and *any* financial benefit a defendant reaps, regardless of how substantial the benefit."  *Marvel Enters., Inc. v. NCSoft Corp.*, 2005 WL 878090, at *4 (C.D. Cal. Mar. 9, 2005).  In this case, Universal reaped a financial benefit by: (1) receiving publicity of its acquisition of the Screenplay; (2) capitalizing on the publicity to hire a lead actor, a director, and a team of experienced producers; and (3) enhancing the value of its brand and, by extension, its future earning potential.  *Id.* ¶¶ 53, 83.  Universal will reap a further direct financial benefit if it produces and distributes the *Section 6* motion picture. *Id.*  This is enough to allege a direct financial benefit.  *See A&M Records*, 239 F.3d at 1023 (finding direct financial benefit when infringing material acted as a "draw" for customers, even when the customers did not pay directly for the infringing content or the service through which it was available and the defendant benefitted only by potentially augmented "future revenue" from "increases in user-base"); *Live Face on Web, LLC v. Howard Stern Prods.*, 2009 WL 723481, at *3-4 (E.D. Pa. Mar. 17, 2009) (holding complaint satisfied the direct financial benefit requirement because, in part, it alleged that unauthorized content on defendants' website "reinforc[ed] and advanc[ed] the brand and image of the Howard Stern Show and HSP's products and services"); 3 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 12.04[A][2] (Matthew Bender, Rev. Ed.) (case law indicates "a possible, indirect benefit" satisfies the direct financial benefit requirement).

The complaint also alleges that Universal has the right and ability to supervise or control the infringement because, as Universal has since admitted, Universal engaged Berg to revise the Screenplay at its direction.  Compl. ¶¶ 42-43, 45, 50, 54; Dkt. Nos. 15 at 2:27-3:1, 15-1 ¶¶ 3, 7.  Relatedly, plaintiffs allege that, through its contract with Berg, Universal has the right and ability to supervise or control the content of the Screenplay and the resulting infringement.  Compl. ¶¶ 45-46, 84.  This relationship between Universal and Berg is enough to satisfy the second element of a vicarious infringement claim.  *See A&M Records*, 239 F.3d at 1022 ("[v]icarious copyright liability is an 'outgrowth' of respondeat superior"); *Mikki More,* 2014 WL 1875929, at *3-4 (denying motion to dismiss claim for vicarious copyright infringement when plaintiff alleged defendant hired an artist to "re-create [plaintiffs'] works"); *Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 638 (8th Cir. 1996) (employer "had the right and ability to supervise" employees who infringed copyrights without employer's knowledge); *Brayton Purcell LLP v. Recordon & Recordon*, 2007 WL 420122, at *8-9 (N.D. Cal. Feb. 6, 2007) (the "arbitrator could reasonably have inferred that [defendant] had the right and ability to supervise [the direct infringer in a vicarious copyright infringement action] given that [defendant] was [the direct infringer's employer's] president … that [defendant] hired [the direct infringer], and that [defendant] fired [the direct infringer]"); *see also LaTele*, 2013 WL 1296314, at *10-11 (denying motion to dismiss vicarious infringement claim when plaintiff alleged one defendant "had the right or ability to supervise … because it ha[d] the final authority to green-light [the infringing telenovela] and approved the decision to create, develop and produce [it,] … [and] could have stopped or limited the infringement but failed to do so").

In addition, and contrary to Universal's assertion, Mot. at 15-16, the complaint does allege that Universal "declined to exercise" its right to stop Berg's infringement: The complaint alleges Universal "exercis[ed]" its "legal right and

1  ability to supervise and direct" Berg's revision of the Screenplay to create a new

2  unauthorized derivative work of the Bond works, Compl. ¶¶ 45-46.

3          **C.      The Complaint Pleads A Claim For Inducement Of Infringement.**

4          To state a claim for inducement of infringement, a plaintiff must allege the

5  defendant "actively and knowingly aid[ed] and abet[ted] another's direct

6  infringement." *Bangkok Broad. & T.V. Co. v. IPTV Corp*., 742 F. Supp. 2d 1101,

7  1118 (C.D. Cal. 2010). Universal misstates the law in arguing that inducement

8  requires plaintiff to allege "distribution of a device or product." *See* Mot. at 17.

9  "Inducement liability is not limited, either logically or as articulated in [*MGM*

10  *Studios Inc. v. Grokster, Ltd*., 545 U.S. 913 (2005)], to those who distribute a

11  'device.'" *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013).

12          Plaintiffs have adequately alleged that Universal induced Berg to infringe the

13  Bond works. The complaint alleges that Universal paid Berg for the infringing

14  Screenplay and hired him to write a revised version that also infringes plaintiffs'

15  copyrights. Compl. ¶¶ 42-43, 45-48, 50, 53, 91-92. This is all plaintiffs need to

16  allege to state a claim for inducement. *See Columbia Pictures*, 710 F.3d at 1033 (in

17  inducement claims, "copyright liability depends on one's purposeful involvement in

18  the process of reproducing copyrighted material").

19  **VI.    NO CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

20          To state a claim, plaintiffs must only "nudge[] their claim[] across the line

21  from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs have

22  surpassed that bar by alleging facts sufficient to show that Universal has directly

23  and indirectly infringed plaintiffs' copyrights in the Bond works.

24          Even if the Court were inclined to dismiss the complaint, in full or in part, it

25  should do so without prejudice to plaintiffs' right to amend. *See* Fed. R. Civ. P.

26  15(a)(2) ("court should freely give leave [to amend] when justice so requires");

27  *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.3 (9th Cir. 2011) ("[d]ismissal

28  without leave to amend is improper unless it is clear … that the complaint could not

be saved by any amendment"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("in a line of cases stretching back nearly 50 years, we have held that … a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts").  Here, plaintiffs should, at a minimum, be permitted to amend their complaint when Universal produces the revised Screenplay.  *See Florer v. Collins*, 2012 WL 367283, at *3 (W.D. Wash. Jan. 9, 2012) ("[a] case dismissed for lack of ripeness is generally dismissed without prejudice").

## VII.  CONCLUSION

As alleged in the complaint, Universal has independently infringed plaintiffs' exclusive rights under the Copyright Act.  It must be held to account for its prior and continuing conduct.  The notion that its presence in this lawsuit is "premature" is contrary to the allegations of the complaint, which are sufficient under the law to state ripe claims against Universal for direct and secondary copyright infringement.  For the reasons set forth above, the Court should deny Universal's motion.


Dated:  June 25, 2014                     Respectfully submitted,

                                          O'MELVENY & MYERS LLP

                                          QUINN EMANUEL URQUHART
                                             & SULLIVAN, LLP


                                          By:
                                             Robert M. Schwartz
                                          Attorneys for Plaintiffs

OPP. TO UNIVERSAL'S MOT. TO DISMISS