ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
CASSANDRA L. SETO (S.B. #246608)
cseto@omm.com
BRIAN J. FINKELSTEIN (S.B. #261000)
brianfinkelstein@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: (310) 553-6700

MARC A. BECKER (S.B. #138872)
marcbecker@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Attorneys for Plaintiffs
(Additional Counsel Listed on Signature Page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DANJAQ, LLC, a Delaware limited liability company; METRO-GOLDWYN-MAYER STUDIOS INC., a Delaware corporation; UNITED ARTISTS CORPORATION, a Delaware corporation; SEVENTEEN LEASING CORPORATION, a Delaware corporation; EIGHTEEN LEASING CORPORATION, a Delaware corporation; NINETEEN LEASING CORPORATION, a Delaware corporation; TWENTY LEASING CORPORATION, a Delaware corporation; and TWENTY-ONE LEASING COMPANY LLC, a Delaware limited liability company,

Plaintiffs,

v.

UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; and AARON BERG, an individual,

Defendants.

Case No. 2:14-CV-02527 SJO (Ex)

**JOINT REPORT OF EARLY MEETING OF COUNSEL [FED. R. CIV. PROC. 26]**

**Judge:** Hon. S. James Otero
**Magistrate:** Hon. Charles F. Eick

**Complaint:** April 3, 2014

Pursuant to the Federal Rules of Civil Procedure ("Rules"), the Local Rules for the Central District of California ("Local Rules"), and the Court's July 27, 2014 Initial Standing Order for Cases Assigned to Judge S. James Otero ("Standing Order"), the parties submit the following Joint Report of their Rule 26(f) Early Meeting of Counsel, held on July 29, 2014.

Attending the meeting were: (a) Robert M. Schwartz and Brian J. Finkelstein of O'Melveny & Myers LLP on behalf of plaintiffs Danjaq, LLC; Metro-Goldwyn-Mayer Studios, Inc.; United Artists Corp.; Seventeen Leasing Corp.; Eighteen Leasing Corp.; Nineteen Leasing Corp.; Twenty Leasing Corp.; and Twenty-One Leasing Company LLC (collectively, "Plaintiffs"); (b) David Aronoff of Lathrop & Gage LLP on behalf of defendant Aaron Berg ("Berg"); and (c) Aaron J. Moss and Daniel G. Stone of Greenberg Glusker Fields Claman & Machtinger LLP on behalf of defendants Universal City Studios LLC and NBCUniversal Media, LLC (collectively, "Universal"). On occasion, Berg and Universal are referred to jointly in this report as "Defendants."

## I. THE NATURE AND BASES OF THE PARTIES' CLAIMS AND DEFENSES

### A. Plaintiffs' Contentions

On April 3, 2014, Plaintiffs filed a complaint alleging that defendants Berg and Universal directly and indirectly infringed Plaintiffs' copyrights in the *James Bond* motion pictures, as well as Plaintiffs' exclusive right to develop, create, and/or produce motion pictures and television shows based on the *James Bond* novels and short stories. Plaintiffs allege, among other things, that:

1. In 2013, defendant Berg wrote a screenplay, titled *Section 6*, that infringes Plaintiffs' *James Bond* copyrights.
2. In October 2013, Universal purchased the screenplay from Berg and acquired the right to develop it into a motion picture (which Plaintiffs' contend Universal has acknowledged).

3. As part of the motion picture development process, Universal unlawfully duplicated copies of the infringing screenplay and distributed those copies to actors, directors, and producers.

4. Universal has engaged Berg to rewrite the screenplay based on Universal's instructions (which Plaintiffs' contend Universal has acknowledged).

5. This revised screenplay—as it currently exists—infringes Plaintiffs' *James Bond* copyrights.

Based on these facts, and other facts alleged in the complaint, Plaintiffs asserted claims for relief against Defendants for: (a) copyright infringement against Berg and Universal, (b) contributory copyright infringement against Universal, (c) vicarious copyright infringement against Universal, and (d) inducement of copyright infringement against Universal.

**B. Defendants' Contentions**

On May 27, 2014, Universal and Berg moved to dismiss the complaint. The parties have briefed the motions and the Court has taken them under submission. For the reasons set forth in Defendants' pending Motions to Dismiss, among others, Defendants contend that Plaintiffs' allegations of copyright infringement fail to state a viable claim for relief. Among other deficiencies, a review of the works at issue reveals that, as a matter of law, the characters, plots, sequences of events, settings, themes, mood, dialogue and pace of *Section 6* are not substantially similar in copyrightable expression to any of the James Bond movies, books or stories allegedly owned by Plaintiffs. Universal separately contends that it was not involved in creating Defendant Berg's screenplay *Section 6* (the "Original Berg Screenplay") and therefore cannot be held liable for any alleged infringement.

If the Court denies Defendants' pending Motions to Dismiss, Defendants will serve answers and assert their affirmative defenses at the appropriate time pursuant to Federal Rule of Civil Procedure 12(a)(4)(A). However, Defendants contend that

they cannot adequately defend against Plaintiffs' claims, and the Court cannot determine the appropriate scope of discovery, because although Universal purchased the Original Berg Screenplay, it is still early in the script development phase, Berg is presently working on a first rewrite of *Section 6* ("First Rewrite"), further rewrites are anticipated, Universal has not approved any screenplay in connection with *Section 6*, and Universal has not made any "greenlight" decision to proceed with production of a *Section 6* film – and any such decision would be months away (if ever).

Defendants are greatly concerned that Plaintiffs' claims are intended to chill the creative process and to insert Plaintiffs - direct competitors of Universal - into Universal's highly confidential development of a potential feature film based on *Section 6*. That movie, if it is ever produced, will differ substantially from the Original Berg Screenplay that Universal purchased.

## II. PRESERVING DISCOVERABLE INFORMATION

Pursuant to Rule 26(f)(2), the parties discussed their obligations to preserve discoverable information. At this time, the parties do not anticipate any issues regarding the preservation of discoverable information.

## III. PROPOSED DISCOVERY PLAN

Pursuant to Rules 26(f)(2) and 26(f)(3), Local Rule 26-1(f), and Standing Order ¶ 17, the parties discussed a potential discovery plan.

### A. What Changes Should Be Made In The Timing, Form, Or Requirement For Disclosures Under Rule 26(a), Including A Statement Of When Initial Disclosures Were Made Or Will Be Made

***Initial Disclosures***. Pursuant to Rule 26(a)(1)(c), Plaintiffs will make their initial disclosures by August 12, 2014. Defendants propose that Initial Disclosures should be exchanged, if necessary, 14 days after the Court rules on Defendants' pending Motions to Dismiss. Plaintiffs take no position on Defendants' proposal.

***Initial Expert Disclosures***. Plaintiffs proposed changing the time for initial expert disclosures from the default 90 days before trial under Rule 26(a)(2)(D)(i) to 180 days before trial in order to allow the parties more time to engage in expert discovery before the discovery cutoff. Defendants did not agree to this proposal.

***Proceeding With Discovery***. Defendants proposed that the parties stay all discovery pending a ruling on Defendants' Motions to Dismiss. Plaintiffs did not agree to this proposal.

**B. Subjects On Which Discovery May Be Needed, When Discovery Should Be Completed, And Whether Discovery Should Be Conducted In Phases Or Be Limited To Or Focused On Particular Issues**

**1. Plaintiffs' Proposed Discovery Subjects And Timing**

***Plaintiffs' Response to Defendants' Position on Discovery Scope and Timing***. This is a straightforward copyright case. As reflected in Defendants' statement below, however, Defendants propose that the Court stay all discovery and substantially narrow the scope of information Plaintiffs can gather to support their claims. Defendants cannot at the same time contend that their revisions to the *Section 6* screenplay are and will be non-infringing, and propose that the Court bar all discovery into that very question. Plaintiffs believe that discovery should proceed in accordance with the Federal Rules of Civil Procedure and this Court's rules. The discovery stay Defendants intend to seek will needlessly delay the litigation and increase its cost. And narrowing the scope of discovery to what Defendants deem appropriate will impinge Plaintiffs' right to develop the facts necessary to prove their claims.

Regardless, these are issues Defendants should raise by way of a noticed motion and not in the Joint Report of Early Meeting.

***Plaintiffs' Anticipated Discovery Subjects***. Plaintiffs currently anticipate needing discovery on the following subjects:

1. Universal's development, production, and release schedule for *Section 6*, as well as the schedule of any other activities related to *Section 6*;
2. all drafts and other versions of the screenplay;
3. all information and documents that refer or relate to *Section 6*;
4. all information and documents that refer to *James Bond* or elements of the *James Bond* works;
5. the identities of relevant witnesses and their relationship to or actions or communications related to *Section 6*;
6. Defendants' access to the *James Bond* works;
7. Defendants' actions or communications related to the *James Bond* works;
8. Defendants' current and past relationships with each other;
9. this litigation;
10. document preservation; and
11. damages.

**2. Defendants' Proposed Discovery Subjects And Timing**

Defendants propose that, if the Court denies the pending Motions to Dismiss in their entirety, Plaintiffs should be permitted to conduct discovery solely concerning the Original Berg Screenplay and Universal's transactions in connection with that screenplay, subject to a stipulated protective order. Defendants further propose that the Court should stay all discovery concerning Defendants' subsequent rewrites, revisions and efforts to develop a script or film based on the Original Berg Screenplay pending (a) a scheduled conference with the Court at which the propriety and scope of such discovery is discussed, and/or (b) resolution of Defendants' prospective Motion for a Protective Order or, Alternatively, to Stay Discovery (*see* Section III.D., *infra*).

Defendants currently anticipate requiring discovery on the following subjects:

1. copyright formalities—including copyright ownership, registrations, and transfers—of the *James Bond* copyrights;
2. deposit copies of the *James Bond* copyrights and copies of each of the *James Bond* works at issue;
3. the relationship between the Plaintiffs;
4. identification of each work that is allegedly infringed, the elements that were allegedly infringed, and the elements in the screenplay that allegedly infringe them;
5. damages;
6. the development of the *James Bond* works, including their historical or factual bases;
7. clarification of the role the *James Bond* books play with respect to Plaintiffs' allegations;
8. Plaintiffs' communications involving Berg or the screenplay; and
9. when and how Plaintiffs became aware of the screenplay and obtained a copy of it.

**3. Additional Discovery Positions**

Each party reserves its right to seek discovery on additional subjects.

The parties will continue to meet and confer regarding any other potential phasing of discovery. Plaintiffs do not see any need for such additional phasing of discovery at this time.

**C. Disclosure Or Discovery Of Electronically Stored Information, Including The Form Or Forms In Which It Should Be Produced**

The parties will, as appropriate, produce responsive and relevant electronically stored information in TIFF or a similar format (except where metadata, legibility, or ease of review would be disturbed, in which case the parties

will produce documents in native format) and will provide appropriate metadata. The parties will meet and confer to establish specific file format and metadata standards for producing electronically stored information, and to discuss under what circumstances electronically stored information should be searched or produced, the parameters of any such searches, and related issues.

**D. <u>Any Issues About Claims Of Privilege Or Of Protection As Trial-Preparation Materials, Including—If The Parties Agree On A Procedure To Assert These Claims After Production—Whether To Ask The Court To Include Their Agreement In An Order</u>**

**1. <u>Protective Order</u>**.

The parties will attempt to negotiate a standard protective order that complies with all the applicable Rules, Local Rules, and Standing Order provisions, and that establishes procedures for asserting and challenging privilege, as well as procedures to address the inadvertent disclosure of privileged information.

Plaintiffs have agreed to prepare the first draft of the protective order. If the parties can agree to its language, they will submit it to the Court for review. If the parties cannot reach agreement, they reserve the right to seek appropriate relief from the Court.

**2. <u>Defendants' Additional Confidentiality Concerns</u>**.

***Plaintiffs' Statement.*** As reflected below, defendants claim that the First Amendment accords them an immunity from discovery into their ongoing development of the *Section 6* project, including their revisions to the infringing screenplay that Berg wrote and Universal purchased in October 2013. Plaintiffs dispute this and note that the case cited by defendants merely states a rule in <u>defamation</u> cases (*i.e.*, that pre-publication court screening to determine the accuracy of a purportedly non-fiction motion picture about news events would invade the First Amendment protection for news gathering). *See Goldblum v. Nat'l Broad. Corp.*, 584 F.2d 904, 906-907 (9th Cir. 1978). Defendants erroneously

contend that First Amendment considerations applicable to common law tort claims also apply to copyright cases. Denying discovery into ongoing acts of infringement on such grounds would upend established principles of copyright law. Regardless, Plaintiffs do not believe that defendants should have briefed the issue in a Joint Report of Early Meeting, and believe that the matter should be deferred and be resolved, if necessary, based on the discovery requests Plaintiffs actually serve.

Defendants also assert below that their trade secret interests cannot be adequately protected by a protective order. Plaintiffs disagree. Discovery occurs every day in disputes between competitors. The protective order can be tailored to ensure that such interests, if *bona fide*, are protected. Beyond that, Plaintiffs object to defendants' attempt to "pre-brief" this and other issues in this filing.

***Defendants' Statement.*** Defendants contend that in addition to potential assertions of the attorney-client privilege and attorney work product doctrine, among other privileges, their internal materials concerning the development of a film based on *Section 6* are highly confidential and proprietary trade secrets that would be valuable to competitors such as Plaintiffs. Allowing a rival studio to gain access to its competitor's creative process poses a significant industry-wide problem, and has the potential to chill the free speech of an industry premised on the exercise of First Amendment rights. Indeed, the Ninth Circuit has ruled that pre-publication discovery into a motion picture – even if conducted *in camera* – constitutes an impermissible prior restraint on free speech. *Goldblum v. National Broadcasting Corp.*, 584 F.2d 904 (9th Cir. 1978). For example, the writers, producers and executives involved in the development of *Section 6* may be reluctant to put their thoughts or comments in writing for fear that their documents will be discoverable by a rival studio that is developing its own spy genre films. The settings, action-sequences, plot twists and other expressive elements of *Section 6* are highly confidential and valuable – including to Plaintiffs, which are currently producing the next installment of the James Bond franchise.

Additionally, certain ideas may be premised on or reflect internal Universal data or research concerning audience preferences, or may reflect Universal's strategic initiatives. Accordingly, Defendants may file a Motion for a Protective Order or, Alternatively, to Stay Discovery based on trade secrets and/or on First Amendment grounds.

Although the parties will attempt to negotiate a standard confidentiality order that complies with all the applicable Rules, Local Rules, and Standing Order provisions, and that establishes procedures for asserting and challenging privilege, as well as procedures to address the inadvertent disclosure of privileged information, Defendants believe that such a confidentiality order will not be sufficient to rectify the trade secret and First Amendment concerns discussed above. In the *Goldblum* case, for example, even *in camera* inspection by the court of the film at issue was held improper. Nonetheless, Defendants believe that a confidentiality order is appropriate and necessary with regard to the discovery that they intend to propound to Plaintiffs and the discovery that Plaintiffs should be allowed to conduct concerning the Original Berg Screenplay and Universal's transactions in connection with that screenplay.

**E. <u>What Changes Should Be Made In The Limitations On Discovery Imposed Under These Rules Or By Local Rule, And What Other Limitations Should Be Imposed</u>**

The parties do not request at this time that the Court make any additional changes to the Rules or the Local Rules governing discovery.

Defendants may file a Motion for a Protective Order or, Alternatively, to Stay Discovery, which is referenced in Sections III.B. and III.D., *supra*.

**F. <u>Other Orders That The Court Should Issue Under Rule 26(C) Or Under Rule 16(B) And (C)</u>**

As noted herein, the parties will attempt to negotiate a proposed stipulated protective order pursuant to Rule 26(c).

As discussed below, Defendants contend that it is premature to set discovery cutoffs, motion cutoffs, or a trial date given that *Section 6* is still in the process of being rewritten and revised.

## IV. THE COMPLEXITY OF THE CASE, AND WHETHER ALL OR PART OF THE PROCEDURES OF THE MANUAL FOR COMPLEX LITIGATION SHOULD BE UTILIZED

The parties agree that the procedures set forth in the Manual for Complex Litigation do not apply to this case.

## V. THE DISPOSITIVE OR PARTIALLY DISPOSITIVE MOTIONS WHICH ARE LIKELY TO BE MADE, AND A CUT-OFF DATE BY WHICH ALL SUCH MOTIONS SHALL BE MADE

Motions to Dismiss: Defendants filed motions to dismiss on May 27, 2014. Those motions are pending.

Motion for Preliminary Injunction: Plaintiffs may file a motion for a preliminary injunction to prevent the development and production of a motion picture based on the screenplay.

Motions for Summary Judgment: If necessary, Defendants anticipate filing motions for summary judgment.

***Plaintiffs' Position Regarding A Summary Judgment Filing Cut-off***. Plaintiffs proposed a summary judgment motion filing cut-off date of February 27, 2015 (nearly 11 months after Plaintiffs filed their complaint). Delaying the summary judgment filing cut-off until after the close of all fact and expert discovery, as defendants propose below, would delay trial, potentially for years, given defendants' position that no discovery should even *begin* until after Universal unilaterally decides that it has finished however many "Rewrites" of the *Section 6* screenplay it intends to complete.

Plaintiffs' proposed February 27, 2015 filing cut-off date gives defendants sufficient time to take discovery in support of their motions for summary judgment,

and to draft those motions. This is especially true in a copyright infringement case like this one, since defendants have asserted many of their summary judgment arguments in their motions to dismiss.

Plaintiffs propose that the parties continue to meet and confer to establish a summary judgment briefing schedule and hearing date, after the proposed February 27, 2015 filing cutoff, to permit both sides adequate time to analyze and respond to any evidence introduced in support of, or in opposition to, such summary judgment motions.

***Defendants' Position Regarding A Summary Judgment Filing Cut-off***. As discussed below, Defendants contend that it is premature to set discovery cutoffs, motion cutoffs, or a trial date given that *Section 6* is still early in the script development phase, Berg is presently working on a First Rewrite, and further rewrites are anticipated. If necessary, Defendants intend to file Motions for Summary Judgment and/or Partial Summary Judgment at the appropriate time. Plaintiffs proposed filing cut-off date of February 27, 2015 for motions for summary judgment would give Plaintiffs fully four months' notice of any MSJ motion set for hearing on June 29, 2015 (the last day for hearing motions proposed by Plaintiffs). Defendants believe that the parties should have the opportunity to prepare and file dispositive motions at least after all fact and expert discovery has been completed and Universal has approved a rewritten *Section 6* screenplay (if ever). Moreover, although Defendants are cognizant that the Court requires summary judgment motions to be set for hearing with more than minimum notice, Plaintiffs' position that they need four months' notice is excessive. An extra week of notice – *i.e.*, 35 days rather than 28 days – should be sufficient.

## VI. SETTLEMENT EFFORTS TO DATE AND PLANS FOR MAXIMIZING SETTLEMENT PROSPECTS

The parties have discussed settlement as required by Rule 26(f) and Standing Order ¶ 17(d). The parties have been unable to agree to a resolution of the dispute. The parties are willing to revisit the possibility of settlement at a later time.

## VII. SELECTION OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Pursuant to Local Rules 26-1(c) and 16-15.4, the parties select alternative dispute resolution procedure number 3 ("[t]he parties shall participate in a private dispute resolution proceeding"). The parties will meet and confer regarding the selection of a mutually agreeable private mediator and the timing for such a mediation.

## VIII. PRELIMINARY ESTIMATE OF THE TIME REQUIRED FOR TRIAL

Plaintiffs currently estimate a jury trial will last approximately ten trial days.

Defendants contend that given the number of allegedly infringed works at issue, including 23 feature films and 19 books, trial will take at least 20 days.

## IX. PROPOSED CASE SCHEDULE

Pursuant to Local Rule 26-1(f) and Standing Order ¶ 17(a), the parties discussed a proposed case schedule.

### A. Plaintiffs' Proposed Case Schedule

| Event | Date |
|---|---|
| Deadline to Serve Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) | Tuesday, August 12, 2014 |
| Deadline to Serve Expert Witness Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) | Wednesday, February 4, 2015 |
| Motion for Summary Judgment Filing Deadline | Friday, February 27, 2015 |

| **Event** | **Date** |
|---|---|
| Discovery Cut-off | Friday, June 5, 2015 |
| Motion Hearing Cut-off | Monday, June 29, 2015 |
| Final Pre-Trial Conference | Monday, July 27, 2015 |
| Trial Date | Monday, August 3, 2015 |

This is a straightforward copyright infringement case. Given Plaintiffs' development of the next *James Bond* motion picture—scheduled for release in late 2015—and Universal's simultaneous development of the *Section 6* motion picture, the parties have a strong interest in resolving this dispute expeditiously. Plaintiffs' proposed case schedule accomplishes that and leaves sufficient time for the parties to obtain discovery relevant to potential motions for summary judgment before the filing cut-off, and adequate time to complete any other fact or expert discovery before trial.

Defendants raised concerns about Plaintiffs' proposed discovery cut-off date because the next *James Bond* motion picture will be in production during the last two months of the proposed discovery period, and the two principals of Plaintiff Danjaq will be closely involved in that work and likely unavailable for deposition. Plaintiffs' proposed schedule, however, affords Defendants more than sufficient time between now and the commencement of production to depose those witnesses, assuming Defendants need to do so. Defendants have no need to wait until the last two months of a nearly one-year discovery period to depose those two witnesses.

**B. <u>Defendants' Proposed Case Schedule</u>**

Defendants contend that it is premature to set discovery cutoffs, motion cutoffs, or a trial date given that *Section 6* is still early in the script development phase, Berg is presently working on a First Rewrite, further rewrites are anticipated,

Universal has not approved any screenplay in connection with *Section 6*, and Universal has not made any "greenlight" decision to proceed with production of a *Section 6* film – and any such decision would be months away (if ever). Indeed, it is apparent from the proposed deadlines selected by Plaintiffs that they hope to use the threat of burdensome discovery and rushed deadlines in order to pressure Defendants into simply abandoning *Section 6*. No film based on *Section 6* will have been produced, let alone released, by the time of Plaintiffs' proposed trial date. Moreover, insofar as the First Rewrite remains in process, further rewrites are likely, no *Section 6* screenplay has been approved by Universal, and no "green light" decision has been made, it is difficult to see why Plaintiffs need to complete discovery so quickly – other than to chill Defendants' First Amendment rights and discourage further development of *Section 6*.

To the extent the Court chooses to set any such deadlines, Plaintiffs' proposed dates are highly problematic. Plaintiffs propose an August 4, 2015 trial date, with initial expert reports due 180 days before trial, on February 5, 2015. At the same time, Plaintiffs propose an arbitrary deadline to file motions for summary judgment or adjudication of February 27, 2015. Defendants believe that this proposed schedule is unfair and unworkable. For example, expert reports would be due four months before fact discovery closes – which would greatly hinder the ability of the experts to consider the full factual record in their opinions. Additionally, the arbitrary February 27, 2015 deadline for filing summary judgment motions would precede Plaintiffs' proposed deadline for rebuttal expert reports (March 9), and all of these deadlines would be months before Plaintiffs' proposed June 5, 2014 fact discovery cutoff. Defendants are cognizant of this Court's requirement that extra notice, beyond the 28-day minimum, should be given for summary judgment motions; but Plaintiffs' desire for Defendants to file summary judgment motions four months before the hearing cutoff is unfair and unnecessary. An extra week of notice – *i.e.*, 35-days rather than 28-days – should be sufficient.

Plaintiffs' proposed schedule is untenable, and Plaintiffs' motivations for proposing such a schedule are questionable.

Plaintiffs' proposed fact discovery cutoff of June 5, 2015 is also highly problematic. During the Rule 26(f) conference, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs' key witnesses will likely be out of the country and unavailable between April and June 2015, the dates for principal photography of the next James Bond film, which will be shot abroad. Again, it is unclear why Plaintiffs propose a discovery cutoff for a time period when Plaintiffs' key witnesses will be unavailable.

If the court chooses to set any dates, it should set a fact discovery cutoff followed by a period for expert disclosures and discovery, with an adequate period thereafter for the parties to prepare and file, and the Court to hear and rule on, dispositive motions. After that ruling, the parties should have adequate time to prepare for a pre-trial conference and trial.

## X. SEVERANCE, BIFURCATION, OR OTHER ORDERING OF PROOF

The parties do not believe at this time that severance, bifurcation, or other ordering of proof is necessary or preferable.

## XI. LIKELIHOOD OF APPEARANCE OF ADDITIONAL PARTIES

At this time, the parties are not aware of any additional parties.

Plaintiffs may learn of additional parties who directly or indirectly infringed the *James Bond* copyrights in connection with the screenplay. If so, Plaintiffs may add these parties as defendants.

## XII. UNUSUAL LEGAL ISSUES PRESENTED BY THE CASE

### A. Plaintiffs' Position

Plaintiffs disagree with defendants' assertion below that the case presents any unusual legal issues. The mere number of Plaintiffs' works at issue does not create an unusual *legal* issue. It is only because defendants misappropriated elements from so many of Plaintiffs' *James Bond* works that Plaintiffs identified multiple

works in the complaint. Judge David Kenyon of this Court saw no unusual legal issues raised by the same circumstances presented in *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Company, Inc.*, 900 F. Supp. 1287, 1290-91, 1295-99 (C.D. Cal. 1995), in which he granted Plaintiffs' motion for a preliminary injunction, finding they would likely succeed on their claim that defendants had infringed Plaintiffs' copyrights on multiple *James Bond* works, and the James Bond character itself, by creating a single infringing work. This case is no different.

**B. <u>Defendants' Position</u>**

Defendants disagree. Plaintiffs allege that any script or film based on *Section 6* will infringe 23 James Bond movies, 19 James Bond novels and stories, and the character James Bond itself. A typical copyright infringement case compares two works, an alleged infringed work and an alleged infringing work. Defendants are highly concerned that by asserting so many allegedly infringed works, Plaintiffs are establishing a moving target. For example, Plaintiffs contend that they can pick and choose a host of different elements from various James Bond works, e.g., various 10 second portions of the 23 James Bond films, to assert at different stages of litigation to support their infringement claims. Allowing Plaintiffs to assert infringement based on such a moving target absent adequate notice to Defendants would frustrate Defendants' discovery efforts and prevent Defendants from adequately preparing their defenses for dispositive motions and trial. Defendants intend to seek the Court's and/or Magistrate's guidance on this topic.

Respectfully submitted,

Dated: August 8, 2014

O'MELVENY & MYERS LLP

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Robert M. Schwartz*
Robert M. Schwartz
Attorneys for Plaintiffs

Dated: August 8, 2014

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: */s/ Aaron J. Moss*
Aaron J. Moss
Attorneys for Defendants Universal City Studios LLC and NBCUniversal Media, LLC

Dated: August 8, 2014

LATHROP & GAGE LLP

By: */s/ David Aronoff*
David Aronoff
Attorneys for Defendant Aaron Berg

Additional Counsel:

DAVID ARONOFF (SBN 125694)
daronoff@lathropgage.com
AMBER HENRY (SBN 247624)
ahenry@lathropgage.com
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601

Attorneys for Defendant
AARON BERG

BERTRAM FIELDS (SBN 024199)
BFields@ggfirm.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN &MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: (310) 553-3610
Facsimile: (310) 553-0687

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC
and NBCUNIVERSAL MEDIA, LLC

**ATTESTATION**

I hereby attest that the other signatories listed, on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 8, 2014

O'MELVENY & MYERS LLP

By: */s/ Robert M. Schwartz*
Robert M. Schwartz
Attorneys for Plaintiffs