UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** CV 14-02527 SJO (Ex)      **DATE:** October 2, 2014

**TITLE:** *Danjaq, LLC, et al. v. Universal City Studios, LLC, et al.*

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                       Not Present
Courtroom Clerk                                 Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                           Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT** [Docket Nos. 24, 36]

This matter is before the Court on Defendants Universal City Studios LLC, NBCUniversal Media, LLC (collectively "Universal") and Aaron Berg's ("Berg") Motion to Dismiss the Complaint ("Motion"), filed June 30, 2014.[1] Plaintiffs Danjaq, LLC ("Danjaq"), Metro-Goldwyn-Mayor Studios, Inc. ("MGM Studios"), United Artists Corporation, Seventeen Leasing Corporation, Eighteen Leasing Corporation, Nineteen Leasing Corporation, Twenty Leasing Corporation, and Twenty-One Leasing Company LLC (collectively "Plaintiffs") filed an Opposition ("Opposition"), to which Universal and Berg replied ("Reply") on July 28, 2014. For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

I.      Factual and Procedural Background

Plaintiffs allege the following facts. Plaintiffs Danjaq and MGM Studios have developed and produced twenty-three *James Bond* movies, enjoying great success. (Compl. ¶ 14, ECF No. 1.) Plaintiffs own registered United States copyrights in the *James Bond* motion pictures, and co-own the copyright to the James Bond character. (Compl. ¶¶ 14, 27.)

Defendant Berg is the author of a screenplay titled *Section 6*. (Compl. ¶ 3.) Defendant Universal is a major motion picture studio that purchased the motion picture development rights to *Section 6* and is in the process of developing the *Section 6* project. (Compl. ¶¶ 22, 42.)

James Bond is a recognizable character defined by certain traits. He is a British intelligence agent employed by "His Majesty's Secret Service," with a "007" agent number and a "license to kill." (Compl. ¶ 4.) He introduces himself as "Bond. James Bond." (Compl. ¶ 4.) He is ▮▮▮▮▮▮

---

[1] The case was initially assigned to the Honorable Dean D. Pregerson and was transferred to this Court on July 17, 2014. (ECF No. 55).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-02527 SJO (Ex)      DATE: October 2, 2014

██████████████████████████████████████████████████ (Compl. ¶ 4.)

In 2013, Defendant Aaron Berg wrote a screenplay titled *Section 6*. (Compl. ¶ 36.) Berg made copies of the screenplay and distributed it to several motion picture studios, offering for sale. (Compl. ¶ 39.) Defendant Universal acquired the motion picture production rights to the screenplay and agreed to pay Berg substantial compensation of up to $2 million. (Compl. ¶ 42.) Universal is said to have hired writers, directors, actors and producers for the production of *Section 6*. (Compl. ¶¶ 46, 51.)

In a typical *James Bond* movie, James Bond acts as a "singular hero," uses "his wits and physical skills," to fight a villain in a "personalized conflict" with "high stakes of global significance in the balance." (Compl. ¶ 62.) The movie ends ██████████████████████ (Compl. ¶ 60.)

The *James Bond* movies also feature several notable supporting characters: "M," the head of the British Intelligence; "Moneypenny," a smart and sexy secretary; a villain, who is a "diabolical madman" seeking regional or world domination; a henchman, who is the villain's "partner in crime" and enjoys torture and murder; "Q," the quartermaster who supplies Bond with technologically advanced gadgets; and beautiful female characters attracted to James Bond, collectively known as the "Bond Girls." (Compl. ¶¶ 4, 58.)

Set in 1918, *Section 6* features a British spy Alec Duncan. ████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

The screenplay incorporates dialogue similar to the dialogue in several *James Bond* movies. (Compl. ¶ 61.) Both Alec Duncan and James Bond introduce themselves in the same way: "Duncan. Alec Duncan." and "Bond. James Bond." (Compl. ¶ 61.) Both characters ████████
████████████ (Compl. ¶ 61.) Both characters ████████████████
████████ (Compl. ¶ 61.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-02527 SJO (Ex)      DATE: October 2, 2014

███████████████████ (Compl. ¶ 61.) ███████████
█████████████████████████████ Compl. ¶ 61.) Lastly,
█████████████████████████████. (Compl. ¶ 61.)

After Plaintiffs learned about the *Section 6* screenplay and Universal's recent purchase of the rights to the screenplay, Plaintiffs sent a letter to Universal, "in nearly twenty pages of detail," pointing out many ways in which the screenplay may infringe Plaintiffs' copyrights in the *James Bond* works, and demanding Universal to cease the production of *Section 6*. (Compl. ¶ 7.)

On March 26, 2014, after Plaintiffs learned that Universal was proceeding with the development of *Section 6*, they requested Universal to send them the latest version of the script. (Compl. ¶ 10.) Universal refused, claiming that the project was still in early development. (Compl. ¶ 10.) Three days later, Plaintiffs filed the Complaint, asserting copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement. (*See generally* Compl.) On June 30, 2014, Defendants filed the instant Motion.

II.   **DISCUSSION**

   A.   **Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 325 (9th Cir. 2000). The court need not assume the truth of legal conclusions just because they are presented as factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

   B.   **Copyright Infringement Claims Against Berg**

To prevail on a copyright infringement action, a plaintiff must establish: (1) that he owns a copyright; (2) that defendant had access to his work; and (3) that there are substantial similarities between his work and the work of the allegedly-infringing material. *Berkic v. Crichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985). Defendants' Motion challenges the third prong of this test - whether the allegedly-infringing material contains substantial similarities to Plaintiffs' screenplays for *James Bond* movies. (*See generally* Mot.) Because each of the three elements of copyright infringement must be established in order to prevail, the inability to establish any one element can be fatal. *See, e.g., Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1081 (9th Cir. 2006) ("No amount of proof of access will suffice to show copying if there are no similarities." (citation omitted)).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-02527 SJO (Ex)</u>          DATE: <u>October 2, 2014</u>

In *Gilbert v. New Line Prods., Inc.*, No. CV 09-02231, 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009), Judge Klausner explained the substantial similarities test:

> The substantial similarity test comprises extrinsic and intrinsic components. [*Funky Films, Inc.*, 462 F.3d] at 1077. The extrinsic analysis is objective and based on "specific criteria which can be listed and analyzed." *Id.* (citation omitted). For example, for the extrinsic similarity analysis, the court may compare the two works for similarities in "the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Id.* (citation omitted). The plaintiff may also satisfy the extrinsic test by showing that "so many generic similarities" between the two works appear in a "particular sequence" in both works. *Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002). But similarities between general ideas of the two works do not give rise to copyright infringement by themselves. *Funky Films*, 462 F.3d at 1078-79. Copyright law only protects "the specific details of an author's rendering of ideas." *Id.* at 1077. For the extrinsic similarity test, therefore, the Court need not take into account "scenes a faire," or concepts that "flow naturally from generic polit-lines." *Id.*
>
> The intrinsic component is subjective and "is exclusively the province of the jury." *Id.* Nevertheless, because the plaintiff needs to satisfy both the extrinsic and intrinsic components of the substantial similarity test to establish infringement, a finding of lack of extrinsic similarity is fatal to the plaintiff's copyright case as a matter of law. *Id.*
>
> Although the substantial similarity test is often decided on summary judgment or at trial, "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130 (C.D. Cal. 2007) ("The Court may assess copyright infringement as a matter of law on the [ ] motion to dismiss.").

The Court may only find that two works are not substantially similar as a matter of law if the Court concludes that "no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the works." *Zella v. E.W. Scripps Co.*, 529 F. Supp.2d 1124, 1131 (C.D. Cal. 2007) (citing *Boyle v. Stephens, Inc.*, No. 97 Civ. 1361 (SAS), 1998 WL 80175, at *4 (S.D.N.Y. Feb. 25, 1998); *see also Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (upholding district court's dismissal of a claim for copyright infringement on a motion to dismiss).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-02527 SJO (Ex)          DATE: October 2, 2014

1. <u>Characters</u>

Plaintiffs allege that the character elements in *Section 6* are similar to the copyright-protectable character elements in *James Bond* movies. The major characters, James Bond and Alec Duncan, ███████ (Compl. ¶ 58.) ███████ (Compl. ¶ 58.) ███████ Compl. ¶ 58.) Besides the main character, Plaintiffs allege that the supporting characters in *Section 6* also substantially resemble the supporting characters in *James Bond* films ███████ (Compl. ¶ 58.)

Berg points out many differences between characters in *Section 6* and the corresponding characters in *James Bond* films. For instance, ███████ (Berg Mot. 17.) ███████ (Berg Mot. 18.) ███████ (Berg Mot. 18-19.) ███████ (Berg Mot. 18-19.) (Berg Mot. 19.)

2. <u>Theme, Plot and Sequence</u>

Plaintiffs allege that both movies share a theme: ███████ Compl. ¶ 4.) Specifically, in *Section 6*, ███████ (Compl. ¶ 4.) ███████ (Compl. ¶ 4.) ███████ (Compl. ¶ 4.) ███████ (Compl. ¶ 4.) Plaintiffs also contend that there are many similarities in plots and sequences between *Section 6* and various individual *James Bond* films. (Compl. ¶ 4.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-02527 SJO (Ex)     DATE: October 2, 2014

Berg claims that the similarities are "random isolated incidents." (Berg Mot. 20.) Berg argues that although certain elements are present in both works, those elements are expressed in different ways: for example, although both a *James Bond* film and *Section 6* █████████████████████████████████████████████████████████████████████████████████ (Berg Mot. 22.) Berg also claims that ████████████████████████████████████████ (Berg Mot. 22.) Also, ██████████████ (Berg Mot. 22.) Berg also claims that ███████████ (Berg Mot. 22.) Also, unlike *Bond* films, ██████████████████████████████████████ (Berg Mot. 24.)

    3.    <u>Dialogue</u>

Plaintiffs alleges that the dialogue in *Section 6* is substantially similar to the dialogue in the *Bond* films. Both protagonists introduce themselves in the same fashion: "Bond. James Bond" and "Duncan. Alec Duncan." (Compl. ¶ 61.) ████████████ (Compl. ¶ 61.) ████████████████████ (Compl. ¶ 61.) Both works have moments ██████████████████ Compl. ¶ 61.) ██████████ (Compl. ¶ 61.) ████████████████████ (Compl. ¶ 61.)

On the other hand, Berg argues that all the similarities are non-protectable brief phrases, stock elements and scènes-à-faire in the spy-action film genre. (Berg Mot. 24-25.) Berg also argues that even if those phrases are somehow protectable, the references to those phrases in *Section 6* are *de minimis* and constitute fair use, because the use is not substantial. (Berg Mot. 13-14.)

    4.    <u>Analysis</u>

The similarities are sufficient to give rise to a claim for copyright infringement. This is not the first time that the Court discusses copyright issues related to James Bond movies. In *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*, 900 F. Supp. 1287, 1293-97 (C.D. Cal. 1995), the Court ruled that both *James Bond* movie scenes and the James Bond character were copyrightable because the films were "unique in their expression of the spy thriller idea," and although James Bond had been portrayed by different actors in different movies, his "specific qualities remain constant." *Honda*, 900 F. Supp. at 1294, 1296.

In *Honda*, the parties summarized the "classic James Bond adventure" as "a high-thrill chase of the ultra-cool British charmer and his beautiful and alarming sidekick by a grotesque villain in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 14-02527 SJO (Ex)                    DATE: October 2, 2014

which the hero escapes through wit aided by high-tech gadgetry." *Id.* at 1294. Plaintiff, in a motion for preliminary injunction, was able to establish substantial similarity between Bond movies and a sixty-second commercial that featured an attractive couple defeating a grotesque villain in a high-speed car chase using a detachable roof on their car. *Id.* at 1291. The Court compared the Honda commercial and the *Bond* movies:

> (1) the *theme, plot, and sequence* both involve the idea of a handsome hero who, along with a beautiful woman, lead a grotesque villain on a high-speed chase, the male appears calm and unruffled, there are hints of romance between the male and female, and the protagonists escape with the aid of intelligence and gadgetry;
> (2) the *settings* both involve the idea of a high-speed chase with the villain in hot pursuit;
> (3) the *mood and pace* of both works are fast-paced and involve hi-tech effects, with loud, exciting horn music in the background;
> (4) both the James Bond and Honda commercial *dialogues* are laced with dry wit and subtle humor;
> (5) the *characters* of Bond and the Honda man are very similar in the way they look and act—both heros are young, tuxedo-clad, British-looking men with beautiful women in tow and grotesque villains close at hand; moreover, both men exude uncanny calm under pressure, exhibit a dry sense of humor and wit, and are attracted to, and are attractive to, their female companions.

900 F. Supp. at 1298.

In the current case, *Section 6* bears more similarities than the Honda commercial: Plaintiffs have pointed out many similarities in character, theme, plot, sequence and dialogue. It is true that ███████████████████████████████████████████████████████████████ However, Plaintiffs have sufficiently shown that similarities exist. "[A] court must focus on what is similar, not what is different, when comparing two works." *Spry Fox LLC v. LOLApps Inc.*, No. CV 12-00147, 2012 WL 5290158, at *1 (W.D. Wash. Sept. 18, 2012).

Berg's fair use and *de minimis* defenses are not persuasive at this point in the litigation. The fair use inquiry focuses on "whether and to what extent the new work is 'transformative,' altering the original with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 569 (1994). According to the description of *Section 6* in the Complaint, the screenplay is not a piece of "transformative" work such as a parody or a commentary; it is intended to be developed into a spy thriller film, and will compete with *James Bond* movies in the spy thriller film market.

CASE NO.:   CV 14-02527 SJO (Ex)                    DATE:  October 2, 2014

Further, Berg's alleged use of elements from the copyrighted Bond Works, such as "007" and "Bond. James Bond" is not *de minimis*.  To constitute *de minimis* use, such elements should not constitute a "quantitatively or qualitatively significant portion" of Plaintiffs' works.  *See Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2003) (holding that a musician's use of a three-note sequence, appearing only once in the original composition from which Defendant borrowed, was *de minimis* and did not infringe Plaintiff's copyright).  Here, iconic phrases such as "Bond. James Bond" are both recognizable and significant, so Defendants' *de minimis* argument holds little merit.

As a result, Plaintiffs have pled sufficient facts in their Complaint to satisfy the pleading standard and establish a claim for copyright infringement against Berg.

  C.  Claims Against Defendant Universal

Plaintiffs also allege claims against Universal for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement. (Compl. ¶¶ 66-94.)  Those claims center on the allegation that Universal purchased the rights to the *Section 6* screenplay, engaged in the preparation, duplication, and distribution of the *Section 6* screenplay, hired writers, actors and producers to work on the *Section 6* project, and derived benefit from it.  (Compl. ¶¶  51, 76, 91, 92.)

Besides the lack of substantial similarity between the screenplay and *James Bond* films, Universal also argues that Plaintiffs' claims should be dismissed because the claims are premature, as Universal has not yet decided whether to make the movie, and Plaintiffs' accusations are based on "unfounded speculation" about future revised screenplays.  (Universal Reply 7.)  Universal also characterizes the duplication and distribution of the screenplay as "*de minimis* and thus non-actionable as a matter of law."  (Universal Reply 13.)

Universal's argument is unpersuasive.  Ripeness prevents "theoretical" or "abstract" disputes from coming into court.  *See Cal. State Water Res. Control Bd. v. F.E.R.C.*, 966 F.2d 1541, 1562 (9th Cir. 1992).  Far from being theoretical or abstract, according to Plaintiffs' allegations, Universal possesses the right to use the screenplay, and has hired various people for the development of the motion picture project.  Those types of "transitory" film-making product make the copyright issues ripe for review.  *See Walt Disney Prods. v. Filmation Assoc.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986) (holding that materials created during the "transitory steps en route to a fixed product" were actionable for copyright infringement).  Universal's assertion that it does not intend to infringe Plaintiffs' copyright is also irrelevant because good faith is not an excuse for copyright infringement.  *Cf. Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("Indeed, even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable.").

///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 14-02527 SJO (Ex)          DATE: October 2, 2014

### 1. Direct Infringement

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Here, Plaintiffs have successfully alleged substantial similarities between *Section 6* and *James Bond* movies. Since Universal acquired production rights to the *Section 6* screenplay, Plaintiffs have viable claims that Universal violated Plaintiffs' exclusive rights to reproduce and distribute a derivative work based on the Bond works, and its rights to prepare, or authorize others to prepare derivative works. *See* 17 U.S.C. § 106.

### 2. Contributory Infringement

Plaintiffs have a viable contributory infringement claim. The elements of a contributory infringment claim are (1) "knowledge of a third party's infringing activity," and (2) "induces, causes, or materially contributes to the infringing product." *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (citation omitted).

As to the knowledge requirement, Plaintiffs allege that Universal should have realized that Berg's screenplay infringes the copyrighted Bond works because of the striking similarity between the two. (Compl. ¶ 40.) Plaintiffs, upon discovering Universal's potential plan to develop the *Section 6* screenplay, sent Universal a letter, "in nearly twenty pages of detail," describing many ways in which the *Section 6* screenplay infringed Plaintiffs' copyrights. (Compl. ¶ 7.)

As to the material contribution requirement, Plaintiffs allege that Universal "agreed to pay Berg up to $2 million" plus additional compensation for the screenplay, and hired Berg to revise the screenplay. (Compl. ¶¶ 42-45.) A party hiring someone to create or revise an infringing work could be held liable for contributory infringement. *See LaTele Telv'n C.A. v. Telemundo Commc'ns Grp., LLC*, 2013 WL 1296314, at *10-11 (S.D. Fla. Mar. 27, 2013) (holding that Plaintiffs pled sufficient facts to state a claim of contributory infringement when Plaintiffs alleged that Universal approved the production and broadcast of the infringing work).

### 3. Vicarious Copyright Infringement

Vicarious copyright infringement focuses on control and financial benefit of the alleged infringer. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). A vicarious infringement occurs when the alleged infringer "profit[s] from direct infringement while declining to exercise the right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-02527 SJO (Ex)</u>           DATE: <u>October 2, 2014</u>

Universal has the ability to control the preparation, duplication and distribution of the *Section 6* screenplay since it has purchased the rights to the screenplay. "Financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (quoting *Fonovisa*, 76 F.3d at 263-64). Although the film has not been made, Plaintiffs have alleged that the project has been publicized, enhancing Universal's brand value and earning potential. Therefore, Plaintiffs have pled sufficient facts to survive the motion to dismiss for vicarious copyright infringement.

        4.        Inducement of Copyright Infringement

Inducement of copyright infringement considers "evidence of 'active steps. . . taken to encourage direct infringement.'" *Grokster,* 545 U.S. at 936 (2005) (quoting *Oak Indus., Inc. v. Zenith Elec. Corp.*, 697 F. Supp. 988, 992 (N.D. Ill. 1988)). Plaintiffs have adequately alleged that Universal actively encouraged the infringing actions committed by Berg, as Universal compensated Berg for the screenplay and hired him to revise the screenplay for the production of a motion picture project. Plaintiffs' inducement claim will survive the motion to dismiss.

**III.**    **RULING**

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.